## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MOM CA Investco LLC, *et al.*,[1] | Case No. 25-10321 (BLS) |
| Debtors. | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; (III) MODIFYING AUTOMATIC STAY; (IV) SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF

The Debtors (as defined below) in the above-captioned chapter 11 cases (the "Chapter 11 Cases") hereby file this motion (the "Motion"), pursuant to sections 105, 361, 362, and 363 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2002-1(b), 4001-2, and 9013(m) of the Local Rules of the United States Bankruptcy Court of the District of Delaware (the "Local Rules"), for the entry of an interim order, substantially in the form attached hereto as **Exhibit A** (the "Interim Order"),[2] and a final order (the "Final Order," and together with the Interim Order, the "Cash Collateral Orders"), (i) authorizing the use of Cash Collateral (as defined herein), (ii) granting adequate protection to the Real Property Lenders (defined below),

---

[1]  The Debtors in these chapter 11 proceedings, together with the last four digits of each Debtor's federal tax identification number, are: MOM CA Investco LLC [6263], MOM AS Investco LLC [6049], MOM BS Investco LLC [6180], Retreat at Laguna Villas, LLC [2046], Sunset Cove Villas, LLC [9178], Duplex at Sleepy Hollow, LLC [9237], Cliff Drive Properties DE, LLC [0893], 694 NCH Apartments, LLC [0318], Heisler Laguna, LLC [4709], Laguna Festival Center, LLC [4073], 891 Laguna Canyon Road, LLC [0647], 777 AT Laguna, LLC [8715], Laguna Art District Complex, LLC [8316], Tesoro Redlands DE, LLC [2764], Aryabhata Group LLC [7332], Hotel Laguna, LLC [9580], 4110 West 3rd Street DE, LLC [8641], 314 S. Harvard DE, LLC [2057], Laguna HI, LLC [6408], Laguna HW, LLC [9470], The Masters Building, LLC [6134], and 837 Park Avenue, LLC [3229].  The Debtors' headquarters are located at 520 Newport Center Drive, Suite 480, Newport Beach, CA 92660.  For purposes of this representation, Hotel Laguna, LLC is represented solely by Potter Anderson & Corroon LLP and is not represented by Buchalter, A Professional Corporation.

[2]  Undefined capitalized terms have the meanings ascribed to them in the First Day Declaration (defined below).

(iii) modifying the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Cash Collateral Orders; (iv) scheduling a final hearing (the "Final Hearing") pursuant to Bankruptcy Rules 4001(b) and (d), and (v) granting related relief.  In support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware,* dated February 29, 2012.  This matter is a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Pursuant to Local Rule 9013-1(f), the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith, consistent with Article III of the United States Constitution.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory and legal bases for the relief requested herein are sections 105, 361, 362, 363, 503, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rules 2002-1(b), 4001-2, and 9013-1(m).

## GENERAL BACKGROUND

5.      The Debtors constitute a real estate joint venture comprised of a portfolio of commercial properties owned by the Debtors.  The properties that make up the portfolio include hotels, an apartment complex, office buildings, other commercial real estate, and individual homes used as luxury vacation rentals.

6.      On February 28, 2025 (the "Investco Petition Date"), Debtor MOM CA Investco LLC ("MOM CA"), Debtor MOM AS Investco LLC ("MOM AS"), and Debtor MOM BS Investco LLC ("MOM BS," collectively with MOM CA and MOM AS, the "MOM Investcos") each filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.  The MOM Investcos were founded in June of 2021 for the purpose of managing a robust real estate investment portfolio.

7.      Each of the MOM Investcos owns a number of subsidiary special purpose entities (each an "SPE"), which each own and hold a separate investment property.  Collectively, the MOM Investcos have ownership interests in roughly sixty (60) SPEs for properties across the country. Each of the MOM Investcos holds one-hundred percent (100%) of the ownership interests for each of their respective SPEs.

8.      On March 10, 2025 (the "SPE Petition Date," together with the Investco Petition Date, the "Petition Date", as applicable), nineteen of the SPEs (collectively, the "SPE Debtors,"[3] together with the MOM Investcos, the "Debtors") each filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.

9.      The Debtors are operating their business and managing their properties, as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made, and no official committees have been appointed in these Chapter 11 Cases.

---

[3]    The "SPE Debtors" are: Retreat at Laguna Villas, LLC; Sunset Cove Villas, LLC; Duplex at Sleepy Hollow, LLC; Cliff Drive Properties DE, LLC; 694 NCH Apartments, LLC; Heisler Laguna, LLC; Laguna Festival Center, LLC; 891 Laguna Canyon Road, LLC; 777 AT Laguna, LLC; Laguna Art District Complex, LLC; Tesoro Redlands DE, LLC; Aryabhata Group LLC; Hotel Laguna, LLC; 4110 West 3rd Street DE, LLC; 314 S. Harvard DE, LLC; Laguna, HI, LLC; Laguna HW, LLC; The Masters Building, LLC; and 837 Park Avenue, LLC.

10.     Additional factual background regarding the Debtors is set forth in the *Declaration of Mark Shinderman in Support of Petitions and First Day Motions* (the "First Day Declaration"), which is incorporated herein by reference.[4]

### FACTS RELEVANT TO THIS MOTION

### I.     The Operating Properties.

11.     Several of the SPEs and their real estate properties are subject to deeds of trust or mortgages and other secured debt arising from the acquisition, development, and/or ownership of real property.  These obligations are generally owed by the SPE that owns the property at issue.  The First Day Declaration includes a list of all of the Debtors' properties.  *See* First Day Declaration at ¶ 35.[5]

12.     Relevant here, certain of the Debtors' properties are developed and generate revenue from operations (collectively, the "Operating Properties").  Below is a list of the Operating Properties, their most recent appraised values,[6] the outstanding loan amounts, and whether a notice of default has been filed with respect to such property:

| SPE | Real Property Address | Property Value | Lender | Outstanding Loan Amount | Notice of Default Filed |
|---|---|---|---|---|---|
| Retreat at Laguna Villas, LLC | 749 Gaviota (729 Ocean Front) | $9,300,000.00 | Enterprise Bank & Trust[7] | $6,177,300.00 | February 12, 2025 |

---

[4]     Unless otherwise defined in this Motion, capitalized terms shall take the meaning given to them in the First Day Declaration.

[5]     Schedules 1-3 of the First Day Declaration also include charts indicating which MOM Investco owns each SPE.

[6]     These values are based on appraisals of each property conducted within the last few years.  These values have likely changed; however, based upon the experience of the Debtors' prepetition management in the real estate rental and hospitality industries, the Debtors' prepetition management believes the values have likely been stable enough such that each of the Real Estate Lenders may be protected by an equity cushion.

[7]     Enterprise Bank & Trust, PMF CA REIT, LLC, Lone Oak Fund, LLC, Wilshire Quinn Income Fund, LLC, Preferred Bank, and Banc of California are collectively referred to as the "Real Property Lenders."  The loans of the Real Property Lenders with the Debtors are collectively referred to as the "Prepetition Loans."

| SPE | Real Property Address | Property Value | Lender | Outstanding Loan Amount | Notice of Default Filed |
|---|---|---|---|---|---|
| Sunset Cove Villas, LLC | 683 Sleepy Hollow Ln, Laguna Beach | $15,500,000.00 | Enterprise Bank & Trust | $10,322,300.00 | February 7, 2025 |
| Duplex at Sleepy Hollow, LLC | 689 Sleepy Hollow Ln, Laguna Beach | $2,525,000.00 | Enterprise Bank & Trust | $1,725,800.00 | February 12, 2025 |
| Cliff Drive Properties DE, LLC | 150-154 Cliff Dr, Laguna Beach | $8,130,000.00 | Enterprise Bank & Trust | $5,583,600.00 | February 7, 2025 |
| 694 NCH Apartments, LLC | 694 N Coast Hwy, Laguna Beach | $5,800,000.00 | Enterprise Bank & Trust | $3,848,000.00 | February 12, 2025 |
| Laguna Festival Center, LLC | 805-859 Laguna Canyon Rd, Laguna Beach | $41,700,000.00 | Enterprise Bank & Trust | $27,600,000.00 | February 13, 2025 |
| 891 Laguna Canyon Road, LLC | 891 Laguna Canyon Rd, Laguna Beach | | | | |
| 777 at Laguna, LLC | 777 Laguna Canyon Rd, Laguna Beach | | | | |
| Laguna Art District Complex, LLC | 775-793 Laguna Canyon Rd, Laguna Beach | | | | |
| Heisler Laguna, LLC | 305-397 North Coast Highway, Laguna Beach | $29,200,000.00 | Enterprise Bank & Trust | $16,971,000.00 | February 7, 2025 |
| The Masters Building, LLC | 2711 Pacific Coast Hwy (2713 w Coast Hwy), Corona Del Mar | $11,900,000.00 | PMF CA REIT, LLC | $6,540,000.00 | N/A |
| Laguna HI, LLC | 696 S Coast Hwy, Laguna Beach | $25,500,000.00 | Wilshire Quinn Income Fund, LLC | $12,550,000.00 | N/A |
| Laguna HW, LLC | 688-690 S Coast Hwy, Laguna Beach | | | | |
| Tesoro Redlands DE, LLC | 106 W Pennsylvania Ave, Redlands | $65,200,000.00 | Preferred Bank | $39,000,000.00 | November 20, 2024 |
| Hotel Laguna, LLC | 421 S Coast Hwy, Laguna Beach | $82,000,000.00 | Banc of California[8] | $27,000,000.00 | February 25, 2025 |

---

[8]  Banc of California is a client of lead counsel, Buchalter, PC.  Debtors' co-counsel, Potter Anderson & Corroon LLP, will act as conflicts counsel with respect to Banc of California, including the handling of any and all negotiations or disputes with respect to the use of cash collateral by Hotel Laguna, LLC.

| SPE | Real Property Address | Property Value | Lender | Outstanding Loan Amount | Notice of Default Filed |
|---|---|---|---|---|---|
| Aryabhata Group, LLC[9] | 4251, 4225, 4253 Martingale Way, 1701 Corinthian Way, 4200, 4220, 4250 Scott Drive, 1660 Dove Street, Newport Beach | $50,000,000.00 | Preferred Bank | $28,500,000.00 | November 20, 2024 |

13.     These Operating Properties consist of a mix of hotels, an apartment complex, office buildings, other commercial real estate, and individual homes used as luxury vacation rentals.

14.     The Debtors' newly retained CRO (Mark Shinderman) and consultants (FTI Consulting) and their advisors have not yet had the opportunity to thoroughly assess the validity, scope, and priority of each Real Property Lender's liens in each of the Operating Properties. However, based on an initial review of the Debtor's books and records, the Debtors reasonably believe that the Real Property Lenders hold liens in the Operating Properties as reflected in the table above, which may also include liens in personal property related to the operation of the Debtors' businesses at the Operating Properties (all such assets, collectively, the "Prepetition Collateral").

15.     The CRO and FTI intend to work with the Real Property Lenders toward an understanding as to the extent, validity, and priority of their respective liens in the Prepetition Collateral and their respective values and loan balances during the Interim Period (defined below) and as these Chapter 11 Cases progress.

## II.    Events Necessitating the Debtors' Bankruptcy Filings.

16.     Certain of the Debtors have been parties to contentious Arbitration proceedings

---

[9]    The Debtor are unclear at this time as to whether or not Aryabhata Group, LLC generates revenues such that cash collateral issues exist as to this entity.  Out of an abundance of caution, the Debtors are including this entity in this Motion.

regarding disputes over who owns and controls the Debtors' enterprise.  These proceedings are more fully described in the First Day Declaration.  The dispute between the purported owners appears to have hampered the Debtors' ability to raise desperately needed funds and the management dispute was disruptive to operations.

17.     The Debtors also lack cash flow overall.  When the MOM Investcos were founded in June 2021, the Debtors constantly needed capital injections even while interest rates remained low.  However, throughout 2022 and 2023, interest rates continued to climb and disrupted the Debtors' cash flow, thus requiring an additional capital infusion.

18.     Additionally, the Debtors' prepetition management has represented to the CRO and FTI that many tenants have not been paying rent.  These factors, coupled with climbing interest rates and an inability to refinance and sell assets due to a cloud on the ownership due to the Arbitration appear to have caused certain Debtors to become unable to service their debts.[10]

19.     As reflected in the table above, several of the SPEs eventually received notices of default, which have also been recorded.

### DEBTORS' PROPOSED USE OF CASH COLLATERAL

20.     As of the Petition Date, as part of the Prepetition Collateral, the Debtors have Cash Collateral (including cash and cash equivalents) located at the Operating Properties.[11]   The

---

[10]   The CRO is actively working to solidify debtor-in-possession financing to fund operations in these Chapter 11 Cases.

[11]   The Bankruptcy Code defines "cash collateral" as follows:
    Cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.
    11 U.S.C. § 363(a).

Debtors' revenue is derived primarily from funds generated by bar, restaurant, and other services and hotel properties[12] and rent/leases with tenants.

21.     The Debtors intend to develop a comprehensive plan to maximize the value of certain of their real estate holdings, including the Operating Properties.  In the interim, the Debtors cannot meet their ongoing post-petition obligations to maintain the Operating Properties unless they have the immediate ability to use the Cash Collateral, including the cash generated or received by the Debtors from and after the Petition Date.  In the absence of such use, the Debtors' bankruptcy estates and creditors will suffer immediate and irreparable harm.

22.     An integral aspect of maintaining the Debtors' business operations is their ability to use Cash Collateral to maintain a sufficient level of working capital in order to pay ordinary course obligations such as those to vendors, utilities, taxing authorities, insurance, and to pay for necessary ordinary course property maintenance and projects.

23.     Attached to the proposed Interim Order are: (i) a consolidated administrative budget for these Chapter 11 Cases (the "Administrative Budget"); and (ii) 13-week budgets for each Operating Property (the "Operating Budgets," and collectively, the "Budgets").  The Budgets were prepared by prior management in consultation with VGruppe and Everyday Luxury. The Budgets have not yet been reviewed or verified. The Budgets will be refined and reviewed by the CRO and FTI in the coming weeks.  Importantly, no cash collateral is being consumed prior to a hearing on the Cash Collateral Motion.

24.     All Debtors and their estates will be jointly and severally liable for the amounts set forth in the Administrative Budget, which ensures that the Debtors have sufficient funds to administer the Chapter 11 Cases and work toward emerging from them successfully. Each

---

[12]   It is the CRO's understanding that hotel rooms are not presently available to rent.  The CRO is working to gain an understanding of this issue and will address it accordingly.

Operating Budget is intended to include only the expenses necessary to maintain, preserve, and/or operate each respective Operating Property, which are each SPE's sole means of generating revenue, thereby preserving the value of the Operating Properties and providing the resources for the Debtors to pursue their chapter 11 restructuring strategy.

## RELIEF REQUESTED

25.     By this Motion the Debtors seek entry of the Cash Collateral Orders: (i) authorizing the Debtors' use of Cash Collateral; (ii) granting adequate protection to the Real Property Lenders; (iii) modifying the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Cash Collateral Orders; (iv) scheduling the Final Hearing; and (v) granting related relief.  For the avoidance of doubt, the Debtors are not consuming any Cash Collateral before any hearing on this Motion.

## STATEMENT OF MATERIAL TERMS

26.     Pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2(a), the Debtors submit the following concise statement summarizing the material terms of the Interim Order.[13]

| Material Terms | Summary | Para(s). of the Interim Order |
|---|---|---|
| **Entities with an Interest in Cash Collateral**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(i)* | The Real Property Lenders: Enterprise Bank & Trust, PMF CA REIT, LLC, Lone Oak Fund, LLC, Wilshire Quinn Income Fund, LLC, Preferred Bank, and Banc of California | N/A |
| **Purpose for Use of Cash Collateral and Amount of Cash Collateral the Debtors** | The Debtors seek authority to use Cash Collateral as and to the extent set forth in the Interim Order in accordance with the Budgets, subject to Permitted Variances (defined below) for working capital in order to pay ordinary course | Interim Order, ¶ C |

---

[13]    Any summary of the terms of the Interim Order contained in this Motion is qualified in its entirety by reference to the provisions of the Interim Order.  To the extent there is a conflict between the Motion and the Interim Order, the Interim Order shall control.  The Debtors reserve the right to supplement the statements made herein. Capitalized terms used in the summary chart below that are not otherwise defined in this Motion shall have the meanings ascribed to such terms in the Interim Order.

| | | |
|---|---|---|
| **Seek Permission to Use**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(ii)*<br><br>*Local Rule 4001-2(a)(i)*<br><br>*Local Rule 4001-2(a)(i)(A)* | obligations such as those to vendors, utilities, taxing authorities, insurance, and to pay for necessary ordinary course property maintenance and projects. | |
| **Budget and Variances**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(ii)*<br><br>*Local Rule 4001-2(a)(i)(E)* | The Budgets attached to the Interim Order as <u>Exhibit 1</u> are 13-week cash flow forecasts for each Operating Property for the period commencing on the Petition Date, which reflect on a line-by-line and an aggregate basis, the applicable Operating Property's budgeted cash receipts, disbursements and liquidity.<br><br>The Debtors shall use the Prepetition Collateral, including all Cash Collateral, solely to the extent consistent with the Budgets in an amount that would not cause the Debtors to use Cash Collateral for operating disbursements and capital expenditures in an aggregate cumulative amount greater than 25% of the operating disbursements and capital expenditures, taken together, for each week in the Budgets ("<u>Permitted Variance</u>"). | Interim Order, ¶ 3 |
| **Duration of Use of Cash Collateral/Termination**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(iii)*<br><br>*Local Rule 4001-2(a)(i)(M)* | The Debtors' right to use Cash Collateral of any Real Property Lender shall terminate on the earlier to occur of the following (a "<u>Termination Date</u>"): (x) 11:59 p.m. ET, at the expiration of the Interim Period, unless (i) a further Interim Order or Final Order granting the relief requested in the Motion is entered by the Court extending the Debtors' right to use Cash Collateral as to that Real Property Lender, or (ii) the Debtors and such Real Property Lender agree in writing to extend the Debtors' right to use Cash Collateral; and (y) the date upon which the Court issues an order following notice and a hearing providing for the termination of the further use of Cash Collateral due to the failure by the Debtors to comply with the material terms, covenants, or conditions of this Interim Order or otherwise. | Interim Order, ¶ 8. |
| **Fees**<br><br>*Local Rule 4001-2(a)(i)(B)* | None. | N/A |

| | | |
|---|---|---|
| **Provisions that Limit the Court's Discretion**<br><br>*Local Rule 4001-2(a)(i)(C)* | None. | N/A |
| **Funding of Non-Debtor Affiliates with Cash Collateral**<br><br>*Local Rule 4001-2(a)(i)(D)* | None. | N/A |
| **Proposed Adequate Protection, Including Professional Fee Payments**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(iv)*<br><br>*Local Rule 4001-2(a)(ii)*<br><br>*Local Rule 4001-2(a)(i)(K)* | <u>Adequate Protection Liens</u>. Pursuant to 11 U.S.C. § 552, to the extent of any diminution in the value of any Real Property Lender's Prepetition Collateral, the Real Property Lenders are granted replacement liens on, and security interests in, all existing and hereinafter acquired property and assets of each specific Debtor counterparty (on a loan-by-loan basis) to such Real Property Lender, of every kind and character, to the extent and in the same validity, priority, and enforceability that such Real Property Lender held of such Debtor as of the commencement of the Chapter 11 Cases, including without limitation such Debtor's Cash Collateral (the "<u>Adequate Protection Liens</u>").  For the avoidance of doubt, the Adequate Protection Liens shall not effect any cross-collateralization in favor of any Real Property Lenders unless and only to the extent that such Real Property Lender held a loan that was cross-collateralized as of the Petition Date; *provided that* the Adequate Protection Liens shall be subject and subordinate to the Carve-Out (defined below). | Interim Order, ¶ 5. |
| **Liens on Unencumbered Assets**<br><br>*Local Rule 4001-2(a)(i)(G)* | None. | N/A |
| **Plan Milestones**<br><br>*Local Rule 4001-2(a)(i)(H)* | None. | N/A |
| **Prepayment Penalty**<br><br>*Local Rule 4001-* | N/A. | N/A |

| | | |
|---|---|---|
| *2(a)(i)(I)* | | |
| **Provisions Causing Jointly Administered Debtors to Become Jointly and Severally Liable**<br><br>*Local Rule 4001-2(a)(i)(J)* | None. | N/A |
| **Provisions Regarding Payment of Lenders' Attorneys Fees Without Notice or Review**<br><br>*Local Rule 4001-2(a)(i)(K)* | None. | N/A |
| **Liens on Chapter 5 Actions**<br><br>*Local Rule 4001-2(a)(i)(U)* | None. | N/A |
| **Carve-Out**<br><br>*Local Rule 4001-2(a)(i)(F)* | <u>Carve-Out</u>.  Notwithstanding anything to the contrary in the Interim Order, the Debtors' obligations to the Real Property Lenders, and the liens and security interests granted by the Interim Order or under the Prepetition Loans, and the payment of all such obligations, shall be subject and subordinate in all respects to payment of the following fees and expenses: (i) all unpaid fees required to be paid to the Clerk of the Court or statutory fees payable to the U.S. Trustee under 28 U.S.C. § 1930, with interest at the statutory rate pursuant to 31 U.S.C. § 3717, which shall not be limited by any Budget; (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under Bankruptcy Code section 726(b), (iii) to the extent allowed at any time (whether by interim order, final order, procedural order or otherwise), all unpaid fees and expenses incurred by persons or firms retained by the Debtors or any official committee of unsecured creditors appointed in the chapter 11 cases    (the "<u>Chapter 11 Professionals</u>") pursuant to Bankruptcy Code section 327, 328, 363 or 1103, as applicable, in the amounts set forth in the then-in-effect Administrative Budget, which such amounts may be escrowed on a weekly basis into a segregated account | Interim Order, ¶ 4. |

| | | |
|---|---|---|
| | held by Potter Anderson & Corroon LLP (the "<u>Funded Reserve Account</u>") in trust for the benefit of the Chapter 11 Professionals pursuant to the amounts set forth in the Administrative Budget (the foregoing clauses (i) through (iii), collectively, the "<u>Carve-Out</u>").  All Debtors and their estates shall be jointly and severally liable for the amounts set forth in the Administrative Budget.  For the avoidance of doubt, nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement, or compensation described herein. | |
| **Provision Prohibiting Use of Estate Funds to Investigate the Liens and Claims of the Prepetition Lender**<br><br>*Local Rule 4001-2(a)(i)(L)* | None. | N/A |
| **Cross Collateralization**<br><br>*Local Rule 4001-2(a)(i)(N)* | None. | N/A |
| **Provisions that Immediately Prime Prepetition Liens without Consent**<br><br>*Local Rule 4001-2(a)(i)(P)* | None. | N/A |
| **Findings Regarding Validity/Perfection Amount**<br><br>*Local Rule 4001-2(a)(i)(Q)* | None. | N/A |
| **Challenge Period**<br><br>*Local Rule 4001-* | None. | N/A |

| | | |
|---|---|---|
| *2(a)(i)(Q)* | | |
| **Provisions Modifying or Terminating the Stay Following an Event of Default that Do Not require at least Five (5) Days' Written Notice**<br><br>*Local Rule 4001-2(a)(i)(S)* | None. | N/A |
| **Limitations on Arguments at Post-Default Emergency Hearing**<br><br>*Local Rule 4001-2(a)(i)(T)* | None. | N/A |
| **506(c) Waiver**<br><br>*Local Rule 4001-2(a)(i)(V)* | None. | N/A |
| **552(b) Waiver; No Marshaling**<br><br>*Local Rule 4001-2(a)(i)(W)-(X)* | None. | N/A |
| **Releases**<br><br>*Local Rule 4001-2(a)(ii)* | None. | N/A |

27.    As explained in this Motion and in the First Day Declaration, the Debtors' use of Cash Collateral is necessary to avoid immediate and irreparable harm; absent use of Cash Collateral, the Debtors will lose access to necessary liquidity to pay the ongoing costs associated with administering their estates and running the Operating Properties, thereby dissipating value to the detriment of their estates and creditors, including the Real Estate Lenders.  Access to Cash

Collateral is necessary to maintain operations in the ordinary course and ensure the viability of the Debtors without significant deterioration to the detriment of all stakeholders.

28.    The Debtors seek entry of the Interim Order to obtain authority to use Cash Collateral with respect to all Operating Properties on a unified basis, during the 30-day period commencing as of the date of entry of the Interim Order (the "Interim Period") through and including the Termination Date.

29.    The Debtors have not had the opportunity to negotiate use of Cash Collateral with the Real Property Lenders prior to the filing of this Motion but hope to do so before the initial hearing on this Motion.  For this reason, the proposed Interim Order is designed to preserve the status quo so that, during the Interim Period, the Debtors can work with the Real Property Lenders, on a property-by-property basis, to come to an agreement on an acceptable form of Final Order for each Operating Property, including appropriate adequate protection relief.

30.    Accordingly, the Debtors submit that the terms and conditions of the Interim Order are appropriate under the facts and circumstances of the Chapter 11 Cases.

## BASIS FOR RELIEF

**I.    The Debtors' Use of Cash Collateral and the Proposed Adequate Protection are Appropriate and Should be Authorized.**

31.    The Debtors' use of property of their estates, including Cash Collateral, is governed by section 363 of the Bankruptcy Code.  Pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor may use cash collateral as long as "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." 11 U.S.C. § 363(c)(2).

32.    Section 363(e) of the Bankruptcy Code provides for adequate protection of interests in property when a debtor uses cash collateral.  11 U.S.C. § 363(e).  Further, section 362(d)(1) of

the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay.  *See In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996).  While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis.  *Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); *In re N.J. Affordable Homes Corp.*, No. 05-60442 (DHS), 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006) ("The term 'adequate protection' is intended to be a flexible concept."); *In re Columbia Gas Sys., Inc.*, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992) (emphasizing that "the varying analyses and results contained in the . . . slew of cases demonstrate that what interest is entitled to adequate protection and what constitutes adequate protection must be decided on a case-by-case basis").

33.    The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use.  *See In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral."); *see also In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180-81 (Bankr. D. Del. 1993) (holding that adequate protection for use of collateral under section 363 of the Bankruptcy Code is limited to use-based decline in value).

34.    In *Swedeland*, the Third Circuit pointedly noted that the purpose of adequate protection "is to insure that the creditor receives the value for which he bargained prebankruptcy." *In re Swedeland*, 16 F.3d at 564 (quoting *In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987)); *see also Shaw Indus., Inc. v. First Nat'l Bank of Pa. (In re Shaw Indus., Inc.)*, 300 B.R. 861, 865

(Bankr. W.D. Pa. 2003) ("The purpose of providing 'adequate protection' is to insure that a secured creditor receives in value essentially what he bargained for."); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (noting that the application of adequate protection "is left to the vagaries of each case, but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process") (citation omitted), *rev'd on other grounds*, 89 B.R. 336 (S.D.N.Y. 1988).

35.     The Debtors propose to provide the Real Property Lenders with adequate protection that maintains the status quo during the Interim Period while the Debtors engage with each Real Property Lender regarding long-term use of Cash Collateral.  Specifically, the Debtors propose that, to the extent of any diminution in the value of any Real Property Lender's Prepetition Collateral, the Real Property Lenders be granted replacement liens on, and security interests in, all existing and hereinafter acquired property and assets of each specific Debtor counterparty (on a loan-by-loan basis) to such Real Property Lender, of every kind and character, to the extent and in the same validity, priority, and enforceability that such Real Property Lender held of such Debtor as of the commencement of the Chapter 11 Cases, including without limitation such Debtor's Cash Collateral (i.e., the Adequate Protection Liens), subject and subordinate to the Carve-Out.[14]

36.     The Debtors respectfully submit that, in light of the circumstances of the Chapter 11 Cases, the proposed adequate protection provided to the Real Property Lenders is appropriate and sufficient to protect them from any diminution in value of the Prepetition Collateral during the Interim Period.[15]

---

[14]    For the avoidance of doubt, the Adequate Protection Liens shall not effect any cross-collateralization in favor of any Real Property Lenders unless and only to the extent that such Real Property Lender held a loan that was cross-collateralized as of the Petition Date.

[15]    Based on the beliefs and experience of the Debtors' prepetition management, the Real Property Lenders may also be protected by equity cushions.  The CRO and FTI are in the process of assessing the values of the Operating Properties.

37.     The Cash Collateral will be used by the Debtors to: (i) continue operating the Operating Properties in the ordinary course of business; and (ii) pursue a restructuring of their businesses while otherwise administering these Chapter 11 Cases.  If the Debtors are unable to use Cash Collateral, they would suffer immediate and irreparable harm.  The Debtors would be unable to run and operate the Operating Properties, administer their estates, and, eventually, come to a successful close of these Chapter 11 Cases, thereby dissipating value to the detriment of their estates, including the Real Property Lenders.

38.     The use of Cash Collateral will therefore protect the Real Property Lenders' security interests by preserving the value of their Prepetition Collateral.  *See In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.") (internal citations omitted); *In re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992) (evaluating "whether the value of the debtor's property will increase as a result of the" use of collateral in determining sufficiency of adequate protection); *In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that a debtor's use of cash collateral to pay operating expenses, thereby "preserv[ing] the base that generates the income stream," provided adequate protection to the secured creditor); *In re Constable Plaza Assocs., L.P.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (observing that debtor's use of rents to maintain and operate property "will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the secured lender's] mortgage").

39.     In light of the foregoing, the Debtors submit that the proposed adequate protection is necessary and appropriate.

## II.     The Proposed Carve-Out is Reasonable and Appropriate.

40.     The Adequate Protection Liens are subject to the Carve-Out set forth in the Administrative Budget, for which all Debtors and their estates will be jointly and severally liable. Without the Carve-Out, the Debtors and other parties in interest may be deprived of certain rights and powers because the services for which such professionals may be paid in these Chapter 11 Cases may be restricted. *See, e.g.*, *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (observing that courts insist on carve-outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties in interest are sorely prejudiced").  The Carve-Out does not directly or indirectly deprive the Debtors' estates or other parties in interest of possible rights and powers.

41.     Additionally, the Carve-Out protects against administrative insolvency during the course of these Chapter 11 Cases by ensuring that assets remain for the payment of fees of the Clerk of the Bankruptcy Court or the Office of the United States Trustee for the District of Delaware as well as fees of the Debtors' professionals and a statutory committee of unsecured creditors, if appointed.

42.     In that regard, as further protection against administrative insolvency, the proposed Interim Order also authorizes the Debtors to establish the Funded Reserve Account so that the Debtors may escrow amounts set forth in the then-in-effect Administrative Budget on a weekly basis.  The Debtors shall use the funds held in the Funded Reserve Account exclusively to pay allowed fees of the Chapter 11 Professionals and other obligations included within the Carve-Out, as applicable, as they become allowed and payable pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any interim or final orders of this Court.

**III.     Failure to Obtain Immediate Interim Use of Cash Collateral Would Cause Immediate and Irreparable Harm.**

43.      Bankruptcy Rule 4001(b)(2) provides that a final hearing on a motion to use cash collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than fourteen (14) days after the service of such motion. Fed. R. Bankr. P. 4001(b)(2). However, the Court is authorized to conduct a preliminary expedited hearing on the Motion and authorize the Debtors' proposed use of Cash Collateral to the extent necessary to avoid immediate and irreparable harm to the Debtors' estates. *Id.*

44.      As described herein, the Debtors have an immediate postpetition need to use Cash Collateral. The Debtors simply cannot run and operate their businesses at the Operating Properties, administer these Chapter 11 Cases, maintain the value of their estates, and pursue a reorganization without access to cash. In short, the access to sufficient working capital and liquidity through the use of Cash Collateral is vital to preserve and maintain the value of the Debtors' estates while the Debtors pursue a restructuring strategy through these Chapter 11 Cases.

45.      The Debtors, therefore, seek immediate authority to use the Cash Collateral on an interim basis and as set forth in this Motion and in the Interim Order to prevent immediate and irreparable harm to their estates pending the Final Hearing pursuant to Bankruptcy Rule 4001(b)(2). Accordingly, the Debtors respectfully submit that they have satisfied the requirements of Bankruptcy Rule 4001(b)(2) to support an expedited preliminary hearing and immediate Cash Collateral availability on an interim basis.

**IV.     Modification of the Automatic Stay on a Limited Basis is Warranted.**

46.      By this Motion, the Debtors are requesting modification of the automatic stay (to the extent applicable) as necessary to, *inter alia*, permit the Debtors to grant the security interests

and liens described above and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens.

47.     Accordingly, the Debtors respectfully request that the Court authorize the modification of the automatic stay in accordance with the terms set forth in the Cash Collateral Orders.

## V.     Request for a Final Hearing.

48.     Pursuant to Bankruptcy Rules 4001(b)(2), the Debtors request that the Court set a date for the Final Hearing and fix the date and time prior to the Final Hearing for parties to file objections to the relief requested by this Motion.

## <u>RESERVATION OF RIGHTS</u>

49.     Nothing contained herein is intended or shall be construed as: (i) an admission as to the validity, priority, characterization or amount of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, validity, or priority of any claim against the Debtors or rights of setoff asserted against the Debtors; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code; or (v) a promise to pay a claim.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity, priority, or amount of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

**IMMEDIATE RELIEF IS NECESSARY TO**
**AVOID IMMEDIATE AND IRREPARABLE HARM**

50. Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is needed to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. The Third Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions. In that context, courts have instructed that irreparable harm is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation. *See, e.g., Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 Fed. App'x 907, 910 (3d Cir. 2007) (citing *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). Furthermore, the harm must be shown to be actual and imminent, not speculative or unsubstantiated. *See, e.g., Acierno v. New Castle County*, 40 F.3d 645, 653-55 (3d Cir. 1994). The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and, accordingly, should be granted on an interim basis.

**WAIVER OF NOTICE AND STAY UNDER BANKRUPTCY RULE 6004**

51. To the extent that Bankruptcy Rule 6004(a) applies, the Debtors respectfully request a waiver of such notice requirement in order to successfully implement the foregoing requested relief.

52. The Debtors also request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after after the order is entered." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate their business without interruption and to preserve value for their estates. Accordingly,

the Debtors respectfully request that the Court waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## NOTICE

53.     The Debtors have provided notice of this Motion to the following parties or their respective counsel: (a) the creditors on the Debtors' consolidated list of largest unsecured creditors, (b) the Real Property Lenders; (c) the Arbitration Plaintiffs, (d) the United States Trustee for the District of Delaware, and (e) any party who has appeared and requested service in this matter pursuant to Rule 2002.  As this Motion is seeking "first day" relief, within forty-eight (48) hours of the entry of an order with respect to this Motion, the Debtors will serve copies of this Motion and any order entered with respect to this Motion as required by Local Rule 9013-1(m).  The Debtors respectfully submit that, in light of the nature of the relief requested, no further notice is necessary.

## NO PRIOR REQUEST

54.     No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request entry of the Interim Order, substantially in the form attached hereto as **Exhibit A**, and following notice and the opportunity of parties-in-interest to be heard, the Final Order, granting the relief requested herein and such other and further relief as may be just and proper.

*[Signature Page Follows]*

Dated: March 11, 2025
      Wilmington, Delaware

Jeffrey K. Garfinkle (*pro hac vice* forthcoming)
Rebecca Wicks (*pro hac vice* forthcoming)
**BUCHALTER, A PROFESSIONAL CORPORATION**
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: (949) 760-1121
Email: jgarfinkle@buchalter.com
      rwicks@buchalter.com

-and-

J. Leland Murphree (*pro hac vice* forthcoming)
John T. Baxter (*pro hac vice* forthcoming)
**BUCHALTER, A PROFESSIONAL CORPORATION**
1 Music Circle South, Suite 300
Nashville, TN  37203
Telephone: (629) 224-6600
Email: lmurphree@buchalter.com
      jbaxter@buchalter.com

-and-

Khaled Tarazi (*pro hac vice* forthcoming)
**BUCHALTER, A PROFESSIONAL CORPORATION**
15279 N. Scottsdale Road, Suite 400
Scottsdale, Arizona 85254-2659
Telephone: (480) 383-1800
Email: ktarazi@buchalter.com

Respectfully submitted,

*/s/ Aaron H. Stulman*
Christopher M. Samis (No. 4909)
Aaron H. Stulman (No. 5807)
R. Stephen McNeill (No. 5210)
Gregory J. Flasser (No. 6154)
Ethan H. Sulik (No. 7270)
Sarah R. Gladieux (No. 7404)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile: (302) 658-1192
Email: csamis@potteranderson.com
      astulman@potteranderson.com
      rmcneill@potteranderson.com
      gflasser@potteranderson.com
      esulik@potteranderson.com
      sgladieux@potteranderson.com

*Proposed Counsel to the Debtors and Debtors in Possession*

## **EXHIBIT A**

**Interim Order**

BN 87373657v8

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MOM CA Investco LLC, *et al.*,[1] | Case No. 25-10321 (BLS) |
| Debtors. | (Joint Administration Requested) |
| | Re: Docket No. __ |

**INTERIM ORDER (I) AUTHORIZING POSTPETITION USE OF**
**CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION;**
**(III) MODIFYING AUTOMATIC STAY; (IV) SCHEDULING A**
**FINAL HEARING; AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of an interim order (this "Interim Order") pursuant to

sections 105(a), 361, 362, and 363, 506, and 507 of title 11 of the United States Code

(the "Bankruptcy Code"), rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and rules 2002-1(b), 4001-2, and 9013(m) of the Local Rules

of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") (i)

authorizing the use of Cash Collateral (as defined herein), (ii) granting adequate protection to the

Real Property Lenders (defined below), (iii) modifying the automatic stay imposed under section

362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and

---

[1]    The Debtors in these chapter 11 proceedings, together with the last four digits of each Debtor's federal tax identification number, are: MOM CA Investco LLC [6263], MOM AS Investco LLC [6049], MOM BS Investco LLC [6180], Retreat at Laguna Villas, LLC [2046], Sunset Cove Villas, LLC [9178], Duplex at Sleepy Hollow, LLC [9237], Cliff Drive Properties DE, LLC [0893], 694 NCH Apartments, LLC [0318], Heisler Laguna, LLC [4709], Laguna Festival Center, LLC [4073], 891 Laguna Canyon Road, LLC [0647], 777 AT Laguna, LLC [8715], Laguna Art District Complex, LLC [8316], Tesoro Redlands DE, LLC [2764], Aryabhata Group LLC [7332], Hotel Laguna, LLC [9580], 4110 West 3rd Street DE, LLC [8641], 314 S. Harvard DE, LLC [2057], Laguna HI, LLC [6408], Laguna HW, LLC [9470], The Masters Building, LLC [6134], and 837 Park Avenue, LLC [3229].  The Debtors' headquarters are located at 520 Newport Center Drive, Suite 480, Newport Beach, CA 92660.  For purposes of this representation, Hotel Laguna, LLC is represented solely by Potter Anderson & Corroon LLP and is not represented by Buchalter, A Professional Corporation.

[2]    Undefined capitalized terms have the meanings ascribed to them in the Motion.

provisions of the Cash Collateral Orders; (iv) scheduling a final hearing (the "<u>Final Hearing</u>") pursuant to Bankruptcy Rules 4001(b) and (d), and (v) granting related relief, as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due, sufficient, and proper notice of the Motion having been provided under the circumstances and in accordance with the Bankruptcy Rules and the Local Rules, and it appearing that no other or further notice need be provided; and the interim hearing to consider the relief requested in the Motion having been held (the "<u>Interim Hearing</u>"); and upon consideration of the First Day Declaration, and the record of the Interim Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates (the "<u>Estates</u>"), as contemplated by Bankruptcy Rule 4001(b)(2), and is in the best interests of the Debtors, their Estates, their creditors, their stakeholders, and all other parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[3]**

A.    <u>Disposition</u>.   The relief requested in the Motion is hereby granted on an interim basis.  Any objections to the Motion that have not been withdrawn, waived, or settled are hereby

---

[3]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To

overruled on the merits and denied with prejudice.  This Interim Order shall become effective immediately upon its entry.

B.      Jurisdiction and Venue.  The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A) and (M). Venue of the Chapter 11 Cases and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      Necessity of Relief Requested.   Good cause has been shown for the entry of this Interim Order.  The Debtors have an immediate need to use Cash Collateral for working capital in order to pay ordinary course obligations such as those to vendors, utilities, taxing authorities, insurance, and to pay for necessary ordinary course property maintenance and projects.  Without the ability to use Cash Collateral as provided by this Interim Order, the Debtors and their Estates would suffer immediate and irreparable harm, and the relief granted by this Interim Order is necessary to avoid such harm.  The terms for the use of Cash Collateral pursuant to this Interim Order are fair and reasonable and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.  The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and (d).  The use of Cash Collateral in accordance with this Interim Order is therefore in the best interests of the Debtors and their Estates, their creditors, and other parties in interest.

D.      Use of Cash Collateral.   All Cash Collateral may be used as and to the extent set forth in this Interim Order in accordance with the Budgets for general operating, corporate, and working capital purposes of the Debtors as well as the costs of administering these Chapter 11 Cases.

---

the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

E.      <u>Adequate Protection of Real Property Lenders</u>.  Subject to the Carve-Out, the Real Property Lenders shall be entitled, pursuant to sections 361 and 363 of the Bankruptcy Code, to adequate protection, as and to the extent set forth in this Interim Order, for the diminution in the value, if any, of their respective interests in the Estates' interests in the Prepetition Collateral as of the Petition Date resulting from the use, sale, or lease by the Debtors of the Prepetition Collateral (including the use of any Cash Collateral).

Based upon the foregoing findings and conclusions, the Motion and the record before this Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      <u>Motion Granted</u>.    The Motion is GRANTED on an interim basis, and the Debtors' use of Cash Collateral is authorized on an interim basis, in accordance with the terms and conditions set forth in this Interim Order.

2.      <u>Objections to Entry of Interim Order Overruled</u>.  All objections to the entry of this Interim Order, to the extent not withdrawn, waived, or resolved, are hereby denied and overruled.

3.      <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Interim Order, the Debtors are authorized to use the Cash Collateral during the 30-day period commencing as of the date of entry of this Interim Order (the "<u>Interim Period</u>") through and including the occurrence of the Termination Date (defined below).  The Debtors shall use the Prepetition Collateral, including all Cash Collateral, solely to the extent consistent with the Budgets, which are attached hereto as **<u>Exhibit 1</u>**, in an amount that would not cause the Debtors to use Cash Collateral for operating disbursements and capital expenditures in an aggregate cumulative amount greater than 25% of the operating disbursements and capital expenditures, taken together, for each week in the Budgets.

4.      Carve-Out.  Notwithstanding anything to the contrary in this Interim Order, the Debtors' obligations to the Real Property Lenders, and the liens and security interests granted by this Interim Order or under the Prepetition Loans, and the payment of all such obligations, shall be subject and subordinate in all respects to payment of the following fees and expenses: (i) all unpaid fees required to be paid to the Clerk of the Court or statutory fees payable to the U.S. Trustee under 28 U.S.C. § 1930, with interest at the statutory rate pursuant to 31 U.S.C. § 3717, which shall not be limited by any Budget; (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under Bankruptcy Code section 726(b), (iii) to the extent allowed at any time (whether by interim order, final order, procedural order or otherwise), all unpaid fees and expenses incurred by persons or firms retained by the Debtors or any official committee of unsecured creditors appointed in the chapter 11 cases  (the "Chapter 11 Professionals") pursuant to Bankruptcy Code section 327, 328, 363 or 1103, as applicable, in the amounts set forth in the then-in-effect Administrative Budget, which such amounts may be escrowed on a weekly basis into a segregated account held by Potter Anderson & Corroon LLP (the "Funded Reserve Account") in trust for the benefit of the Chapter 11 Professionals pursuant to the amounts set forth in the Administrative Budget (the foregoing clauses (i) through (iii), collectively, the "Carve-Out").  All Debtors and their estates shall be jointly and severally liable for the amounts set forth in the Administrative Budget.  For the avoidance of doubt, nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement, or compensation described herein.

5.      Adequate Protection Liens.  Pursuant to 11 U.S.C. § 552, to the extent of any diminution in the value of any Real Property Lender's Prepetition Collateral, the Real Property Lenders are granted replacement liens on, and security interests in, all existing and hereinafter

5

acquired property and assets of each specific Debtor counterparty (on a loan-by-loan basis) to such Real Property Lender, of every kind and character, to the extent and in the same validity, priority, and enforceability that such Real Property Lender held of such Debtor as of the commencement of the Chapter 11 Cases, including without limitation such Debtor's Cash Collateral (the "Adequate Protection Liens").  For the avoidance of doubt, the Adequate Protection Liens shall not effect any cross-collateralization in favor of any Real Property Lenders unless and only to the extent that such Real Property Lender held a loan that was cross-collateralized as of the Petition Date; *provided that* the Adequate Protection Liens shall be subject and subordinate to the Carve-Out.

6.      Modification of Automatic Stay.  The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to permit the Debtors to grant the Adequate Protection Liens and to permit the Debtors to perform such acts as may be requested to assure the perfection and priority of the Adequate Protection Liens.

7.      Perfection of Adequate Protection Liens.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the security interests and liens granted under this Interim Order, without the necessity of filing or recording any mortgage, financing statement, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action to validate or perfect (in accordance with applicable non-bankruptcy law) the security interests and liens granted herein, or to entitle the Real Property Lenders to the priorities granted herein.  Notwithstanding the foregoing, the Real Property Lenders may file such financing statements, mortgages, deeds of trust, notices of lien, or similar instruments, or otherwise confirm perfection of such liens, security

interests, and mortgages without seeking modification of the automatic stay under section 362 of the Bankruptcy Code and all such documents shall be deemed to have been filed or recorded at the time of and on the Petition Date.

8.      Termination Date.  The Debtors' right to use Cash Collateral of any Real Property Lender shall terminate on the earlier to occur of the following (a "Termination Date"): (x) 11:59 p.m. ET, at the expiration of the Interim Period, unless (i) a further Interim Order or Final Order granting the relief requested in the Motion is entered by the Court extending the Debtors' right to use Cash Collateral as to that Real Property Lender, or (ii) the Debtors and such Real Property Lender agree in writing to extend the Debtors' right to use Cash Collateral; and (y) the date upon which the Court issues an order following notice and a hearing providing for the termination of the further use of Cash Collateral due to the failure by the Debtors to comply with the material terms, covenants, or conditions of this Interim Order or otherwise.

9.      Funded Reserve Account.  The Debtors shall use the funds held in the Funded Reserve Account exclusively to pay allowed fees of the Chapter 11 Professionals and other obligations included within the Carve-Out, as applicable, as they become allowed and payable pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any interim or final orders of this Court.

10.      Immediate Effect.  This Interim Order shall constitute findings of fact and conclusions of law and shall be effective as of the date of its entry.  Notwithstanding Bankruptcy Rules 6004(h) or any other Bankruptcy Rule, this Interim Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Interim Order.

11.     <u>Miscellaneous</u>.

(a)     <u>Retention of Jurisdiction</u>.     The Court has and will retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement this Interim Order according to its terms.

(b)     <u>Debtor Authorization to Effectuate Relief</u>.  The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order.

12.     <u>Final Hearing</u>.   The Final Hearing on the Motion shall occur before the Court on [_____] at [_____] (Prevailing Eastern Time) at the United States Bankruptcy Court for the District of Delaware, 824 North Market Street, 6th Floor, Courtroom No. 1, Wilmington, Delaware 19801.

13.     <u>Objections to Entry of the Final Order</u>.   The Debtors shall serve copies of the Motion and this Interim Order as required by Local Rule 9013-1(m).   Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections by not later than [_____] at 4:00 p.m. (Prevailing Eastern Time).

**EXHIBIT 1**

**Budgets**

**MOM CA Investco LLC, et al.,**

DRAFT - SUBJECT TO MATERIAL CHANGE | CONFIDENTIAL

Professional Fee Forecast

*($ USD)*

| | Role | Week 1 3/14 | Week 2 3/21 | Week 3 3/28 | Week 4 4/4 | Week 5 4/11 | Week 6 4/18 | Week 7 4/25 |
|---|---|---|---|---|---|---|---|---|
| **I. Accrued Professional Fees** | | | | | | | | |
| **Company Advisors** | **Role** | | | | | | | |
| Robbin Itkin[1] | Independent Director | $        - | $        - | $        - | $   35,000 | $        - | $        - | $        - |
| Buchalter | Legal Advisor | 150,000 | 150,000 | 150,000 | 90,000 | 90,000 | 90,000 | 90,000 |
| Potter Anderson & Corroon | Legal Advisor | 80,000 | 80,000 | 80,000 | 80,000 | 80,000 | 80,000 | 80,000 |
| Mark Shinderman/FTI | CRO | 190,000 | 190,000 | 190,000 | 190,000 | 190,000 | 190,000 | 165,000 |
| Stretto | Noticing Agent | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| **Subtotal - Company Advisors** | | **435,000** | **435,000** | **435,000** | **410,000** | **375,000** | **375,000** | **350,000** |
| **UCC Advisors** | | | | | | | | |
| TBD | Financial Advisor | - | - | - | - | - | - | - |
| TBD | Legal Advisor | - | - | - | - | - | - | - |
| **Subtotal - UCC Advisors** | | **-** | **-** | **-** | **-** | **-** | **-** | **-** |
| **Lender Advisors** | | | | | | | | |
| TBD | Financial Advisor | - | - | - | - | - | - | - |
| TBD | Legal Advisor | - | - | - | - | - | - | - |
| **Subtotal - Lenders** | | **-** | **-** | **-** | **-** | **-** | **-** | **-** |
| **Total Accrued Professional Fees** | | $ **435,000** | $ **435,000** | $ **435,000** | $ **410,000** | $ **375,000** | $ **375,000** | $ **350,000** |

Note:

1. March fee of $35K to be paid out of retainer.

**MOM CA Investco LLC, et al.,**  <span style="color:red">DRAFT - SUBJECT TO MATERIAL CHANGE | CONFIDENTIAL</span>
Professional Fee Forecast
*($ USD)*

| Week ending (Fri) | Role | Week 8 5/2 | Week 9 5/9 | Week 10 5/16 | Week 11 5/23 | Week 12 5/30 | Week 13 6/6 | 13-Week Total |
|---|---|---|---|---|---|---|---|---|
| **I. Accrued Professional Fees** | | | | | | | | |
| **Company Advisors** | **Role** | | | | | | | |
| Robbin Itkin[1] | Independent Director | $ 35,000 | $ - | $ - | $ - | $ - | $ 35,000 | $ 105,000 |
| Buchalter | Legal Advisor | 90,000 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 1,462,500 |
| Potter Anderson & Corroon | Legal Advisor | 80,000 | 80,000 | 80,000 | 80,000 | 80,000 | 80,000 | 1,040,000 |
| Mark Shinderman/FTI | CRO | 165,000 | 140,000 | 140,000 | 140,000 | 140,000 | 140,000 | 2,170,000 |
| Stretto | Noticing Agent | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 195,000 |
| **Subtotal - Company Advisors** | | **385,000** | **347,500** | **347,500** | **347,500** | **347,500** | **382,500** | **4,972,500** |
| **UCC Advisors** | | | | | | | | |
| TBD | Financial Advisor | - | - | - | - | - | - | - |
| TBD | Legal Advisor | - | - | - | - | - | - | - |
| **Subtotal - UCC Advisors** | | **-** | **-** | **-** | **-** | **-** | **-** | **-** |
| **Lender Advisors** | | | | | | | | |
| TBD | Financial Advisor | - | - | - | - | - | - | - |
| TBD | Legal Advisor | - | - | - | - | - | - | - |
| **Subtotal - Lenders** | | **-** | **-** | **-** | **-** | **-** | **-** | **-** |
| **Total Accrued Professional Fees** | | **$ 385,000** | **$ 347,500** | **$ 347,500** | **$ 347,500** | **$ 347,500** | **$ 382,500** | **$ 4,972,500** |

Note:
1. March fee of $35K to be paid out of retainer.

**Retreat at Laguna Villas, LLC**
13-Week Cash Flow

DRAFT - SUBJECT TO MATERIAL CHANGE | CONFIDENTIAL

($ USD)

| | Week 1 3/14 | Week 2 3/21 | Week 3 3/28 | Week 4 4/4 | Week 5 4/11 | Week 6 4/18 | Week 7 4/25 | Week 8 5/2 | Week 9 5/9 | Week 10 5/16 | Week 11 5/23 | Week 12 5/30 | Week 13 6/6 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Collections** | | | | | | | | | | | | | | |
| Receipts | $ 19,193 | $ 19,193 | $ 19,193 | $ 19,193 | $ 19,193 | $ 19,193 | $ 19,193 | $ 19,193 | $ 19,193 | $ 19,193 | $ 19,193 | $ 19,193 | $ 19,193 | 249,506 |
| **Total Collections** | $ 19,193 | $ 19,193 | $ 19,193 | $ 19,193 | $ 19,193 | $ 19,193 | $ 19,193 | $ 19,193 | $ 19,193 | $ 19,193 | $ 19,193 | $ 19,193 | $ 19,193 | 249,506 |
| | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Operating Expenses | $ - | $ - | $ - | $ 6,422 | $ - | $ - | $ - | $ 6,422 | $ - | $ - | $ - | $ 6,422 | | $ 19,265 |
| Property Tax | - | - | - | - | 41,612 | - | - | - | - | - | - | - | - | 41,612 |
| Insurance | - | - | - | 716 | - | - | - | 716 | - | - | - | 716 | - | 2,149 |
| TOT | - | - | - | - | - | - | - | 34,931 | - | - | - | - | - | 34,931 |
| Hotel & Short Term Rental Management i | - | - | - | 4,990 | - | - | - | 4,990 | - | - | - | 4,990 | - | 14,970 |
| Management Fee | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll | - | 4,464 | - | 4,464 | - | 4,464 | - | 4,464 | - | 4,464 | - | 4,464 | - | 26,786 |
| Tips | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Ground Lease payment | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Disbursements** | $ - | $ 4,464 | $ - | $ 16,592 | $ 41,612 | $ 4,464 | $ - | $ 51,523 | $ - | $ 4,464 | $ - | $ 16,592 | $ - | $ 139,713 |
| | | | | | | | | | | | | | | |
| **Total Operating Cash Flow** | $ 19,193 | $ 14,728 | $ 19,193 | $ 2,600 | $ (22,420) | $ 14,728 | $ 19,193 | $ (32,331) | $ 19,193 | $ 14,728 | $ 19,193 | $ 2,600 | $ 19,193 | 109,793 |
| | | | | | | | | | | | | | | |
| **Beginning Cash balance** | $ - | $ 19,193 | $ 33,921 | $ 53,114 | $ 55,714 | $ 33,295 | $ 48,023 | $ 67,216 | $ 34,885 | $ 54,078 | $ 68,807 | $ 87,999 | $ 90,600 | $ - |
| Total Operating Cash Flow | 19,193 | 14,728 | 19,193 | 2,600 | (22,420) | 14,728 | 19,193 | (32,331) | 19,193 | 14,728 | 19,193 | 2,600 | 19,193 | 109,793 |
| **Ending cash balance** | $ 19,193 | $ 33,921 | $ 53,114 | $ 55,714 | $ 33,295 | $ 48,023 | $ 67,216 | $ 34,885 | $ 54,078 | $ 68,807 | $ 87,999 | $ 90,600 | $ 109,793 | $ 109,793 |

**Sunset Cove Villas, LLC**
13-Week Cash Flow

DRAFT - SUBJECT TO MATERIAL CHANGE | CONFIDENTIAL

*($ USD)*

| | Week 1 3/14 | Week 2 3/21 | Week 3 3/28 | Week 4 4/4 | Week 5 4/11 | Week 6 4/18 | Week 7 4/25 | Week 8 5/2 | Week 9 5/9 | Week 10 5/16 | Week 11 5/23 | Week 12 5/30 | Week 13 6/6 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Collections** | | | | | | | | | | | | | | |
| Receipts | $ 38,029 | $ 38,029 | $ 38,029 | $ 38,029 | $ 38,029 | $ 38,029 | $ 38,029 | $ 38,029 | $ 38,029 | $ 38,029 | $ 38,029 | $ 38,029 | $ 38,029 | 494,376 |
| **Total Collections** | $ 38,029 | $ 38,029 | $ 38,029 | $ 38,029 | $ 38,029 | $ 38,029 | $ 38,029 | $ 38,029 | $ 38,029 | $ 38,029 | $ 38,029 | $ 38,029 | $ 38,029 | 494,376 |
| | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Operating Expenses | $ - | $ - | $ - | $ 14,813 | | | | $ 14,813 | $ - | $ - | $ - | $ 14,813 | $ - | $ 44,438 |
| Property Tax | - | - | - | - | 84,082 | - | - | - | - | - | - | - | - | 84,082 |
| Insurance | - | - | - | 1,340 | - | - | - | 1,340 | - | - | - | 1,340 | - | 4,021 |
| TOT | - | - | - | - | - | - | - | 69,213 | - | - | - | - | - | 69,213 |
| Hotel & Short Term Rental Management | - | - | - | 9,888 | - | - | - | 9,888 | - | - | - | 9,888 | - | 29,663 |
| Management Fee | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll | - | 4,464 | - | 4,464 | - | 4,464 | - | 4,464 | - | 4,464 | - | 4,464 | - | 26,786 |
| Tips | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Ground Lease payment | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Disbursements** | $ - | $ 4,464 | $ - | $ 30,505 | $ 84,082 | $ 4,464 | $ - | $ 99,718 | $ - | $ 4,464 | $ - | $ 30,505 | $ - | $ 258,203 |
| | | | | | | | | | | | | | | |
| **Total Operating Cash Flow** | $ 38,029 | $ 33,565 | $ 38,029 | $ 7,524 | $ (46,053) | $ 33,565 | $ 38,029 | $ (61,689) | $ 38,029 | $ 33,565 | $ 38,029 | $ 7,524 | $ 38,029 | $ 236,173 |
| | | | | | | | | | | | | | | |
| **Beginning Cash balance** | $ - | $ 38,029 | $ 71,594 | $ 109,622 | $ 117,146 | $ 71,093 | $ 104,658 | $ 142,687 | $ 80,998 | $ 119,027 | $ 152,591 | $ 190,620 | $ 198,144 | $ - |
| Total Operating Cash Flow | 38,029 | 33,565 | 38,029 | 7,524 | (46,053) | 33,565 | 38,029 | (61,689) | 38,029 | 33,565 | 38,029 | 7,524 | 38,029 | 236,173 |
| **Ending cash balance** | $ 38,029 | $ 71,594 | $ 109,622 | $ 117,146 | $ 71,093 | $ 104,658 | $ 142,687 | $ 80,998 | $ 119,027 | $ 152,591 | $ 190,620 | $ 198,144 | $ 236,173 | $ 236,173 |

**Duplex at Sleepy Hollow, LLC**
13-Week Cash Flow

*($ USD)*

<span style="color:red">DRAFT - SUBJECT TO MATERIAL CHANGE | CONFIDENTIAL</span>

| | Week 1 3/14 | Week 2 3/21 | Week 3 3/28 | Week 4 4/4 | Week 5 4/11 | Week 6 4/18 | Week 7 4/25 | Week 8 5/2 | Week 9 5/9 | Week 10 5/16 | Week 11 5/23 | Week 12 5/30 | Week 13 6/6 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Collections** | | | | | | | | | | | | | | |
| Receipts | $ 3,980 | $ 3,980 | $ 3,980 | $ 3,980 | $ 3,980 | $ 3,980 | $ 3,980 | $ 3,980 | $ 3,980 | $ 3,980 | $ 3,980 | $ 3,980 | $ 3,980 | 51,744 |
| **Total Collections** | $ 3,980 | $ 3,980 | $ 3,980 | $ 3,980 | $ 3,980 | $ 3,980 | $ 3,980 | $ 3,980 | $ 3,980 | $ 3,980 | $ 3,980 | $ 3,980 | $ 3,980 | 51,744 |
| | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Operating Expenses | $ 366 | $ 366 | $ 366 | $ 366 | $ 366 | $ 366 | $ 366 | $ 366 | $ 366 | $ 366 | $ 366 | $ 366 | $ 366 | 4,755 |
| Property Tax | - | - | - | - | 13,280 | - | - | - | - | - | - | - | - | 13,280 |
| Insurance | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| TOT | - | - | - | - | - | - | - | 7,244 | - | - | - | - | - | 7,244 |
| Hotel & Short Term Rental Management | - | - | - | 1,035 | - | - | - | 1,035 | - | - | - | 1,035 | - | 3,105 |
| Management Fee | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll | - | 1,116 | - | 1,116 | - | 1,116 | - | 1,116 | - | 1,116 | - | 1,116 | - | 6,696 |
| Tips | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Ground Lease payment | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Disbursements** | $ 366 | $ 1,482 | $ 366 | $ 2,517 | $ 13,646 | $ 1,482 | $ 366 | $ 9,761 | $ 366 | $ 1,482 | $ 366 | $ 2,517 | $ 366 | 35,080 |
| | | | | | | | | | | | | | | |
| **Total Operating Cash Flow** | $ 3,615 | $ 2,499 | $ 3,615 | $ 1,464 | $ (9,666) | $ 2,499 | $ 3,615 | $ (5,780) | $ 3,615 | $ 2,499 | $ 3,615 | $ 1,464 | $ 3,615 | 16,664 |
| | | | | | | | | | | | | | | |
| **Beginning Cash balance** | $ - | $ 3,615 | $ 6,113 | $ 9,728 | $ 11,191 | $ 1,526 | $ 4,024 | $ 7,639 | $ 1,858 | $ 5,473 | $ 7,971 | $ 11,586 | $ 13,049 | - |
| Total Operating Cash Flow | 3,615 | 2,499 | 3,615 | 1,464 | (9,666) | 2,499 | 3,615 | (5,780) | 3,615 | 2,499 | 3,615 | 1,464 | 3,615 | 16,664 |
| **Ending cash balance** | $ 3,615 | $ 6,113 | $ 9,728 | $ 11,191 | $ 1,526 | $ 4,024 | $ 7,639 | $ 1,858 | $ 5,473 | $ 7,971 | $ 11,586 | $ 13,049 | $ 16,664 | 16,664 |

**Cliff Drive Properties DE, LLC**
13-Week Cash Flow

*($ USD)*

DRAFT - SUBJECT TO MATERIAL CHANGE | CONFIDENTIAL

| | Week 1 3/14 | Week 2 3/21 | Week 3 3/28 | Week 4 4/4 | Week 5 4/11 | Week 6 4/18 | Week 7 4/25 | Week 8 5/2 | Week 9 5/9 | Week 10 5/16 | Week 11 5/23 | Week 12 5/30 | Week 13 6/6 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Collections** | | | | | | | | | | | | | | |
| Receipts | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Collections** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Operating Expenses | $ 17 | $ 17 | $ 17 | $ 17 | $ 17 | $ 17 | $ 17 | $ 17 | $ 17 | $ 17 | $ 17 | $ 17 | $ 17 | 223 |
| Property Tax | - | - | - | - | 34,654 | - | - | - | - | - | - | - | - | 34,654 |
| Insurance | - | - | - | 1,738 | - | - | - | 1,738 | - | - | - | 1,738 | - | 5,213 |
| TOT | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Hotel & Short Term Rental Management | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Management Fee | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Tips | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Ground Lease payment | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Disbursements** | $ 17 | $ 17 | $ 17 | 1,755 | 34,671 | $ 17 | $ 17 | 1,755 | $ 17 | $ 17 | $ 17 | 1,755 | $ 17 | 40,090 |
| | | | | | | | | | | | | | | |
| **Total Operating Cash Flow** | $ (17) | $ (17) | $ (17) | $ (1,755) | $ (34,671) | $ (17) | $ (17) | $ (1,755) | $ (17) | $ (17) | $ (17) | $ (1,755) | $ (17) | $ (40,090) |
| | | | | | | | | | | | | | | |
| **Beginning Cash balance** | $ - | $ (17) | $ (34) | $ (51) | $ (1,806) | $ (36,477) | $ (36,494) | $ (36,511) | $ (38,266) | $ (38,283) | $ (38,301) | $ (38,318) | $ (40,073) | $ - |
| Total Operating Cash Flow | (17) | (17) | (17) | (1,755) | (34,671) | (17) | (17) | (1,755) | (17) | (17) | (17) | (1,755) | (17) | (40,090) |
| **Ending cash balance** | $ (17) | $ (34) | $ (51) | $ (1,806) | $ (36,477) | $ (36,494) | $ (36,511) | $ (38,266) | $ (38,283) | $ (38,301) | $ (38,318) | $ (40,073) | $ (40,090) | $ (40,090) |

**694 NCH Apartments, LLC**
13-Week Cash Flow

<span style="color:red">DRAFT - SUBJECT TO MATERIAL CHANGE | CONFIDENTIAL</span>

*($ USD)*

| | Week 1 3/14 | Week 2 3/21 | Week 3 3/28 | Week 4 4/4 | Week 5 4/11 | Week 6 4/18 | Week 7 4/25 | Week 8 5/2 | Week 9 5/9 | Week 10 5/16 | Week 11 5/23 | Week 12 5/30 | Week 13 6/6 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Collections** | | | | | | | | | | | | | | |
| Receipts | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Collections** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Operating Expenses | $ 260 | $ 260 | $ 260 | $ 260 | $ 260 | $ 260 | $ 260 | $ 260 | $ 260 | $ 260 | $ 260 | $ 260 | $ 260 | 3,380 |
| Property Tax | - | - | - | - | 26,134 | - | - | - | - | - | - | - | - | 26,134 |
| Insurance | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| TOT | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Hotel & Short Term Rental Management | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Management Fee | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Tips | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Ground Lease payment | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Disbursements** | $ 260 | $ 260 | $ 260 | $ 260 | $ 26,394 | $ 260 | $ 260 | $ 260 | $ 260 | $ 260 | $ 260 | $ 260 | $ 260 | 29,514 |
| | | | | | | | | | | | | | | |
| **Total Operating Cash Flow** | $ (260) | $ (260) | $ (260) | $ (260) | $ (26,394) | $ (260) | $ (260) | $ (260) | $ (260) | $ (260) | $ (260) | $ (260) | $ (260) | (29,514) |
| | | | | | | | | | | | | | | |
| **Beginning Cash balance** | $ - | $ (260) | $ (520) | $ (780) | $ (1,040) | $ (27,434) | $ (27,694) | $ (27,954) | $ (28,214) | $ (28,474) | $ (28,734) | $ (28,994) | $ (29,254) | $ - |
| Total Operating Cash Flow | (260) | (260) | (260) | (260) | (26,394) | (260) | (260) | (260) | (260) | (260) | (260) | (260) | (260) | (29,514) |
| **Ending cash balance** | $ (260) | $ (520) | $ (780) | $ (1,040) | $ (27,434) | $ (27,694) | $ (27,954) | $ (28,214) | $ (28,474) | $ (28,734) | $ (28,994) | $ (29,254) | $ (29,514) | (29,514) |

**Heisler Laguna, LLC**
13-Week Cash Flow

DRAFT - SUBJECT TO MATERIAL CHANGE | CONFIDENTIAL

*($ USD)*

| | Week 1 3/14 | Week 2 3/21 | Week 3 3/28 | Week 4 4/4 | Week 5 4/11 | Week 6 4/18 | Week 7 4/25 | Week 8 5/2 | Week 9 5/9 | Week 10 5/16 | Week 11 5/23 | Week 12 5/30 | Week 13 6/6 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Collections** | | | | | | | | | | | | | | |
| Receipts | $ - | $ - | $ - | $ 11,752 | $ - | $ - | $ - | $ 11,752 | $ - | $ - | $ - | $ 11,752 | $ - | $ 35,255 |
| **Total Collections** | **$ -** | **$ -** | **$ -** | **$ 11,752** | **$ -** | **$ -** | **$ -** | **$ 11,752** | **$ -** | **$ -** | **$ -** | **$ 11,752** | **$ -** | **$ 35,255** |
| | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Operating Expenses | $ 2,119 | $ 2,119 | $ 2,119 | $ 2,119 | $ 2,119 | $ 2,119 | $ 2,119 | $ 2,119 | $ 2,119 | $ 2,119 | $ 2,119 | $ 2,119 | $ 2,119 | 27,543 |
| Property Tax | - | - | - | - | 152,446 | - | - | - | - | - | - | - | - | 152,446 |
| Insurance | - | - | - | 657 | - | - | - | 657 | - | - | - | 657 | - | 1,970 |
| TOT | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Hotel & Short Term Rental Management | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Management Fee | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Tips | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Ground Lease payment | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Disbursements** | **$ 2,119** | **$ 2,119** | **$ 2,119** | **$ 2,775** | **$ 154,565** | **$ 2,119** | **$ 2,119** | **$ 2,775** | **$ 2,119** | **$ 2,119** | **$ 2,119** | **$ 2,775** | **$ 2,119** | **181,959** |
| | | | | | | | | | | | | | | |
| **Total Operating Cash Flow** | **$ (2,119)** | **$ (2,119)** | **$ (2,119)** | **$ 8,976** | **$ (154,565)** | **$ (2,119)** | **$ (2,119)** | **$ 8,976** | **$ (2,119)** | **$ (2,119)** | **$ (2,119)** | **$ 8,976** | **$ (2,119)** | **$ (146,704)** |
| | | | | | | | | | | | | | | |
| **Beginning Cash balance** | $ - | $ (2,119) | $ (4,237) | $ (6,356) | $ 2,620 | $ (151,945) | $ (154,063) | $ (156,182) | $ (147,206) | $ (149,324) | $ (151,443) | $ (153,562) | $ (144,585) | $ - |
| Total Operating Cash Flow | (2,119) | (2,119) | (2,119) | 8,976 | (154,565) | (2,119) | (2,119) | 8,976 | (2,119) | (2,119) | (2,119) | 8,976 | (2,119) | (146,704) |
| **Ending cash balance** | **$ (2,119)** | **$ (4,237)** | **$ (6,356)** | **$ 2,620** | **$ (151,945)** | **$ (154,063)** | **$ (156,182)** | **$ (147,206)** | **$ (149,324)** | **$ (151,443)** | **$ (153,562)** | **$ (144,585)** | **$ (146,704)** | **$ (146,704)** |

**Laguna Festival Center, LLC**
13-Week Cash Flow

*($ USD)*

DRAFT - SUBJECT TO MATERIAL CHANGE | CONFIDENTIAL

| | Week 1 3/14 | Week 2 3/21 | Week 3 3/28 | Week 4 4/4 | Week 5 4/11 | Week 6 4/18 | Week 7 4/25 | Week 8 5/2 | Week 9 5/9 | Week 10 5/16 | Week 11 5/23 | Week 12 5/30 | Week 13 6/6 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Collections** | | | | | | | | | | | | | | |
| Receipts | $ - | $ - | $ - | $ 28,785 | $ - | $ - | $ - | $ 28,785 | $ - | $ - | $ - | $ 28,785 | $ - | $ 86,356 |
| **Total Collections** | **$ -** | **$ -** | **$ -** | **$ 28,785** | **$ -** | **$ -** | **$ -** | **$ 28,785** | **$ -** | **$ -** | **$ -** | **$ 28,785** | **$ -** | **$ 86,356** |
| | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Operating Expenses | $ 1,205 | $ 1,205 | $ 1,205 | $ 1,205 | $ 1,205 | $ 1,205 | $ 1,205 | $ 1,205 | $ 1,205 | $ 1,205 | $ 1,205 | $ 1,205 | $ 1,205 | 15,662 |
| Property Tax | - | - | - | - | 60,592 | - | - | - | - | - | - | - | - | 60,592 |
| Insurance | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| TOT | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Hotel & Short Term Rental Management | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Management Fee | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Tips | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Ground Lease payment | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Disbursements** | **$ 1,205** | **$ 1,205** | **$ 1,205** | **$ 1,205** | **$ 61,797** | **$ 1,205** | **$ 1,205** | **$ 1,205** | **$ 1,205** | **$ 1,205** | **$ 1,205** | **$ 1,205** | **$ 1,205** | **76,254** |
| | | | | | | | | | | | | | | |
| **Total Operating Cash Flow** | **$ (1,205)** | **$ (1,205)** | **$ (1,205)** | **$ 27,581** | **$ (61,797)** | **$ (1,205)** | **$ (1,205)** | **$ 27,581** | **$ (1,205)** | **$ (1,205)** | **$ (1,205)** | **$ 27,581** | **$ (1,205)** | **$ 10,102** |
| | | | | | | | | | | | | | | |
| **Beginning Cash balance** | $ - | $ (1,205) | $ (2,410) | $ (3,614) | $ 23,966 | $ (37,830) | $ (39,035) | $ (40,240) | $ (12,659) | $ (13,864) | $ (15,069) | $ (16,274) | $ 11,307 | $ - |
| Total Operating Cash Flow | (1,205) | (1,205) | (1,205) | 27,581 | (61,797) | (1,205) | (1,205) | 27,581 | (1,205) | (1,205) | (1,205) | 27,581 | (1,205) | 10,102 |
| **Ending cash balance** | **$ (1,205)** | **$ (2,410)** | **$ (3,614)** | **$ 23,966** | **$ (37,830)** | **$ (39,035)** | **$ (40,240)** | **$ (12,659)** | **$ (13,864)** | **$ (15,069)** | **$ (16,274)** | **$ 11,307** | **$ 10,102** | **$ 10,102** |

**891 Laguna Canyon Road, LLC**
13-Week Cash Flow

DRAFT - SUBJECT TO MATERIAL CHANGE | CONFIDENTIAL

*($ USD)*

| | Week 1 3/14 | Week 2 3/21 | Week 3 3/28 | Week 4 4/4 | Week 5 4/11 | Week 6 4/18 | Week 7 4/25 | Week 8 5/2 | Week 9 5/9 | Week 10 5/16 | Week 11 5/23 | Week 12 5/30 | Week 13 6/6 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Collections** | | | | | | | | | | | | | | |
| Receipts | $ - | $ - | $ - | $ 1,144 | $ - | $ - | $ - | $ 1,144 | $ - | $ - | $ - | $ 1,144 | $ - | $ 3,433 |
| **Total Collections** | $ - | $ - | $ - | $ 1,144 | $ - | $ - | $ - | $ 1,144 | $ - | $ - | $ - | $ 1,144 | $ - | $ 3,433 |
| | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Operating Expenses | $ 380 | $ 380 | $ 380 | $ 380 | 380 | 380 | 380 | $ 380 | 380 | 380 | 380 | 380 | 380 | 4,944 |
| Property Tax | - | - | - | - | 34,619 | - | - | - | - | - | - | - | - | 34,619 |
| Insurance | - | - | - | 18,117 | - | - | - | 18,117 | - | - | - | 18,117 | - | 54,352 |
| TOT | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Hotel & Short Term Rental Management | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Management Fee | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Tips | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Ground Lease payment | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Disbursements** | $ 380 | $ 380 | $ 380 | 18,498 | 34,999 | $ 380 | $ 380 | 18,498 | $ 380 | $ 380 | $ 380 | 18,498 | $ 380 | 93,915 |
| | | | | | | | | | | | | | | |
| **Total Operating Cash Flow** | $ (380) | $ (380) | $ (380) | (17,353) | (34,999) | $ (380) | $ (380) | (17,353) | $ (380) | $ (380) | $ (380) | (17,353) | $ (380) | (90,482) |
| | | | | | | | | | | | | | | |
| **Beginning Cash balance** | $ - | $ (380) | (761) | (1,141) | (18,494) | (53,493) | (53,874) | (54,254) | (71,607) | (71,988) | (72,368) | (72,748) | (90,102) | - |
| Total Operating Cash Flow | (380) | (380) | (380) | (17,353) | (34,999) | (380) | (380) | (17,353) | (380) | (380) | (380) | (17,353) | (380) | (90,482) |
| **Ending cash balance** | $ (380) | $ (761) | (1,141) | (18,494) | (53,493) | (53,874) | (54,254) | (71,607) | (71,988) | (72,368) | (72,748) | (90,102) | (90,482) | (90,482) |

**777 at Laguna, LLC**
13-Week Cash Flow

DRAFT - SUBJECT TO MATERIAL CHANGE | CONFIDENTIAL

*($ USD)*

| | Week 1 3/14 | Week 2 3/21 | Week 3 3/28 | Week 4 4/4 | Week 5 4/11 | Week 6 4/18 | Week 7 4/25 | Week 8 5/2 | Week 9 5/9 | Week 10 5/16 | Week 11 5/23 | Week 12 5/30 | Week 13 6/6 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Collections** | | | | | | | | | | | | | | |
| Receipts | $ - | $ - | $ - | $ 11,615 | $ - | $ - | $ - | $ 11,615 | $ - | $ - | $ - | $ 11,615 | $ - | $ 34,844 |
| **Total Collections** | $ - | $ - | $ - | $ 11,615 | $ - | $ - | $ - | $ 11,615 | $ - | $ - | $ - | $ 11,615 | $ - | $ 34,844 |
| | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Operating Expenses | $ 3,197 | $ 3,197 | $ 3,197 | $ 3,197 | $ 3,197 | $ 3,197 | $ 3,197 | $ 3,197 | $ 3,197 | $ 3,197 | $ 3,197 | $ 3,197 | $ 3,197 | 41,556 |
| Property Tax | - | - | - | - | 32,663 | - | - | - | - | - | - | - | - | 32,663 |
| Insurance | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| TOT | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Hotel & Short Term Rental Management | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Management Fee | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Tips | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Ground Lease payment | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Disbursements** | $ 3,197 | $ 3,197 | $ 3,197 | $ 3,197 | $ 35,859 | $ 3,197 | $ 3,197 | $ 3,197 | $ 3,197 | $ 3,197 | $ 3,197 | $ 3,197 | $ 3,197 | 74,219 |
| | | | | | | | | | | | | | | |
| **Total Operating Cash Flow** | $ (3,197) | $ (3,197) | $ (3,197) | $ 8,418 | $ (35,859) | $ (3,197) | $ (3,197) | $ 8,418 | $ (3,197) | $ (3,197) | $ (3,197) | $ 8,418 | $ (3,197) | (39,375) |
| | | | | | | | | | | | | | | |
| **Beginning Cash balance** | $ - | $ (3,197) | $ (6,393) | $ (9,590) | $ (1,172) | $ (37,031) | $ (40,228) | $ (43,424) | $ (35,006) | $ (38,203) | $ (41,400) | $ (44,596) | $ (36,178) | - |
| Total Operating Cash Flow | (3,197) | (3,197) | (3,197) | 8,418 | (35,859) | (3,197) | (3,197) | 8,418 | (3,197) | (3,197) | (3,197) | 8,418 | (3,197) | (39,375) |
| **Ending cash balance** | $ (3,197) | $ (6,393) | $ (9,590) | $ (1,172) | $ (37,031) | $ (40,228) | $ (43,424) | $ (35,006) | $ (38,203) | $ (41,400) | $ (44,596) | $ (36,178) | $ (39,375) | (39,375) |

**Laguna Art District Complex, LLC**
13-Week Cash Flow

<span style="color:red">DRAFT - SUBJECT TO MATERIAL CHANGE | CONFIDENTIAL</span>

*($ USD)*

| | Week 1 3/14 | Week 2 3/21 | Week 3 3/28 | Week 4 4/4 | Week 5 4/11 | Week 6 4/18 | Week 7 4/25 | Week 8 5/2 | Week 9 5/9 | Week 10 5/16 | Week 11 5/23 | Week 12 5/30 | Week 13 6/6 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Collections** | | | | | | | | | | | | | | |
| Receipts | $ - | $ - | $ - | 44,706 | $ - | $ - | $ - | 44,706 | $ - | $ - | $ - | 44,706 | $ - | $ 134,118 |
| **Total Collections** | $ - | $ - | $ - | **44,706** | $ - | $ - | $ - | **44,706** | $ - | $ - | $ - | **44,706** | $ - | **$ 134,118** |
| | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Operating Expenses | $ 631 | 631 | 631 | 631 | 631 | 631 | 631 | 631 | 631 | 631 | 631 | 631 | 631 | 8,199 |
| Property Tax | - | - | - | - | 5,975 | - | - | - | - | - | - | - | - | 5,975 |
| Insurance | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| TOT | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Hotel & Short Term Rental Management | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Management Fee | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Tips | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Ground Lease payment | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Disbursements** | $ 631 | 631 | 631 | 631 | 6,606 | 631 | 631 | 631 | 631 | 631 | 631 | 631 | 631 | 14,174 |
| | | | | | | | | | | | | | | |
| **Total Operating Cash Flow** | $ (631) | (631) | (631) | 44,075 | (6,606) | (631) | (631) | 44,075 | (631) | (631) | (631) | 44,075 | (631) | 119,944 |
| | | | | | | | | | | | | | | |
| **Beginning Cash balance** | $ - | (631) | (1,261) | (1,892) | 42,183 | 35,577 | 34,947 | 34,316 | 78,391 | 77,761 | 77,130 | 76,499 | 120,575 | - |
| Total Operating Cash Flow | (631) | (631) | (631) | 44,075 | (6,606) | (631) | (631) | 44,075 | (631) | (631) | (631) | 44,075 | (631) | 119,944 |
| **Ending cash balance** | $ (631) | (1,261) | (1,892) | 42,183 | 35,577 | 34,947 | 34,316 | 78,391 | 77,761 | 77,130 | 76,499 | 120,575 | 119,944 | 119,944 |

**Tesoro Redlands DE, LLC**
13-Week Cash Flow

DRAFT - SUBJECT TO MATERIAL CHANGE | CONFIDENTIAL

*($ USD)*

| | Week 1 3/14 | Week 2 3/21 | Week 3 3/28 | Week 4 4/4 | Week 5 4/11 | Week 6 4/18 | Week 7 4/25 | Week 8 5/2 | Week 9 5/9 | Week 10 5/16 | Week 11 5/23 | Week 12 5/30 | Week 13 6/6 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Collections** | | | | | | | | | | | | | | |
| Receipts | $ - | $ - | $ - | $ 331,489 | $ - | $ - | $ - | $ 331,489 | $ - | $ - | $ - | $ 331,489 | | $ 994,466 |
| **Total Collections** | $ - | $ - | $ - | $ 331,489 | $ - | $ - | $ - | $ 331,489 | $ - | $ - | $ - | $ 331,489 | $ - | $ 994,466 |
| | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Operating Expenses | $ 15,292 | $ 15,292 | $ 15,292 | $ 15,292 | $ 15,292 | $ 15,292 | $ 15,292 | $ 15,292 | $ 15,292 | $ 15,292 | $ 15,292 | $ 15,292 | $ 15,292 | 198,798 |
| Property Tax | - | - | - | - | 191,961 | - | - | - | - | - | - | - | - | 191,961 |
| Insurance | 1,076 | 1,076 | 1,076 | 1,076 | 1,076 | 1,076 | 1,076 | 1,076 | 1,076 | 1,076 | 1,076 | 1,076 | 1,076 | 13,989 |
| TOT | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Hotel & Short Term Rental Management | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Management Fee | - | - | - | 9,945 | - | - | - | 9,945 | - | - | - | 9,945 | - | 29,834 |
| Payroll | - | 15,638 | - | 15,638 | - | 15,638 | - | 15,638 | - | 15,638 | - | 15,638 | - | 93,827 |
| Tips | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Ground Lease payment | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Disbursements** | $ 16,368 | $ 32,006 | $ 16,368 | $ 41,951 | $ 208,329 | $ 32,006 | $ 16,368 | $ 41,951 | $ 16,368 | $ 32,006 | $ 16,368 | $ 41,951 | $ 16,368 | $ 528,409 |
| | | | | | | | | | | | | | | |
| **Total Operating Cash Flow** | $ (16,368) | $ (32,006) | $ (16,368) | $ 289,538 | $ (208,329) | $ (32,006) | $ (16,368) | $ 289,538 | $ (16,368) | $ (32,006) | $ (16,368) | $ 289,538 | $ (16,368) | $ 466,057 |
| | | | | | | | | | | | | | | |
| **Beginning Cash balance** | $ - | $ (16,368) | $ (48,374) | $ (64,743) | $ 224,795 | $ 16,467 | $ (15,539) | $ (31,908) | $ 257,630 | $ 241,262 | $ 209,256 | $ 192,888 | $ 482,426 | $ - |
| Total Operating Cash Flow | (16,368) | (32,006) | (16,368) | 289,538 | (208,329) | (32,006) | (16,368) | 289,538 | (16,368) | (32,006) | (16,368) | 289,538 | (16,368) | 466,057 |
| **Ending cash balance** | $ (16,368) | $ (48,374) | $ (64,743) | $ 224,795 | $ 16,467 | $ (15,539) | $ (31,908) | $ 257,630 | $ 241,262 | $ 209,256 | $ 192,888 | $ 482,426 | $ 466,057 | $ 466,057 |

**Aryabhata Group, LLC**
13-Week Cash Flow

DRAFT - SUBJECT TO MATERIAL CHANGE | CONFIDENTIAL

*($ USD)*

| | Week 1 3/14 | Week 2 3/21 | Week 3 3/28 | Week 4 4/4 | Week 5 4/11 | Week 6 4/18 | Week 7 4/25 | Week 8 5/2 | Week 9 5/9 | Week 10 5/16 | Week 11 5/23 | Week 12 5/30 | Week 13 6/6 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Collections** | | | | | | | | | | | | | | |
| Receipts | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Collections** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Operating Expenses | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Utilities | - | - | - | 670 | - | - | - | 670 | - | - | - | 670 | - | 2,011 |
| Property Tax | - | - | - | - | 253,081 | - | - | - | - | - | - | - | - | 253,081 |
| Insurance | - | - | - | 1,548 | - | - | - | 1,548 | - | - | - | 1,548 | - | 4,644 |
| TOT | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Hotel & Short Term Rental Management | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Management Fee | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Tips | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Ground Lease payment | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Disbursements** | $ - | $ - | $ - | $ 2,218 | $ 253,081 | $ - | $ - | $ 2,218 | $ - | $ - | $ - | $ 2,218 | $ - | $ 259,736 |
| | | | | | | | | | | | | | | |
| **Total Operating Cash Flow** | $ - | $ - | $ - | $ (2,218) | $ (253,081) | $ - | $ - | $ (2,218) | $ - | $ - | $ - | $ (2,218) | $ - | $ (259,736) |
| | | | | | | | | | | | | | | |
| **Beginning Cash balance** | $ - | $ - | $ - | $ - | $ (2,218) | $ (255,299) | $ (255,299) | $ (255,299) | $ (257,517) | $ (257,517) | $ (257,517) | $ (257,517) | $ (259,736) | $ - |
| Total Operating Cash Flow | - | - | - | (2,218) | (253,081) | - | - | (2,218) | - | - | - | (2,218) | - | (259,736) |
| **Ending cash balance** | $ - | $ - | $ - | $ (2,218) | $ (255,299) | $ (255,299) | $ (255,299) | $ (257,517) | $ (257,517) | $ (257,517) | $ (257,517) | $ (259,736) | $ (259,736) | $ (259,736) |

**Hotel Laguna, LLC**
13-Week Cash Flow

DRAFT - SUBJECT TO MATERIAL CHANGE | CONFIDENTIAL

*($ USD)*

| | Week 1 3/14 | Week 2 3/21 | Week 3 3/28 | Week 4 4/4 | Week 5 4/11 | Week 6 4/18 | Week 7 4/25 | Week 8 5/2 | Week 9 5/9 | Week 10 5/16 | Week 11 5/23 | Week 12 5/30 | Week 13 6/6 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Collections** | | | | | | | | | | | | | | |
| Receipts | $ 205,370 | $ 205,370 | $ 205,370 | $ 205,370 | $ 205,370 | $ 205,370 | $ 205,370 | $ 205,370 | $ 205,370 | $ 205,370 | $ 205,370 | $ 205,370 | $ 205,370 | $ 2,669,816 |
| **Total Collections** | $ 205,370 | $ 205,370 | $ 205,370 | $ 205,370 | $ 205,370 | $ 205,370 | $ 205,370 | $ 205,370 | $ 205,370 | $ 205,370 | $ 205,370 | $ 205,370 | $ 205,370 | $ 2,669,816 |
| | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Operating Expenses | $ 68,931 | $ 68,931 | $ 68,931 | $ 68,931 | $ 68,931 | $ 68,931 | $ 68,931 | $ 68,931 | $ 68,931 | $ 68,931 | $ 68,931 | $ 68,931 | $ 68,931 | 896,098 |
| Property Tax | - | - | - | - | 160,143 | - | - | - | - | - | - | - | - | 160,143 |
| Insurance | - | - | - | 9,499 | - | - | - | 9,499 | - | - | - | 9,499 | - | 28,496 |
| TOT | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Hotel & Short Term Rental Management | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Management Fee | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll | - | 187,500 | - | 187,500 | - | 187,500 | - | 187,500 | - | 187,500 | - | 187,500 | - | 1,125,000 |
| Tips | 20,537 | 20,537 | 20,537 | 20,537 | 20,537 | 20,537 | 20,537 | 20,537 | 20,537 | 20,537 | 20,537 | 20,537 | 20,537 | 266,982 |
| Ground Lease payment | - | - | - | 250,000 | - | - | - | 250,000 | - | - | - | 250,000 | - | 750,000 |
| **Total Operating Disbursements** | $ 89,468 | $ 276,968 | $ 89,468 | $ 536,466 | $ 249,610 | $ 276,968 | $ 89,468 | $ 536,466 | $ 89,468 | $ 276,968 | $ 89,468 | $ 536,466 | $ 89,468 | $ 3,226,719 |
| | | | | | | | | | | | | | | |
| **Total Operating Cash Flow** | $ 115,903 | $ (71,597) | $ 115,903 | $ (331,096) | $ (44,240) | $ (71,597) | $ 115,903 | $ (331,096) | $ 115,903 | $ (71,597) | $ 115,903 | $ (331,096) | $ 115,903 | $ (556,903) |
| | | | | | | | | | | | | | | |
| **Beginning Cash balance** | $ - | $ 115,903 | $ 44,306 | $ 160,208 | $ (170,888) | $ (215,127) | $ (286,725) | $ (170,822) | $ (501,918) | $ (386,015) | $ (457,612) | $ (341,710) | $ (672,805) | $ - |
| Total Operating Cash Flow | 115,903 | (71,597) | 115,903 | (331,096) | (44,240) | (71,597) | 115,903 | (331,096) | 115,903 | (71,597) | 115,903 | (331,096) | 115,903 | (556,903) |
| **Ending cash balance** | $ 115,903 | $ 44,306 | $ 160,208 | $ (170,888) | $ (215,127) | $ (286,725) | $ (170,822) | $ (501,918) | $ (386,015) | $ (457,612) | $ (341,710) | $ (672,805) | $ (556,903) | $ (556,903) |

**4110 West 3rd Street DE, LLC**
13-Week Cash Flow

DRAFT - SUBJECT TO MATERIAL CHANGE | CONFIDENTIAL

*($ USD)*

| | Week 1 3/14 | Week 2 3/21 | Week 3 3/28 | Week 4 4/4 | Week 5 4/11 | Week 6 4/18 | Week 7 4/25 | Week 8 5/2 | Week 9 5/9 | Week 10 5/16 | Week 11 5/23 | Week 12 5/30 | Week 13 6/6 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Collections** | | | | | | | | | | | | | | |
| Receipts | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | | $ - |
| **Total Collections** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Operating Expenses | $ - | $ - | $ - | $ 72 | $ - | $ - | $ - | $ 72 | $ - | $ - | $ - | $ 72 | $ - | $ 216 |
| Property Tax | - | - | - | - | 38,645 | - | - | - | - | - | - | - | - | 38,645 |
| Insurance | - | - | - | 592 | - | - | - | 592 | - | - | - | 592 | - | 1,775 |
| TOT | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Hotel & Short Term Rental Management | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Management Fee | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Tips | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Ground Lease payment | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Disbursements** | $ - | $ - | $ - | 664 | 38,645 | $ - | $ - | 664 | $ - | $ - | $ - | 664 | $ - | $ 40,636 |
| | | | | | | | | | | | | | | |
| **Total Operating Cash Flow** | $ - | $ - | $ - | (664) | (38,645) | $ - | $ - | (664) | $ - | $ - | $ - | (664) | $ - | $ (40,636) |
| | | | | | | | | | | | | | | |
| **Beginning Cash balance** | $ - | $ - | $ - | $ - | (664) | (39,308) | (39,308) | (39,308) | (39,972) | (39,972) | (39,972) | (39,972) | (40,636) | $ - |
| Total Operating Cash Flow | - | - | - | (664) | (38,645) | - | - | (664) | - | - | - | (664) | - | (40,636) |
| **Ending cash balance** | $ - | $ - | $ - | (664) | (39,308) | (39,308) | (39,308) | (39,972) | (39,972) | (39,972) | (39,972) | (40,636) | (40,636) | (40,636) |

**314 S. Harvard DE, LLC**
13-Week Cash Flow

DRAFT - SUBJECT TO MATERIAL CHANGE | CONFIDENTIAL

*($ USD)*

| | Week 1 3/14 | Week 2 3/21 | Week 3 3/28 | Week 4 4/4 | Week 5 4/11 | Week 6 4/18 | Week 7 4/25 | Week 8 5/2 | Week 9 5/9 | Week 10 5/16 | Week 11 5/23 | Week 12 5/30 | Week 13 6/6 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Collections** | | | | | | | | | | | | | | |
| Receipts | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Collections** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Operating Expenses | $ - | $ - | $ - | 118 | $ - | $ - | $ - | 118 | $ - | $ - | $ - | 118 | $ - | 354 |
| Property Tax | - | - | - | - | 17,470 | - | - | - | - | - | - | - | - | 17,470 |
| Insurance | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| TOT | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Hotel & Short Term Rental Management | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Management Fee | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Tips | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Ground Lease payment | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Disbursements** | $ - | $ - | $ - | 118 | 17,470 | $ - | $ - | 118 | $ - | $ - | $ - | 118 | $ - | 17,824 |
| | | | | | | | | | | | | | | |
| **Total Operating Cash Flow** | $ - | $ - | $ - | (118) | (17,470) | $ - | $ - | (118) | $ - | $ - | $ - | (118) | $ - | (17,824) |
| | | | | | | | | | | | | | | |
| **Beginning Cash balance** | $ - | $ - | $ - | $ - | (118) | (17,588) | (17,588) | (17,588) | (17,706) | (17,706) | (17,706) | (17,706) | (17,824) | $ - |
| Total Operating Cash Flow | - | - | - | (118) | (17,470) | - | - | (118) | - | - | - | (118) | - | (17,824) |
| **Ending cash balance** | $ - | $ - | $ - | (118) | (17,588) | (17,588) | (17,588) | (17,706) | (17,706) | (17,706) | (17,706) | (17,824) | (17,824) | (17,824) |

**Laguna HI, LLC**
13-Week Cash Flow

*($ USD)*

DRAFT - SUBJECT TO MATERIAL CHANGE | CONFIDENTIAL

| | Week 1 3/14 | Week 2 3/21 | Week 3 3/28 | Week 4 4/4 | Week 5 4/11 | Week 6 4/18 | Week 7 4/25 | Week 8 5/2 | Week 9 5/9 | Week 10 5/16 | Week 11 5/23 | Week 12 5/30 | Week 13 6/6 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Collections** | | | | | | | | | | | | | | |
| Receipts | $ 53,690 | $ 53,690 | $ 53,690 | $ 53,690 | $ 53,690 | $ 53,690 | $ 53,690 | $ 53,690 | $ 53,690 | $ 53,690 | $ 53,690 | $ 53,690 | $ 53,690 | 697,975 |
| **Total Collections** | $ 53,690 | $ 53,690 | $ 53,690 | $ 53,690 | $ 53,690 | $ 53,690 | $ 53,690 | $ 53,690 | $ 53,690 | $ 53,690 | $ 53,690 | $ 53,690 | $ 53,690 | 697,975 |
| | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Operating Expenses | $ 6,351 | $ 6,351 | $ 6,351 | $ 6,351 | $ 6,351 | $ 6,351 | $ 6,351 | $ 6,351 | $ 6,351 | $ 6,351 | $ 6,351 | $ 6,351 | $ 6,351 | 82,568 |
| Property Tax | - | - | - | - | 114,822 | - | - | - | - | - | - | - | - | 114,822 |
| Insurance | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| TOT | - | - | - | - | - | - | - | 97,717 | - | - | - | - | - | 97,717 |
| Hotel & Short Term Rental Management | - | - | - | 13,960 | - | - | - | 13,960 | - | - | - | 13,960 | - | 41,879 |
| Management Fee | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll | - | 29,018 | - | 29,018 | - | 29,018 | - | 29,018 | - | 29,018 | - | 29,018 | - | 174,107 |
| Tips | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Ground Lease payment | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Disbursements** | $ 6,351 | $ 35,369 | $ 6,351 | $ 49,329 | $ 121,173 | $ 35,369 | $ 6,351 | $ 147,046 | $ 6,351 | $ 35,369 | $ 6,351 | $ 49,329 | $ 6,351 | 511,093 |
| | | | | | | | | | | | | | | |
| **Total Operating Cash Flow** | $ 47,339 | $ 18,321 | $ 47,339 | $ 4,362 | $ (67,483) | $ 18,321 | $ 47,339 | $ (93,356) | $ 47,339 | $ 18,321 | $ 47,339 | $ 4,362 | $ 47,339 | 186,882 |
| | | | | | | | | | | | | | | |
| **Beginning Cash balance** | $ - | $ 47,339 | $ 65,660 | $ 112,999 | $ 117,361 | $ 49,878 | $ 68,199 | $ 115,538 | $ 22,182 | $ 69,521 | $ 87,843 | $ 135,182 | $ 139,543 | - |
| Total Operating Cash Flow | 47,339 | 18,321 | 47,339 | 4,362 | (67,483) | 18,321 | 47,339 | (93,356) | 47,339 | 18,321 | 47,339 | 4,362 | 47,339 | 186,882 |
| **Ending cash balance** | $ 47,339 | $ 65,660 | $ 112,999 | $ 117,361 | $ 49,878 | $ 68,199 | $ 115,538 | $ 22,182 | $ 69,521 | $ 87,843 | $ 135,182 | $ 139,543 | $ 186,882 | 186,882 |

**Laguna HW, LLC**
13-Week Cash Flow

DRAFT - SUBJECT TO MATERIAL CHANGE | CONFIDENTIAL

*($ USD)*

| | Week 1 3/14 | Week 2 3/21 | Week 3 3/28 | Week 4 4/4 | Week 5 4/11 | Week 6 4/18 | Week 7 4/25 | Week 8 5/2 | Week 9 5/9 | Week 10 5/16 | Week 11 5/23 | Week 12 5/30 | Week 13 6/6 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Collections** | | | | | | | | | | | | | | |
| Receipts | $ 15,767 | $ 15,767 | $ 15,767 | $ 15,767 | $ 15,767 | $ 15,767 | $ 15,767 | $ 15,767 | $ 15,767 | $ 15,767 | $ 15,767 | $ 15,767 | $ 15,767 | 204,977 |
| **Total Collections** | $ 15,767 | $ 15,767 | $ 15,767 | $ 15,767 | $ 15,767 | $ 15,767 | $ 15,767 | $ 15,767 | $ 15,767 | $ 15,767 | $ 15,767 | $ 15,767 | $ 15,767 | 204,977 |
| | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Operating Expenses | $ 2,818 | $ 2,818 | $ 2,818 | $ 2,818 | $ 2,818 | $ 2,818 | $ 2,818 | $ 2,818 | $ 2,818 | $ 2,818 | $ 2,818 | $ 2,818 | $ 2,818 | 36,628 |
| Property Tax | - | - | - | - | 45,273 | - | - | - | - | - | - | - | - | 45,273 |
| Insurance | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| TOT | - | - | - | - | - | - | - | 28,697 | - | - | - | - | - | 28,697 |
| Hotel & Short Term Rental Management | - | - | - | 4,100 | - | - | - | 4,100 | - | - | - | 4,100 | - | 12,299 |
| Management Fee | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll | - | 7,813 | - | 7,813 | - | 7,813 | - | 7,813 | - | 7,813 | - | 7,813 | - | 46,875 |
| Tips | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Ground Lease payment | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Disbursements** | $ 2,818 | $ 10,630 | $ 2,818 | $ 14,730 | $ 48,090 | $ 10,630 | $ 2,818 | $ 43,427 | $ 2,818 | $ 10,630 | $ 2,818 | $ 14,730 | $ 2,818 | 169,772 |
| | | | | | | | | | | | | | | |
| **Total Operating Cash Flow** | $ 12,950 | $ 5,137 | $ 12,950 | $ 1,038 | $ (32,323) | $ 5,137 | $ 12,950 | $ (27,659) | $ 12,950 | $ 5,137 | $ 12,950 | $ 1,038 | $ 12,950 | 35,205 |
| | | | | | | | | | | | | | | |
| **Beginning Cash balance** | $ - | $ 12,950 | $ 18,087 | $ 31,037 | $ 32,075 | $ (248) | $ 4,890 | $ 17,840 | $ (9,819) | $ 3,130 | $ 8,268 | $ 21,218 | $ 22,256 | - |
| Total Operating Cash Flow | 12,950 | 5,137 | 12,950 | 1,038 | (32,323) | 5,137 | 12,950 | (27,659) | 12,950 | 5,137 | 12,950 | 1,038 | 12,950 | 35,205 |
| **Ending cash balance** | $ 12,950 | $ 18,087 | $ 31,037 | $ 32,075 | $ (248) | $ 4,890 | $ 17,840 | $ (9,819) | $ 3,130 | $ 8,268 | $ 21,218 | $ 22,256 | $ 35,205 | 35,205 |

**The Masters Building, LLC**
13-Week Cash Flow

DRAFT - SUBJECT TO MATERIAL CHANGE | CONFIDENTIAL

*($ USD)*

| | Week 1 3/14 | Week 2 3/21 | Week 3 3/28 | Week 4 4/4 | Week 5 4/11 | Week 6 4/18 | Week 7 4/25 | Week 8 5/2 | Week 9 5/9 | Week 10 5/16 | Week 11 5/23 | Week 12 5/30 | Week 13 6/6 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Collections** | | | | | | | | | | | | | | |
| Receipts | $ 53,443 | $ - | $ - | | $ 53,443 | $ - | $ - | | $ 53,443 | $ - | $ - | | | $ 160,330 |
| **Total Collections** | $ 53,443 | $ - | $ - | $ - | $ 53,443 | $ - | $ - | $ - | $ 53,443 | $ - | $ - | $ - | $ - | $ 160,330 |
| | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Operating Expenses | $ 721 | $ 721 | $ 721 | $ 721 | $ 721 | $ 721 | $ 721 | $ 721 | $ 721 | $ 721 | $ 721 | $ 721 | $ 721 | 9,369 |
| Property Tax | - | - | - | - | 53,266 | - | - | - | - | - | - | - | - | 53,266 |
| Insurance | - | - | - | 684 | - | - | - | 684 | - | - | - | 684 | - | 2,052 |
| TOT | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Hotel & Short Term Rental Management | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Management Fee | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Tips | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Ground Lease payment | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Disbursements** | $ 721 | $ 721 | $ 721 | $ 1,405 | $ 53,986 | $ 721 | $ 721 | $ 1,405 | $ 721 | $ 721 | $ 721 | $ 1,405 | $ 721 | 64,687 |
| | | | | | | | | | | | | | | |
| **Total Operating Cash Flow** | $ 52,723 | $ (721) | $ (721) | $ (1,405) | $ (543) | $ (721) | $ (721) | $ (1,405) | $ 52,723 | $ (721) | $ (721) | $ (1,405) | $ (721) | 95,643 |
| | | | | | | | | | | | | | | |
| **Beginning Cash balance** | $ - | $ 52,723 | $ 52,002 | $ 51,281 | $ 49,876 | $ 49,333 | $ 48,613 | $ 47,892 | $ 46,487 | $ 99,210 | $ 98,489 | $ 97,768 | $ 96,363 | $ - |
| Total Operating Cash Flow | 52,723 | (721) | (721) | (1,405) | (543) | (721) | (721) | (1,405) | 52,723 | (721) | (721) | (1,405) | (721) | 95,643 |
| **Ending cash balance** | $ 52,723 | $ 52,002 | $ 51,281 | $ 49,876 | $ 49,333 | $ 48,613 | $ 47,892 | $ 46,487 | $ 99,210 | $ 98,489 | $ 97,768 | $ 96,363 | $ 95,643 | $ 95,643 |

**837 Park Avenue, LLC**
13-Week Cash Flow

*($ USD)*

DRAFT - SUBJECT TO MATERIAL CHANGE | CONFIDENTIAL

| | Week 1 3/14 | Week 2 3/21 | Week 3 3/28 | Week 4 4/4 | Week 5 4/11 | Week 6 4/18 | Week 7 4/25 | Week 8 5/2 | Week 9 5/9 | Week 10 5/16 | Week 11 5/23 | Week 12 5/30 | Week 13 6/6 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Collections** | | | | | | | | | | | | | | |
| Receipts | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Total Collections** | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| | | | | | | | | | | | | | | |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Operating Expenses | $ - | $ - | $ - | $ 105 | $ - | $ - | $ - | $ 105 | $ - | $ - | $ - | $ 105 | $ - | $ 316 |
| Property Tax | - | - | - | - | 3,246 | - | - | - | - | - | - | - | - | 3,246 |
| Insurance | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| TOT | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Hotel & Short Term Rental Management | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Management Fee | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Tips | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Ground Lease payment | - | - | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Operating Disbursements** | $ - | $ - | $ - | $ 105 | $ 3,246 | $ - | $ - | $ 105 | $ - | $ - | $ - | $ 105 | $ - | $ 3,562 |
| | | | | | | | | | | | | | | |
| **Total Operating Cash Flow** | $ - | $ - | $ - | $ (105) | $ (3,246) | $ - | $ - | $ (105) | $ - | $ - | $ - | $ (105) | $ - | $ (3,562) |
| | | | | | | | | | | | | | | |
| **Beginning Cash balance** | $ - | $ - | $ - | $ - | $ (105) | $ (3,352) | $ (3,352) | $ (3,352) | $ (3,457) | $ (3,457) | $ (3,457) | $ (3,457) | $ (3,562) | $ - |
| Total Operating Cash Flow | - | - | - | (105) | (3,246) | - | - | (105) | - | - | - | (105) | - | (3,562) |
| **Ending cash balance** | $ - | $ - | $ - | $ (105) | $ (3,352) | $ (3,352) | $ (3,352) | $ (3,457) | $ (3,457) | $ (3,457) | $ (3,457) | $ (3,562) | $ (3,562) | $ (3,562) |