**Exhibit B**

**DIP Term Sheet**

Execution Version

## DEBTOR-IN-POSSESSION LOAN TERM SHEET

## March 19, 2025

This term sheet (together with the exhibits and schedules hereto, the "DIP Term Sheet") sets forth a summary of the terms and conditions with respect to the DIP Loan (as defined below) from and after, and subject to, the entry of the Interim Order (as defined below). This DIP Term Sheet, or such other documents memorializing the terms hereof, shall be a binding agreement from and after, and subject to, the entry of the Interim Order with respect to the DIP Loan. The obligation of the DIP Lender (as defined below) to provide financing pursuant to this DIP Term Sheet is conditioned upon the execution and delivery of signature pages to this DIP Term Sheet by each of the parties hereto and shall be subject to the conditions precedent and other terms and conditions set forth herein. In the event of any conflict between this DIP Term Sheet and the terms of the Interim Order or the Final Order, the terms of the Interim Order or the Final Order, as applicable, shall govern. In the event that an additional credit agreement for the DIP Loan is not entered into by the parties, this DIP Term Sheet and the Interim Order and the Final Order, as applicable, shall govern the DIP Loan.

| DIP Borrowers: | Laguna Festival Center, LLC<br>891 Laguna Canyon Road, LLC<br>777 at Laguna, LLC<br>Laguna Art District Complex, LLC<br>Aryabhata Group, LLC<br>Hotel Laguna, LLC<br>Cliff Village, LLC<br>The Masters Buildings, LLC<br>Laguna HI, LLC<br>837 Park Ave, LLC<br>Tesoro Redlands, LLC<br>4110 West 3rd Street DE, LLC<br>314 S. Harvard DE, LLC<br>Laguna HW, LLC<br>Retreat at Laguna Villas, LLC<br>Sunset Cove Villas, LLC<br>Duplex at Sleepy Hollow LLC<br>Cliff Drive Properties DE, LLC<br>694 NCH Apartments, LLC<br>Heisler Laguna, LLC<br>MOM BS Investco LLC<br>MOM CA Investco LLC<br>MOM AS Investco LLC |
|---|---|
| DIP Lender: | Specialty DIP LLC, a Delaware limited liability company |
| DIP Facility: | Debtor in Possession secured term loan facility of up to the maximum, original principal amount of $5,000,000 (the "DIP Loan"), which includes an initial funding amount of $3,500,000 (the |

| | |
|---|---|
| | "Initial Funding Amount") and an additional funding amount of $1,500,000 (the "Final Funding Amount"). |
| **Interest Rate:** | Interest shall accrue on the DIP Loan at the rate of 10% per annum, and shall be payable monthly, on the first (1st) business day of each month, in arrears. |
| **Default Rate:** | At all times while an Event of Default under the DIP Loan exists, at the election of the DIP Lender, principal, interest and other amounts under the DIP Loan shall bear interest at a rate per annum equal to 13%. |
| **Expenses of DIP Lender:** | The reasonable and documented professional fees and out-of-pocket expenses incurred by the DIP Lender, including expenses incurred in connection with defending the validity and enforceability of the DIP Documents (as defined below), shall be promptly paid by the DIP Borrowers in cash on no less than a monthly basis (documentation in summary form to be sufficient), and any DIP Lender counsel fees not paid each month shall accrue in kind and be payable in the following month. |
| **Interim Order:** | The interim order approving the Initial Funding Amount, which shall be in form and substance acceptable to the DIP Lender (the "Interim Order"), shall, among other things, authorize and approve (a) the making of the DIP Loan up to the Initial Funding Amount; and (b) the granting of the liens against the DIP Borrowers and their assets in accordance with this DIP Term Sheet and the DIP Documents with respect to the DIP Collateral (as defined below). |
| **Maturity Date:** | Unless otherwise agreed to by the DIP Lender in writing, the maturity date of the DIP Loan (the "Maturity Date") shall be the earliest to occur of the following, upon which the DIP Lender's commitment to provide the DIP Loan shall terminate, and the DIP Loan shall be indefeasibly paid in full in cash: <br><br> a. 90 days after entry of the Interim Order, provided, however that such 90 day period shall be extended for an additional 90 day period provided that (i) no Event of Default has occurred and is continuing, and (ii) a motion has been filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") seeking the sale of assets of the DIP Borrowers pursuant to which the net sale proceeds of such sale shall result in the indefeasible payment in full in cash of the DIP Obligations; <br><br> b. the consummation of a sale of all or substantially all of the assets of the DIP Borrowers; |

|  | |
| --- | --- |
| | c. acceleration of or termination of the DIP Loan pursuant to the DIP Documents; and |
| | d. the substantial consummation (as defined in Section 1101 of chapter 11 of Title 11 of the United States Bankruptcy Code (the "<u>Bankruptcy Code</u>") and which for purposes hereof shall be no later than the "effective date" thereof) of a plan filed in the that certain matter before the Bankruptcy Court entitled *In re: MOM CA Investco LLC, et al.*, (Case No. 25-10321, et al. (BLS)) (the "<u>Chapter 11 Cases</u>") that is confirmed pursuant to an order entered by the Bankruptcy Court. |
| **DIP Budget:** | There will be no DIP budget for operating expenses from the date of the entry of the Interim Order through the date of the final hearing to approve the DIP Loan. However, the Debtors must use the DIP Loan proceeds consistent with the permitted uses (discussed below), and the DIP Lender shall, in the interim period, have the right to be consulted on the use of proceeds from the DIP Loan for operating expenses that exceed $50,000 on any one item or group of related items, although the Debtors shall have sole discretion, subject to the permitted uses, as to the use of the proceeds of the DIP Loan. Notwithstanding the foregoing, the DIP Borrowers shall provide to the DIP Lender, as soon as reasonably practicable prior to the hearing to approve the Final Order (as defined below), a budget for the proceeds to be used for operating expenses subject to a 25% variance of the DIP Loan. |
| **DIP Obligations:** | As used herein, the term "<u>DIP Obligations</u>" means (a) the due and punctual payment by the DIP Borrowers of (i) the unpaid principal amount of and interest on (including interest accruing after the maturity of the DIP Loan and interest accruing after the commencement of the Chapter 11 Cases) the DIP Loan approved by the Bankruptcy Court and funded by the DIP Lender, as and when due, whether at maturity, by acceleration or otherwise, and (ii) all other monetary obligations, including advances, debts, liabilities, obligations, fees, costs, expenses and indemnities, whether primary, secondary, direct, indirect, absolute or contingent, due or to become due, now existing or hereafter arising, fixed or otherwise, of the DIP Borrowers to the DIP Lender under the DIP Documents and the Interim Order and Final Order, and (b) the due and punctual payment and performance of all covenants, duties, agreements, obligations and liabilities of the DIP Borrowers to the DIP Lender under or pursuant to the DIP Documents and the Interim Order and Final Order. |

| | |
|---|---|
| **Use of DIP Loan Proceeds:** | Subject to entry of the Interim Order, the DIP Borrowers, in their sole discretion, shall use the proceeds of the DIP Loan for the following "Permitted Uses": |
| | a. to fund the operating expenses of the DIP Borrowers, so long as the DIP Borrowers comply with the DIP Lender's consultation rights described above, |
| | b. to fund the administration of the Chapter 11 Cases; |
| | c. to fund the reasonable, documented, and allowed fees and expenses of the DIP Borrowers' and the DIP Lender's professionals; and |
| | d. to pay other amounts with the prior written consent of the DIP Lender. |
| **Approval by the Bankruptcy Court:** | This DIP Term Sheet and all terms and conditions of the DIP Loan set forth herein (collectively, the "<u>Transactions</u>") shall be subject to the terms of a final order, in form and substance acceptable to the DIP Lender in its sole and absolute discretion, approving the Transactions (the "<u>Final Order</u>"). |
| **DIP Documents:** | For the purposes of the Initial Funding Amount, this DIP Term Sheet and the Interim Order are the only required "loan documents". Prior to the entry of the Final Order, the parties shall execute and deliver definitive financing documentation governing the DIP Loan, consistent with this DIP Term Sheet (the "<u>DIP Documents</u>"), and shall be approved upon the entry in the Bankruptcy Court of the Final Order and include (i) this DIP Term Sheet and any ancillary exhibits and documents executed in connection therewith, including a DIP Credit Agreement; (ii) a DIP budget; (iii) the Final Order; and (iv) any and all amendments, exhibits, supplements or schedules to (i)-(iii), each of which shall be in form and substance acceptable to the DIP Lender in its sole discretion. |
| | Any motions, pleadings, and declarations filed in the Chapter 11 Cases by the DIP Borrowers related to the DIP Loan shall also be in form and substance acceptable to the DIP Lender in its sole discretion. |
| **DIP Funding:** | Subject to the terms and conditions set forth herein and in the DIP Documents, including satisfaction of each of the Conditions Precedent (defined below) to each such draw, DIP Lender will fund the following draws: |

|  | 1. Upon the entry in the Bankruptcy Court of the Interim Order, in form and substance acceptable to the DIP Lender in its sole and absolute discretion, approving the DIP Loan and the DIP Documents, the DIP Lender will make the Initial Funding Amount available to the DIP Borrowers.<br><br>2. Upon the earlier to occur of (i) the Bankruptcy Court's entry of the Final Order; or (ii) filing by the applicable DIP Borrowers of a motion with the Bankruptcy Court seeking authority for the sale of real estate pursuant to which the net sale proceeds of such sale shall result in the indefeasible payment in full in cash of the DIP Obligations, the DIP Lender will make available to the DIP Borrowers the Final Funding Amount. |
| --- | --- |
| **Financing Orders** | The DIP Borrowers shall seek entry of the Interim Order and the Final Order, and the Interim Order and the Final Order shall be entered on the docket of the Chapter 11 Cases in a form and substance acceptable to the DIP Lender in its sole and absolute discretion, approving (among other things) the DIP Loan, the DIP Collateral and the DIP Documents. |
| **Security:** | As security for the DIP Obligations, the DIP Borrowers shall grant to the DIP Lender the following in the DIP Documents:<br><br>1. a first priority security interest in and continuing lien on all of such DIP Borrowers' right, title and interest in, to and under all the DIP Borrowers' assets that are not already encumbered by a prior lien, and all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing.<br><br>2. a junior security interest in and continuing lien on all of such DIP Borrowers' assets that are encumbered by one or more prior liens, and all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing.<br><br>(all of which being hereafter collectively referred to as the "<u>DIP Collateral</u>"). For the avoidance of doubt, the DIP Collateral shall not include any derivative actions or other claims and causes of action of the DIP Borrowers' bankruptcy estates. |
| **Carve Out:** | As used in the Interim Order and/or the Final Order, the "Carve Out" means the sum, without duplication, of the following (I) (a) all fees of the DIP Borrowers required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate; |

(b) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; and (c) unpaid allowed professional fees, costs and disbursements ("Professional Fees") incurred by the DIP Borrowers and any statutory committee of unsecured creditors (the "Committee") appointed in the Chapter 11 Cases, in each case not to exceed $2,500,000, in the aggregate, of Professional Fees of the DIP Borrowers' professionals, and a reasonable amount of aggregate Professional Fees of the Committee's professionals (the "Professional Fee Cap") as of the delivery of a Carve-Out Trigger Notice, and (II) after the delivery of a Carve Out Trigger Notice,[1] allowed Professional Fees in an aggregate amount not to exceed $125,000 (the "Post-Carve Out Trigger Notice Cap").

The DIP Borrower is authorized to open a new bank account at an depository approved by the DIP Lender (an "Approved Depository"), designate an existing bank account at an Approved Depository, or designate a third party's bank account at an Approved Depository that shall function as a segregated account held in trust for and exclusively available for the payment of Professional Fees (the "Professional Fees Escrow Account") in the amount equal to, but not to exceed, the lesser of (i) the allowed Professional Fees, or (ii) the Professional Fee Cap. The DIP Borrower is authorized and directed to fund the Professional Fees Escrow Account up to the full amount of the Professional Fee Cap. Such funds shall be held in the Professional Fees Escrow Account for the benefit of the Professionals to be applied to the allowed Professional Fees of the Professionals that are approved for payment pursuant to one or more orders of the Bankruptcy Court. Any allowed Professional Fees payable to the Professionals shall be paid first out of the Professional Fees Escrow Account. Funds transferred to the Professional Fees Escrow Account shall not be subject to any liens or claims granted to the DIP Lender or any liens or claims granted as adequate protection, shall not constitute DIP Collateral; provided, that, notwithstanding anything to the contrary herein or in the DIP Documents, the DIP Collateral shall include the DIP Borrowers' reversionary interest in funds held in the Professional Fee Escrow Account and such reversionary interest shall be treated as DIP

---

[1] "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Lender to the DIP Borrowers, its lead restructuring counsel, the U.S. Trustee, and counsel to the Committee (collectively, the "Carve Out Notice Parties") which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the DIP Obligations under the DIP Loan, stating that the Post Carve Out Trigger Notice Cap has been invoked.

| | |
|---|---|
| | Collateral and subject to the all liens securing the DIP Loan (the "DIP Liens"). |
| **Conditions Precedent:** | In addition to the other conditions set forth in the DIP Documents, the obligations of the DIP Lender to advance the Initial Funding Amount and the Final Funding Amount, respectively, of the DIP Loan shall be conditioned on the satisfaction or waiver of the following: |
| | a. As to the Initial Funding Amount, the entry by the Bankruptcy Court of the Interim Order in form and substance acceptable to the DIP Lender in its sole and absolute discretion; plus the General Conditions (defined below). |
| | b. As to the Final Funding Amount, the entry by the Bankruptcy Court of the Final Order in form and substance acceptable to the DIP Lender in its sole and absolute discretion; plus the General Conditions (defined below). |
| | c. The "General Conditions" include: |
| |     i. the representations and warranties of the DIP Borrowers under the DIP Documents shall be true and correct in all respects (or in the case of representations and warranties with a "materiality" qualifier, true and correct in all material respects); |
| |     ii. no trustee or examiner shall have been appointed with respect to the DIP Borrowers or their respective properties; |
| |     iii. there shall exist no currently unknown action, suit, investigation, litigation or proceeding pending or (to the knowledge of the DIP Borrowers) threatened in writing in any court or before any arbitrator or governmental instrumentality (other than the Chapter 11 Cases or the consequences that would normally result from the commencement and continuation of the Chapter 11 Cases) that could reasonably be expected to have a material adverse effect; and |
| |     iv. all reasonable and documented out-of-pocket costs, fees and expenses required to be paid to the DIP Lender pursuant to this DIP Term Sheet, the DIP Documents or the Interim Order and/or Final Order shall have been paid. |

| | |
|---|---|
| **Prepayments:** | Voluntary prepayments of the DIP Loan shall be permitted at any time, in minimum principal amounts and upon reasonable notice to be mutually agreed upon between the DIP Borrowers and the DIP Lender, without premium or penalty.<br><br>Any prepayment shall be applied as follows, first, to fees, costs and expenses, second to the payment of accrued and unpaid interest, and third to the repayment of principal.<br><br>Notwithstanding anything contained herein to the contrary, upon the sale of any assets of the DIP Borrowers, including without limitation any real property, the net proceeds of such sale (after the payment of customary closing costs and satisfaction of any prior liens on such assets or real property) shall be used to pay down the outstanding balance of the DIP Obligations. |
| **Borrowing Mechanics:** | Borrowing mechanics with respect to the DIP Loan shall be as set forth in the DIP Documents and shall include the following:<br><br>a. Once repaid, the DIP Loan may not be reborrowed.<br><br>b. As to the Initial Funding Amount, the DIP Lender shall fund the full Initial Funding Amount no less than two (2) Business Days (or such earlier date agreed to by the DIP Lender in its sole discretion) following (i) the entry of the Interim Order and (ii) the DIP Borrowers' certification of its satisfaction of the applicable conditions precedent to the funding of the Initial Loan Amount.<br><br>c. As to the Final Funding Amount, the DIP Lender shall fund the full Final Funding Amount no less than two (2) Business Days (or such earlier date agreed to by the DIP Lender in its sole discretion) following (i) the entry of the Final Order, and (ii) the DIP Borrowers' certification of its satisfaction of the applicable conditions precedent to the funding of the Final Loan Amount. |
| **Representations and Warranties:** | In addition to any representations and warranties, among other things, the DIP Borrowers, jointly and severally, shall represent and warrant in the DIP Documents that:<br><br>a. Upon entry of the Interim Order, each DIP Borrower has full power and authority to operate and conduct its business, to execute, deliver and perform this DIP Term Sheet and the DIP Documents and to incur obligations under this DIP Term Sheet and the DIP Documents. |

|  | b. The DIP Obligations shall not be subject to setoff or recoupment or any such rights under Bankruptcy Code section 553 or otherwise with respect to any claim the applicable DIP Borrowers may have against the DIP Lender. |
|---|---|
| **Affirmative Covenants:** | Among other things, the DIP Documents shall provide for the following affirmative covenants pursuant to which the DIP Borrowers shall, subject to the approval of the Bankruptcy Court and applicable law:<br><br>a. use the advances made under the DIP Loan in accordance with Permitted Uses and shall not use such funds to commence any action against the DIP Lender or its affiliates, employees, directors, officers or principals;<br><br>b. pay all postpetition property taxes as they become due and payable, to the extent payment and/or enforcement thereof is not stayed as a result of the Chapter 11 Cases;<br><br>c. maintain insurance that already exists with respect to the business and property of the DIP Borrowers against loss of the kind and in the amounts substantially maintained by the DIP Borrowers;<br><br>d. comply with the requirements of all applicable laws unless failure to comply could not reasonably be expected to result in a material adverse effect;<br><br>e. cause one or more responsible officers of DIP Borrowers and the financial advisor to DIP Borrowers to participate in one conference call per week with the DIP Lender at a date and time mutually agreed to by DIP Borrowers and the DIP Lender and DIP Borrowers hereby acknowledge and agree that the DIP Lender shall be entitled to communicate directly with the financial advisor to DIP Borrowers;<br><br>f. permit, upon two (2) business days' notice, representatives of the DIP Lender to visit and inspect any of their respective properties during normal business hours, in a manner so as not to interfere unreasonably with the normal operations of the DIP Borrowers, to examine and make abstracts or copies from any of their respective books and records (including providing information and documents promptly upon request) and to discuss, and provide advice with respect to, its respective affairs, finances, properties, business operations and accounts with its respective officers, employees and independent public accountants as often as |

<table>
<tbody>
<tr>
<td></td>
<td>

may reasonably be desired (subject to frequency and cost reimbursement limitations to be mutually agreed and other than information subject to confidentiality obligations, attorney-client privilege or attorney work product);

g.  promptly upon request execute and deliver such documents and do such other acts as the DIP Lender may reasonably request in connection with the DIP Loan, and in accordance with the DIP Documents (including but not limited to execution of any additional security documents that may be reasonably requested); and

h.  provide the DIP Lender with written notice promptly after it is aware that any of the following events shall occur:

    a.  any DIP Borrower becomes aware of any claim, action, suit, proceeding, arbitration, complaint, charge or investigation threatened or pending, or is enjoined or in any way prevented by court or governmental order from conducting any part of its business as currently conducted or contemplated to be conducted;

    b.  the ceasing of operations of its business as such business is normally conducted or the termination of substantially all of the DIP Borrowers' employees.

i.  comply in all respects with any other covenants and obligations set forth herein or in the Interim Order and the Final Order.

</td>
</tr>
<tr>
<td>

**Negative Covenants:**

</td>
<td>

Among other things, the DIP Documents shall provide for the following negative covenants pursuant to which the DIP Borrowers shall not, without further order of the Court:

a.  incur any indebtedness (other than the borrowings under the DIP Loan and obligations permitted to be incurred by the DIP Documents);

b.  incur any liens (other than liens securing indebtedness permitted by the DIP Documents);

c.  make any investments in any other person or make any loan to any other person;

d.  engage in any business other than the business engaged in by the DIP Borrowers on the date hereof and other business activities which are reasonably related or ancillary to the foregoing or otherwise permitted by the DIP Lender;

</td>
</tr>
</tbody>
</table>

e.  sell any assets outside the ordinary course of business, unless such sale results in the indefeasible payment in full in cash of the DIP Obligations or such sale is otherwise approved by the DIP Lender;

f.  acquire any material assets or other person, merge, consolidate or dissolve;

g.  use proceeds of the DIP Loan, except solely in accordance with the terms hereof;

h.  amend the Interim Order, the Final Order or any Bankruptcy Court order relating to cash management, any other motion or filing that involves cash disbursements, or any motion or filing that involves the sale of the applicable DIP Borrower's assets without the prior written consent of the DIP Lender in its sole and absolute discretion;

i.  voluntarily terminate or make any modification to any organizational documents of the DIP Borrowers;

j.  engage in any transactions with insiders (as that term is defined in the Bankruptcy Code);

k.  agree to entry of any order precluding, limiting, or modifying the DIP Lender's rights to credit bid up to the full amount of the outstanding DIP Loan;

l.  other than as contemplated by the Interim Order or the Final Order, consent to the granting of adequate protection payments or liens, superpriority administrative expense claims or liens having priority senior to or *pari passu* with those granted to the DIP Lender;

m.  terminate the compensation of the independent managers and/or independent directors;

n.  relocate any item of the Collateral (other than relocations of the Collateral as necessary to support or perform the DIP Borrower's projects in the ordinary course of business) unless such relocation is within the continental United States and twenty (20) days' prior written notice of such relocation is provided to the DIP Lender;

o.  change its company name, legal form, jurisdiction of formation or location of chief executive office address;

p.  amend, restate, replace or modify, supplement or waive any provision of its organizational documents (including by side letter);

q.  create, or authorize the creation of, or issue or obligate itself to issue shares of, or reclassify, any equity securities or any rights, options, or warrants to purchase such equity

<table>
<tr><td></td><td>securities, securities of any type whatsoever that are, or may become, convertible or exchangeable into or exercisable for such equity securities;</td></tr>
</table>

r.  agree to or facilitate the election or exercise of any rights under any prepetition loan documents, including the conversion of debt to equity;

s.  purchase or redeem or pay or declare any dividend or make any distribution on, any equity securities;

t.  create, or hold equity securities in, any subsidiary that is not wholly owned (either directly or through one (1) or more other subsidiaries) by any DIP Borrower, or permit any subsidiary to create, or authorize the creation of, or issue or obligate itself to issue, any equity securities, or sell, transfer or otherwise dispose of any equity securities of any direct or indirect subsidiary of any DIP Borrower, or permit any direct or indirect subsidiary to sell, lease, transfer, exclusively license or otherwise dispose (in a single transaction or series of related transactions) of all or substantially all of the assets of such subsidiary;

u.  (i) merge with, consolidate with or into, dissolve or liquidate into or convey, transfer, lease or otherwise dispose of (whether in one transaction or in a series of transactions) all or substantially all of its assets, property or equity securities (in each case, whether now owned or hereafter acquired) to or in favor of any person, or (ii) split or divide into two or more persons;

v.  engage in any line of business different from those lines of business carried on by the DIP Borrowers on the date hereof; or

w.  amend, restate, supplement or otherwise modify any of any of the DIP Borrower's organizational documents.

| **Events of Default:** | The following shall be included as an Event of Default under the DIP Documents:<br><br>a.  The failure by the DIP Borrowers to perform or comply with any material term, condition, covenant or obligation (including a payment obligation) contained in the DIP Documents or any of the Interim Order or the Final Order;<br><br>b.  The cessation of the DIP Loan to be in full force and effect, the DIP Loan being declared by the Bankruptcy Court to be null and void, or the DIP Lender ceasing to have the benefit |

of the DIP Liens granted by the Interim Order and/or the
Final Order;

c.  Except as for the existing liens, the entry of any order of the
Bankruptcy Court granting to any third party a claim or lien
pari passu with or senior to the DIP Liens granted to the DIP
Lender hereunder;

d.  Until the DIP Obligations are indefeasibly repaid in full in
cash (other than contingent obligations for which no claim
has been made or threatened) and all commitments under the
DIP Loan terminated: (i) the DIP Borrowers makes any
payment of prepetition principal or interest or otherwise on
account of any prepetition indebtedness for borrowed money
or payables other than the DIP Obligations under the DIP
Loan, the Interim Order or the Final Order; (ii) the validity
or enforceability of any provision of the DIP Documents or
the DIP Obligations are contested by the DIP Borrowers (or
any party acting on its behalf or on behalf of the bankruptcy
estate); and (iii) the DIP Borrowers (or any party acting on
its behalf or on behalf of the bankruptcy estate) deny in
writing that it has any further liability or obligation under
any provision of the DIP Documents;

e.  The DIP Borrowers fail to make any payments, including
interest payments, due under any of the DIP Documents, the
Interim Order or the Final Order within three (3) business
days of when due;

f.  The entry of an order converting the Chapter 11 Cases to a
case under chapter 7 of the Bankruptcy Code, or the
applicable DIP Borrowers filing a motion or not timely
opposing a motion seeking such relief;

g.  The entry of an order dismissing the Chapter 11 Cases, or the
applicable DIP Borrowers filing a motion or not timely
opposing a motion seeking such relief without the consent of
the DIP Lender;

h.  The entry of an order in the Chapter 11 Cases seeking the
appointment of an examiner having expanded powers
beyond those set forth in Section 1106(a)(3) and (4) of the
Bankruptcy Code or a trustee to operate all or any material
part of the DIP Borrowers' business;

i.  The entry of an order in the Chapter 11 Cases granting relief
from the automatic stay so as to: allow a third party or third

13

parties to proceed against any property with a value in excess of $50,000, including the applicable DIP Collateral, of the applicable DIP Borrowers or to commence or continue any prepetition litigation against the DIP Borrowers involving potential liability in excess of $50,000 in the aggregate;

j.  The commencement of any actions by the DIP Borrowers or any respective affiliate or subsidiaries thereof (or any party acting on its behalf or on behalf of the bankruptcy estate) that challenges the rights and remedies of any of the DIP Lender under the DIP Documents;

k.  Without the prior written consent of the DIP Lender and other than as provided for in the DIP Documents, the bringing of any motion or taking of any action, seeking entry of an order, or the entry of an order by the Bankruptcy Court, in the Chapter 11 Cases (i) granting superpriority administrative expense status to any claim pari passu with or senior to the claims of the DIP Lender, (ii) permitting the DIP Borrower to obtain financing under Section 364 of the Bankruptcy Code, (iii) permitting the DIP Borrower to grant security interests or liens under Section 364 of the Bankruptcy Code, (iv) permitting the DIP Borrower to use cash collateral under Section 364 of the Bankruptcy Code other than as contemplated herein, or (v) authorizing the DIP Borrower to take other actions adverse to any DIP Lender or their rights and remedies under the DIP Documents, or their interest in DIP Collateral under Section 364 of the Bankruptcy Code;

l.  The entry of any order terminating the DIP Borrower's exclusive right to file a plan or the expiration of the DIP Borrower's exclusive right to file a plan;

m. The DIP Borrowers or any of their respective affiliates or subsidiaries (or any party acting on its behalf or on behalf of the bankruptcy estate), or any person claiming by or through any of the foregoing, shall obtain court authorization to commence, or shall commence, join in, assist, fail to object to after DIP Lender so requests, or otherwise participate as an adverse party in any suit or other proceeding against the DIP Lender regarding the DIP Documents or the DIP Obligations;

n.  A plan shall be filed by the DIP Borrower, or be confirmed in the Chapter 11 Cases, or any order shall be entered which dismisses the Chapter 11 Cases and which plan or order

(i) (x) does not provide for termination of the unused commitments under the DIP Loan and the indefeasible payment in full in cash on the effective date of such plan or order of the DIP Obligations (other than contingent indemnity obligations for which no claim has been made or threatened); or (y) is not satisfactory to the DIP Lender in its sole and absolute discretion, and (ii) does not provide, to the extent permitted by applicable law, for release and exculpatory provisions relating to the DIP Lender that are satisfactory to the DIP Lender in its sole and absolute discretion, or the DIP Borrowers or any of their respective subsidiaries shall file, propose, support, or fail to contest in good faith the filing or confirmation of such a plan or the entry of such an order;

o.  The Bankruptcy Court shall enter an order authorizing the sale of all or substantially all of the assets of the DIP Borrower that does not provide for the indefeasible payment in full in cash the DIP Obligations;

p.  The entry of an order in the Chapter 11 Cases avoiding or permitting avoidance of any portion of the payments made on account of the DIP Obligations, the DIP Documents, or in each case any related documents or any other indebtedness provided to the DIP Borrower by the DIP Lender, or the taking of any action by the DIP Borrowers (or any party acting on its behalf or on behalf of the bankruptcy estate) to challenge or support a challenge of any such payments;

q.  The Interim Order or the Final Order and the terms thereof shall cease to create valid and perfected DIP Liens on the DIP Collateral and claims as required hereunder (other than an immaterial portion thereof);

r.  The filing or support of any pleading by the DIP Borrowers (or any party acting on its behalf or on behalf of the bankruptcy estate) seeking, or otherwise consenting to, any relief, the granting or prosecution of which could reasonably be expected to result in the occurrence of a DIP Event of Default;

s.  Any non-monetary final judgment or order with respect to a post-petition event shall be rendered against the DIP Borrower which does or could reasonably be expected to have a material adverse effect, and, in each case, there shall be a period often (10) consecutive days during which a stay

|  | of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect; |
|---|---|
|  | t.   The Interim Order or the Final Order being amended or modified without the consent of the DIP Lender; or |
|  | u.   Failure to repay the DIP Obligations on the Maturity Date. |
| **Remedies:** | Notwithstanding the provisions of Section 362 of the Bankruptcy Code, but subject to the applicable provisions of the Interim Order and the Final Order, if any Event of Default occurs and is continuing, the DIP Lender may take any or all of the following actions no earlier than 5 business days after notice to the DIP Borrowers: <br><br> a.   terminate the commitment of the DIP Lender to make any further advances under the DIP Loan; <br><br> b.   declare that the unpaid amount of the DIP Obligations, all interest accrued and unpaid thereon, and all other amounts owing or payable under the DIP Documents, this DIP Term Sheet and the Interim Order or the Final Order to be immediately due and payable, without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the DIP Borrowers; <br><br> c.   foreclose upon the DIP Collateral; or <br><br> d.   take any other action or exercise any other right or remedy as permitted by the DIP Documents or applicable law. |
| **Release of Claims:** | The Final Order shall provide for the following release, in which the DIP Borrowers will acknowledge the following: <br><br> Effective upon entry of the Final Order and as of such date, the DIP Borrowers have no defense, counterclaim, offset, recoupment, claim or demand of any kind or nature whatsoever that can be asserted to reduce or eliminate all of any part of the DIP Borrowers' liability to repay the DIP Lender or to seek affirmative relief or damages of any kind or nature from the DIP Lender.  Upon entry of the Final Order, each DIP Borrower fully, finally and forever release and discharge the DIP Lender and its officers, directors, servants, agents, attorneys, assigns, heirs, parents, subsidiaries, and each Person acting for or on behalf of any of them, each solely in their capacity as such (collectively, the "<u>Released DIP Parties</u>") of and from any and all actions, causes of action, demands, suits, claims, liabilities, liens, lawsuits, adverse consequences, amounts paid in settlement, costs, damages, debts, deficiencies, diminution in value, disbursements, |

| | expenses, losses and other obligations of any kind or nature whatsoever, in each case, existing at the time of entry of the Final Order, whether in law, equity or otherwise (including, without limitation, those arising under sections 541 through 550 of the Bankruptcy Code and interest or other carrying costs, penalties, legal, accounting and other professional fees and expenses, and incidental, consequential and punitive damages payable to third parties), directly or indirectly arising out of, connected with or relating to the DIP Documents and the Final Order; provided that the foregoing shall not release any claims against a Released DIP Party that a court of competent jurisdiction determines, pursuant to a final, non-appealable order, results primarily from the gross negligence or willful misconduct of such Released DIP Party.<br><br>For the avoidance of doubt, the releases herein shall only apply to claims arising from or relating to the DIP Loan. |
|---|---|
| **Amendments and Waivers; Assignments:** | Except as otherwise provided herein or therein, the provisions of the DIP Documents, the Interim Order and the Final Order may not be amended or waived without the written consent of the DIP Lender. No other person or entity shall be a direct or indirect legal beneficiary of or have any direct or indirect cause of action or claim in connection with, this DIP Term Sheet or any related documentation. The rights and obligations of the DIP Borrowers hereunder may not be assigned by the DIP Borrowers without the prior written consent of the DIP Lender, which consent may be granted or withheld in the DIP Lender's sole discretion.<br><br>The rights and remedies of the DIP Lender expressly set forth herein and in the related documentation are cumulative and in addition to, and not exclusive of, all other rights and remedies available at law, in equity or otherwise. No failure or delay on the part of the DIP Lender in exercising any right, power or privilege shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or privilege preclude any other or further exercise thereof or the exercise of any other right, power or privilege or be construed to be a waiver of any default or Event of Default. |
| **Expenses and Indemnification:** | The DIP Lender (and its affiliates and respective officers, directors, employees, advisors and agents) (each such person, an "Indemnitee") will have no liability for, and will be indemnified and held harmless against, any losses, claims, damages, liabilities or expenses incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds thereof, except to the extent they are found by a final, non-appealable judgment of a court of competent jurisdiction to arise from the gross negligence or willful misconduct of the relevant indemnified person. Such |

| | indemnity shall not be available to the extent arising from a material breach of any obligation of such Indemnitee under the DIP Documents. |
|---|---|
| **Severability:** | If any term or other provision of this DIP Term Sheet is invalid, illegal or incapable of being enforced by any rule of law, or public policy, all other conditions and provisions of this DIP Term Sheet will nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner adverse to any party. Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the parties hereto will negotiate in good faith to modify this DIP Term Sheet so as to effect the original intent of the parties as closely as possible in an acceptable manner to the end that the transactions contemplated hereby are fulfilled to the extent possible. |
| **Survival:** | All representations, warranties, covenants, agreements, and conditions contained in or made pursuant to the DIP Documents shall survive (a) the making of the DIP Loan and the payment of the DIP Obligations and (b) the performance, observance and compliance with the covenants, terms and conditions, express or implied, of all DIP Documents, until the due and punctual (i) indefeasible payment of the DIP Obligations and (ii) performance, observance and compliance with the covenants, terms and conditions, express or implied, of this DIP Term Sheet and all of the other DIP Documents; provided, however, that the Expenses and Indemnification provision shall survive (x) indefeasible payment of the DIP Obligations and (y) performance, observance and compliance with the covenants, terms and conditions, express or implied, of this DIP Term Sheet and all of the other DIP Documents. |
| **Governing Law:** | The laws of the State of Delaware and the Bankruptcy Code. |
| **Financing Order Governs:** | In the event of any conflict between this DIP Term Sheet, the Interim Order or the Final Order, the terms of the Interim Order or the Final Order, as applicable, shall govern. |
| **Jurisdiction:** | Each party hereto hereby consents and agrees that the state and federal courts located in the State of Delaware shall have jurisdiction to hear and determine any claims or disputes between the parties hereto pertaining to this DIP Term Sheet or any related documentation or to any matter arising out of or relating to this DIP Term Sheet or any related documentation provided that during the Chapter 11 Cases (including if the Chapter 11 Cases are closed and then reopened) the Bankruptcy Court shall have exclusive jurisdiction to hear and determine any claims or disputes between |

|  | the parties hereto pertaining to this DIP Term Sheet or any related documentation or to any matter arising out of or relating to this DIP Term Sheet or any related documentation; provided, further that nothing in this DIP Term Sheet shall be deemed to operate to preclude the DIP Lender from bringing suit or taking other legal action in any other jurisdiction to realize on any security for the DIP Obligations, or to enforce a judgment or other court order in favor of the DIP Lender.<br><br>Each party hereto hereby waives, to the fullest extent permitted by applicable law, any right to jury trial with respect to any claim, demand, action or cause of action arising under this DIP Term Sheet and the related documentation or in any way connected with or related to the dealings in respect hereof or thereof, in each case whether now existing or hereafter arising, and whether in contract, tort, equity or otherwise. |
|---|---|

**IN WITNESS WHEREOF**, the parties hereto have caused this DIP Term Sheet to be executed as of the date first set forth above.

### DIP BORROWERS:

Laguna Festival Center, LLC

By: Mark Shinderman

Mark Shinderman
Chief Restructuring Officer

891 Laguna Canyon Road, LLC

By: Mark Shinderman

Mark Shinderman
Chief Restructuring Officer

777 at Laguna, LLC

By: Mark Shinderman

Mark Shinderman
Chief Restructuring Officer

Laguna Art District Complex, LLC

By: Mark Shinderman

Mark Shinderman
Chief Restructuring Officer

Aryabhata Group, LLC

By: Mark Shinderman

Mark Shinderman
Chief Restructuring Officer

Hotel Laguna, LLC

By: Mark Shinderman

Mark Shinderman
Chief Restructuring Officer

Cliff Village, LLC

By: Mark Shinderman

Mark Shinderman
Chief Restructuring Officer

The Masters Buildings, LLC

By _Mark Shinderman_____
Mark Shinderman
Chief Restructuring Officer

Laguna HI, LLC

By _Mark Shinderman_____
Mark Shinderman
Chief Restructuring Officer

837 Park Ave, LLC

By _Mark Shinderman_____
Mark Shinderman
Chief Restructuring Officer

Tesoro Redlands, LLC

By _Mark Shinderman_____
Mark Shinderman
Chief Restructuring Officer

4110 West 3rd Street DE, LLC

By _Mark Shinderman_____
Mark Shinderman
Chief Restructuring Officer

314 S. Harvard DE, LLC

By _Mark Shinderman_____
Mark Shinderman
Chief Restructuring Officer

Laguna HW, LLC

By _Mark Shinderman_____
Mark Shinderman
Chief Restructuring Officer

Retreat at Laguna Villas, LLC

By _Mark Shinderman_____
Mark Shinderman
Chief Restructuring Officer

Sunset Cove Villas, LLC

By: *Mark Shinderman*
Mark Shinderman
Chief Restructuring Officer

Duplex at Sleepy Hollow LLC

By: *Mark Shinderman*
Mark Shinderman
Chief Restructuring Officer

Cliff Drive Properties DE, LLC

By: *Mark Shinderman*
Mark Shinderman
Chief Restructuring Officer

694 NCH Apartments, LLC

By: *Mark Shinderman*
Mark Shinderman
Chief Restructuring Officer

Heisler Laguna, LLC

By: *Mark Shinderman*
Mark Shinderman
Chief Restructuring Officer

MOM BS Investco LLC

By: *Mark Shinderman*
Mark Shinderman
Chief Restructuring Officer

MOM CA Investco LLC

By: *Mark Shinderman*
Mark Shinderman
Chief Restructuring Officer

MOM AS Investco LLC

By: *Mark Shinderman*
Mark Shinderman
Chief Restructuring Officer

**DIP LENDER**:

Specialty DIP LLC

By: _Bhajneet Singh Malik_
Name:  Bhajneet Singh Malik
Title:    Manager