# EXHIBIT 1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| MOM CA Investco LLC, *et al*., | ) | Case No. 25-10321 (BLS) |
|  | ) |  |
| Debtors.[1] | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re: Docket No. 89** |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS
## TO (A) OBTAIN POSTPETITION FINANCING AND (II) GRANTING RELATED
## RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), pursuant to sections 105, 361, 362, 363, 364, 503 and 507 of title 11 of the United States Code, 11 U.S.C. §§101-1532 (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2002-1, 4001-2 and 9013-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), seeking, among other things,

> (a) authorization for the Debtors to obtain secured debtor in possession financing in an aggregate principal amount of up to $5,000,000 (the "DIP Loan") pursuant to the terms and conditions set forth in the DIP Orders and that certain Debtor-in-Possession Loan Term Sheet, (the "DIP Term Sheet"), by and between the Debtors

---

[1] The Debtors in these chapter 11 proceedings, together with the last four digits of each Debtor's federal tax identification number, are: MOM CA Investco LLC [6263], MOM AS Investco LLC [6049], MOM BS Investco LLC [6180], Retreat at Laguna Villas, LLC [2046], Sunset Cove Villas, LLC [9178], Duplex at Sleepy Hollow, LLC [9237], Cliff Drive Properties DE, LLC [0893], 694 NCH Apartments, LLC [0318], Heisler Laguna, LLC [4709], Laguna Festival Center, LLC [4073], 891 Laguna Canyon Road, LLC [0647], 777 AT Laguna, LLC [8715], Laguna Art District Complex, LLC [8316], Tesoro Redlands DE, LLC [2764], Aryabhata Group LLC [7332], Hotel Laguna, LLC [9580], 4110 West 3rd Street DE, LLC [8641], 314 S. Harvard DE, LLC [2057], Laguna HI, LLC [6408], Laguna HW, LLC [9470], The Masters Building, LLC [6134], and 837 Park Avenue, LLC [3229]. The Debtors' headquarters are located at 520 Newport Center Drive, Suite 480, Newport Beach, CA 92660.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

(the "DIP Borrowers") and Specialty DIP LLC, a Delaware limited liability company (the "DIP Lender"), a copy of which is incorporated herein and attached hereto as **Exhibit 1**, and the agreements, instruments, certificates, and other documents executed in connection therewith (collectively, the "DIP Documents");

(b) granting the DIP Liens and DIP Superpriority Claims, (as defined below) to the DIP Lender on all the DIP Collateral (as defined below) to secure the DIP Loan and all obligations owing and outstanding thereunder and under the DIP Documents and the DIP Orders, as applicable (collectively, the "DIP Obligations"), subject only to senior perfected liens, the Carve-Out (as defined below), and allowed superpriority administrative claims ("Prepetition Senior Lenders Administrative Claims") of senior lien holders based on diminution, if any, with such DIP Superpriority Claims being subject to a cap of $2,500,000;

(c) authorizing payment of the DIP Lender's expenses as described forth below at the times and in the amounts set forth in the DIP Term Sheet;

(d) modifying the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to provide the Debtors and the DIP Lender with the relief necessary to implement and effectuate the terms and provisions of the DIP Documents;

(e) scheduling the Final Hearing for an order approving the Motion on a final basis; and

(f) granting related relief;

and interim hearings (collectively, the "Interim Hearing") having been held by the Court on March 24, 2025,[3] at 1:00 p.m. and March 31, 2025, at 11:00 a.m.; and notice of the Motion and the relief sought therein having been given by the Debtors as set forth in this Interim Order; and the Court having considered the evidence adduced, and the statements of counsel at the Interim Hearing; and it appearing to the Court that granting the relief sought in the Motion on the terms and conditions herein contained is necessary and essential to enable the Debtors to preserve the value of the Debtors' business and assets and that such relief is fair and reasonable; and due deliberation and good cause having been shown to grant the relief sought in the Motion,

---

[3]  At the conclusion of the March 24, 2025, hearing, the Court granted certain limited financing relief on a superpriority administrative basis (the "Bridge Order"). *See* Docket No. 114.

12128624v.7

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    **Petition Date.** On February 28, 2025 (the "Investco Petition Date") and March 10, 2025 (the "SPE Petition Date", together with the Investco Petition Date, respectively, the "Petition Date"), each of the respective Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date of the filing of the Motion, no trustee, examiner or statutory committee of creditors has been appointed in these Chapter 11 Cases and the office of the U.S. Trustee (as hereinafter defined) has not appointed an official committee of unsecured creditors in the Chapter 11 Cases nor any other committee (if any, the "Committee").

B.    **Jurisdiction and Venue.**  Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. § 157(b)(2).  This Court has jurisdiction over the Chapter 11 Cases, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334.  Venue for the Chapter 11 Cases and the proceeding on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    **Corporate Authority.**  Subject to the entry of this Interim Order, the DIP Borrowers have all requisite power and authority to execute and deliver the DIP Documents to which they are a party and to perform their obligations thereunder.

D.    **Need for Postpetition Financing.**  The Debtors have requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and Local Rule 4001-2 and have immediate need to enter into the DIP Loan to, among other things, preserve and maintain the value of their assets and businesses and maximize the return to all creditors.  An immediate and

critical need exists for the Debtors to use the DIP Loan for certain permitted uses as detailed in the DIP Documents. The ability of the Debtors to obtain liquidity through the use of the proceeds of the DIP Loan is vital to the Debtors and their efforts to maximize the value of their assets. Absent entry of this Interim Order, the Debtors' estates and reorganization efforts will be immediately and irreparably harmed. The terms of the proposed DIP Loan pursuant to the DIP Documents and this Interim Order are fair and reasonable, reflect the Debtors' exercise of their prudent business judgment, and are supported by reasonably equivalent value and fair consideration.

E. **No Credit Available on More Favorable Terms.** The Debtors have been unable to obtain financing and other financial accommodations from sources other than the DIP Lender on terms more favorable than those provided under the DIP Loan and the DIP Documents. The Debtors have been unable to obtain adequate unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code. The Debtors also have been unable to obtain adequate credit for money borrowed (a) having priority over administrative expenses of the kind specified in sections 503(b), 507(a), and 507(b) of the Bankruptcy Code or (b) secured only by a lien on property of the Debtors and their estates that is not otherwise subject to a lien. Postpetition financing is not otherwise available without granting the DIP Lender, (1) the DIP Liens on all DIP Collateral, as and to the extent set forth herein, (2) the DIP Superpriority Claims junior to Prepetition Senior Lenders Administrative Claims, if any and (3) the other protections set forth in this Interim Order. After considering all alternatives, the Debtors have properly concluded, in the exercise of their sound business judgment, that the DIP Loan represents the best financing now available to them and is in the best interests of all of their stakeholders.

F.     **Business Judgment and Good Faith Pursuant to Section 364(e).**  Based on the Motion, all Declarations and evidence submitted and/or proffered in support thereof, and the record presented to the Court at the Interim Hearing, (i) the extension of credit and other financial accommodations made under the DIP Loan and the DIP Documents, (ii) the terms of the DIP Loan and (iii) the fees and other amounts paid and to be paid thereunder, in each case, pursuant to the DIP Orders and the DIP Documents: (a) are fair, reasonable, and the best available to the Debtors under the circumstances; (b) reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties; (c) are supported by reasonably equivalent value and fair consideration; and (d) represent the best financing available under the circumstances.  Subject to the entry of the Final Order, the DIP Loan was negotiated in good faith and at arm's length among the Debtors and the DIP Lender.  Subject to the entry of the Final Order, the credit to be extended under the DIP Loan shall be deemed to have been so allowed, advanced, made, used, and/or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the DIP Lender is therefore entitled to the protections and benefits of section 364(e) of the Bankruptcy Code and this Interim Order.

G.     **Notice.**  Notice of the requested relief sought at the Interim Hearing was provided by the Debtors consistent with Local Rule 9013-1(m) to: (i) the Office of the United States Trustee; (ii) the holders of the thirty (30) largest unsecured claims against the Debtors; (iii) counsel to the DIP Lender; (iv) the Internal Revenue Service; (v) the United States Attorney's Office for the District of Delaware; (vi) the Securities and Exchange Commission; (vii) the Delaware Secretary of State; (viii) the Delaware State Treasury; (ix) all taxing authorities to whom the Debtors have paid or owe taxes or related charges; and (x) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Notice was also provided by the Debtors to all parties

who have asserted or could assert a lien on the DIP Collateral.

**NOW, THEREFORE, UPON THE RECORD OF THE PROCEEDINGS HERETOFORE HELD BEFORE THIS COURT WITH RESPECT TO THE MOTION, THE EVIDENCE ADDUCED AT THE INTERIM HEARING, AND THE STATEMENTS OF COUNSEL THEREAT, IT IS HEREBY ORDERED THAT:**

1. **Motion Granted.** The Motion is GRANTED as set forth herein. Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived, adjourned, or settled and all reservations of rights included therein, are hereby denied and overruled with prejudice. All parties' rights are reserved with respect to any objections to the relief sought in connection with the Final Hearing.

2. **Final Hearing.** A final hearing on the relief requested in the Motion shall be held on April __, 2025, at ___ _.m. (prevailing Eastern Time). Any objections or responses to entry of the final order on the Motion shall be filed with the Court, and served so as to be **received** by the following parties, **by no later than 4:00 p.m., prevailing Eastern Time, on April __, 2025**: (i) proposed counsel to the Debtors, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, Delaware 19801 (Attn: Christopher M. Samis (csamis@potteranderson.com), Aaron H. Stulman (astulman@potteranderson.com), and R. Stephen McNeill (rmcneill@potteranderson.com)); (ii) Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Malcolm M. Bates (malcolm.m.bates@usdoj.gov)); (iii) counsel to Mohammad Honarkar and 4G Wireless, Inc. (the "Honarkar Parties"), Polsinelli, P.C., 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801 (Attn: Christopher A. Ward (cward@polsinelli.com)); and (iv) if any statutory committee has been appointed in these cases, counsel to such committee (collectively, the "Notice Parties").

3.   **Authorization of DIP Loan.**

(a)      Subject to the terms and conditions of this Interim Order, the DIP Borrowers are hereby authorized to execute, enter into, guarantee (as applicable), and perform all obligations under the DIP Loan and the DIP Documents to which they are a party.  The DIP Documents and this Interim Order govern the financial and credit accommodations to be provided to the DIP Borrowers by the DIP Lender in connection with the DIP Loan.

(b)      The DIP Documents are binding upon and enforceable against the Debtors and the Debtors' estates.

(c)      From the entry of this Interim Order through the entry of the Final Order, the DIP Borrowers are authorized to incur and unconditionally guarantee, all of their DIP Obligations on account of such incurrence under the DIP Loan, up to an aggregate principal amount of $3,500,000.00 in DIP Loans on an interim basis, together with applicable interest, expenses, fees, and other charges payable in connection with the DIP Loan (the "Interim Financing"), as applicable, in each case, subject to the terms and conditions set forth in this Interim Order and the DIP Documents.  For the avoidance of doubt, the $500,000 that was previously loaned to the DIP Borrowers by the DIP Lender under the Bridge Order shall be included in the Interim Financing approved by this Interim Order and subject to the DIP Liens and DIP Superpriority Claims (as defined herein).

(d)      Without limiting the foregoing, and without the need for further approval of this Court, the DIP Borrowers are authorized to perform all acts to make, execute, and deliver all instruments and documents (including, without limitation, the execution or recordation of pledge and security agreements, mortgages or deeds of trust, and financing statements), and to pay all fees or expenses, as authorized in the DIP Term Sheet, that may be required, necessary, or desirable for

the DIP Borrowers to implement the terms of, performance of their obligations under, or effectuate the purposes of and transactions contemplated by this Interim Order, the DIP Loan, and the DIP Documents (as applicable) in accordance herewith and therewith, including, without limitation:

(1)     the execution and delivery of, and performance under, the DIP Documents;

(2)     the execution and delivery of, and performance under, one or more amendments, waivers, consents, or other modifications to and under the DIP Documents, in each case, as the DIP Borrowers and the DIP Lender (in accordance with and subject to the terms of the applicable DIP Documents) may agree, it being understood that material amendments, waivers, consents and other modifications shall be made only upon court order, but that no further approval of the Court shall be required for non-material authorizations, amendments, waivers, consents, or other modifications to and under the DIP Documents, provided that such non-material changes shall be filed on the docket;

(3)     the payment of the reasonable and documented professional fees and out-of-pocket expenses incurred by the DIP Lender solely incurred in connection with negotiation and implementation of the DIP Documents as reflected in the DIP Term Sheet, and to Cole Schotz P.C, as counsel to the DIP Lender, in each case, without the need to file retention or fee applications, and without the need to obtain further Court approval;

(4)     subject to the Carve-Out (as defined below) and the Prepetition Senior Lenders Administrative Claims, if any, the granting and perfection of the DIP Liens (as set forth herein), and the granting of the DIP Superpriority Claims capped at $2,500,000, in each case, as set forth herein and in the DIP Documents; and

(5)     the performance of all other acts necessary, required, or desirable to implement the DIP Loan and to facilitate the transactions contemplated by the DIP Documents and this Interim Order in accordance therewith and herewith.

(e)     The DIP Lender shall not have any obligation or responsibility to monitor the DIP Borrowers' use of the DIP Loan, and the DIP Lender may rely upon the DIP Borrowers' representations that the amount of the DIP Loan requested at any time and the use thereof are in accordance with the requirements of this Interim Order, the DIP Documents, and Bankruptcy Rule 4001(c)(2).

4.     **DIP Obligations.**  Upon entry of this Interim Order and execution and delivery of the DIP Documents, the DIP Documents shall constitute valid, binding, enforceable, and non-avoidable obligations of the DIP Borrowers, and shall be fully enforceable against the

8

DIP Borrowers, their estates, and any successors thereto, including, without limitation, any estate representative or trustee appointed in the Chapter 11 Cases, or in any other proceedings superseding or relating to any of the foregoing and/or upon the dismissal of the Chapter 11 Cases (collectively, the "Successor Cases"), in each case, in accordance with the terms thereof and this Interim Order.  Upon execution and delivery of the DIP Documents, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, hereafter arising, which may from time to time be or become owing by the DIP Borrowers to the DIP Lender, under, or secured by, and in accordance with, the DIP Documents or this Interim Order, including all principal, interest, costs, fees, expenses, and other amounts under the DIP Documents (including this Interim Order).  Subject to the Carve-Out and paragraph 12 of this Interim Order, the DIP Obligations shall be due and payable in full in cash, without notice or demand, on the earlier of (a) a DIP Termination Event (as defined in the DIP Term Sheet) or the occurrence and continuance of any event or condition set forth in paragraph 12 of this Interim Order; (b) immediately upon the closing of a sale of the DIP Collateral after satisfaction of any senior liens and (c) the Maturity Date.  Absent Court order, no obligation, payment, transfer, or grant of security under the DIP Documents or this Interim Order to the DIP Lender shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 362, 502(d), 544, 548, or 549 of the Bankruptcy Code, any applicable Uniform Voidable Transfer Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or other similar state statute or common law), or subject to any defense, reduction, recoupment, recharacterization, subordination, disallowance, impairment, cross-claim, claim, counterclaim, offset, or any other challenge under the Bankruptcy Code or any applicable law unless in accordance with paragraph 12 of this Interim Order.

5.     **No Obligation to Extend Credit.**  The DIP Lender shall have no obligation to make any loan or advance under the applicable DIP Documents unless all the conditions precedent to the making of such extension of credit by the DIP Lender under the DIP Documents and this Interim Order have been satisfied in full or waived in accordance with the terms of the DIP Documents.

6.     **DIP Liens.** As security for the DIP Obligations, subject to the Carve-Out, the DIP Borrowers shall grant to the DIP Lender, effective immediately upon the date of this Interim Order, as set forth more fully in this Interim Order, without the necessity of the execution by the DIP Borrowers or the filing or recordation of mortgages, security agreements, lockbox or control agreements, financing statements, or any other instruments or otherwise by the DIP Lender, the following (collectively, the "DIP Liens"): (i) valid, binding, enforceable, non-avoidable, and automatically and properly perfected first priority security interests in and continuing liens on all of such DIP Borrowers' right, title and interest in, to and under all the DIP Borrowers' assets that as of entry of this Interim Order were not encumbered by a prior lien, and all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing and (ii) a junior security interest in and continuing lien on all of such DIP Borrowers' assets that as of the Petition Date were encumbered by one or more valid, perfected and non-avoidable liens, and all junior proceeds, products, accessions, rents and profits of or in respect of any of the foregoing (all of which being hereafter collectively referred to as the "DIP Collateral").  For the avoidance of doubt, the DIP Collateral shall not include any derivative actions or other claims and causes of action of the DIP Borrowers and their bankruptcy estates.

7.     **DIP Superpriority Claims.**  Effective immediately upon entry of this Interim Order, the DIP Lender is hereby granted, pursuant to section 364(c)(1) of the Bankruptcy

Code, an allowed superpriority administrative expense claim in the DIP Borrowers' Chapter 11 Cases and any Successor Cases thereof on account of the DIP Obligations, with the priority as set forth in section 364(c)(1) (the "<u>DIP Superpriority Claims</u>") but subject to both the Prepetition Senior Lenders Administrative Claims, if any, and the Carve-Out and further subject to a cap of $2,500,000. The DIP Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code. The DIP Superpriority Claims shall have recourse against the DIP Borrowers.

8. **<u>Carve-Out</u>**. As used in the Interim Order and/or the Final Order, the "Carve-Out" means the sum, without duplication, of the following (i) (a) all fees of the DIP Borrowers required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate; (b) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; and (c) unpaid allowed professional fees, costs and disbursements ("<u>Professional Fees</u>") incurred by the DIP Borrowers and any statutory committee of unsecured creditors (the "<u>Committee</u>") appointed in the Chapter 11 Cases, in each case not to exceed $2,500,000, in the aggregate, of Professional Fees of the DIP Borrowers' professionals, and a reasonable amount of aggregate Professional Fees of the Committee's professionals (the "<u>Professional Fee Cap</u>") as of the delivery of a Carve-Out Trigger Notice, and (ii) after the delivery of a Carve-Out Trigger Notice (which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the DIP Obligations under the DIP Loan, stating that the Post Carve-Out Trigger Notice Cap has been invoked), allowed Professional Fees in an aggregate amount not to exceed $125,000 (the "<u>Post Carve-Out Trigger Notice Cap</u>"). The DIP Borrower is authorized to open a new bank account at a depository

approved by the DIP Lender (an "<u>Approved Depository</u>"), designate an existing bank account at an Approved Depository, or designate a third party's bank account at an Approved Depository that shall function as a segregated account held in trust for and exclusively available for the payment of Professional Fees (the "<u>Professional Fees Escrow Account</u>") in the amount equal to the Professional Fee Cap, provided that any such bank account be with a bank that has executed a Uniform Depository Agreement with the U.S. Trustee's Office.   The DIP Borrower is authorized and directed to fund the Professional Fees Escrow Account up to the full amount of the Professional Fee Cap.   Such funds shall be held in the Professional Fees Escrow Account for the benefit of the Professionals to be applied to the allowed Professional Fees of the Professionals that are approved for payment pursuant to one or more orders of the Court.   Any allowed Professional Fees payable to the Professionals shall be paid first out of the Professional Fees Escrow Account.   Funds transferred to the Professional Fees Escrow Account shall not be subject to any liens or claims granted to the DIP Lender or any liens or claims granted as adequate protection and shall not constitute DIP Collateral; provided, that, notwithstanding anything to the contrary herein or in the DIP Documents, the DIP Collateral shall include the DIP Borrowers' reversionary interest in funds traceable to the DIP Loan held in the Professional Fee Escrow Account and such reversionary interest shall be treated as DIP Collateral and subject to all liens securing the DIP Loan (the "<u>DIP Liens</u>").

        9.    **DIP Lien Perfection.**   Without the necessity of the filing of financing statements, security agreements, federal or state notices, pledge agreements, recordings, mortgages or other documents or taking possession or control of any DIP Collateral, this Interim Order shall be sufficient evidence of the DIP Lender's perfected security interests and liens granted in the DIP Collateral pursuant to this Interim Order.   All such documents shall be deemed

to have been recorded and filed as of the Petition Date.

          10.    **Events of Default.**  The following shall be included as an Event of Default under the DIP Documents, as modified:

    a.  The failure by the DIP Borrowers to perform or comply with any material term, condition, covenant (including all negative covenants in the Term Sheet, as may be modified by this Interim Order) or obligation (including a payment obligation) contained in the DIP Documents, the Interim Order, or the Final Order;

    b.  The cessation of the DIP Loan to be in full force and effect, the DIP Loan being declared by the Court to be null and void, or the DIP Lender ceasing to have the benefit of the DIP Liens granted by the Interim Order and/or the Final Order;

    c.  Except as for the existing liens, the entry of any order of the Court granting to any third party a claim or lien pari passu with or senior to the DIP Liens granted to the DIP Lender hereunder;

    d.  Until the DIP Obligations are indefeasibly repaid in full in cash (other than contingent obligations for which no claim has been made or threatened) and all commitments under the DIP Loan terminated: (i) the validity or enforceability of any provision of the DIP Documents or the DIP Obligations are contested by the DIP Borrowers (or any party acting on its behalf or on behalf of the bankruptcy estate) and (ii) the DIP Borrowers (or any party acting on its behalf or on behalf of the bankruptcy estate) deny in writing that it has any further liability or obligation under any provision of the DIP Documents;

    e.  The DIP Borrowers fail to make any payments, including interest payments, due under any of the DIP Documents, the Interim Order or the Final Order within three (3) business days of when due;

    f.  The entry of an order converting the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code;

    g.  The entry of an order dismissing the Chapter 11 Cases;

    h.  The entry of an order appointing of an examiner having expanded powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code or a trustee to operate all or any material part of the DIP Borrowers' business;

    i.  With respect to any action involving the Debtors' real property interests, the entry of an order in the Chapter 11 Cases granting relief from the automatic stay so as to allow a third party or third parties not already authorized to do so, to proceed against any property with a value in excess of $100,000, including the DIP Collateral, of the applicable DIP Borrowers or to commence or continue any prepetition litigation against the DIP Borrowers involving potential liability in excess of $100,000 in the aggregate;

j. The commencement of any actions by the DIP Borrowers or any respective affiliate or subsidiaries thereof that challenges the rights and remedies of any of the DIP Lender under the DIP Documents;

k. Without the prior written consent of the DIP Lender which shall not be unreasonably withheld and other than as provided for in the DIP Documents, the bringing of any motion or taking of any action, seeking entry of an order, or the entry of an order by the Court, in the Chapter 11 Cases (i) granting superpriority administrative expense status to any claim pari passu with or senior to the claims of the DIP Lender, (ii) permitting the DIP Borrower to obtain financing under section 364 of the Bankruptcy Code without providing full repayment of the DIP Loan upon the filing of the motion as a condition thereto, (iii) permitting the DIP Borrower to grant security interests or liens under section 364 of the Bankruptcy Code without providing full repayment of the DIP Loan upon the filing of the motion as a condition thereto, (iv) permitting the DIP Borrower to use cash collateral under section 364 of the Bankruptcy Code other than as contemplated herein or as otherwise approved by Court order, or (v) authorizing the DIP Borrower to take other actions adverse to any DIP Lender or their rights and remedies under the DIP Documents, or their interest in DIP Collateral under section 364 of the Bankruptcy Code;

l. The DIP Borrowers or any of their respective affiliates or subsidiaries, or any person claiming by or through any of the foregoing, shall obtain court authorization to commence, or shall commence, join in, assist, fail to object to after the DIP Lender so requests, or otherwise participate as an adverse party in any suit or other proceeding against the DIP Lender regarding the DIP Documents or the DIP Obligations;

m. The entry of an order in the Chapter 11 Cases avoiding or permitting avoidance of any portion of the payments made on account of the DIP Obligations, the DIP Documents, or in each case any related documents or any other indebtedness provided to the DIP Borrower by the DIP Lender, or the taking of any action by the DIP Borrowers to challenge or support a challenge of any such payments;

n. The Interim Order or the Final Order and the terms thereof shall cease to create valid and perfected DIP Liens on the DIP Collateral and claims as required hereunder (other than an immaterial portion thereof);

o. The entry of an Order sought by the DIP Borrowers (or any party acting on its behalf or on behalf of the bankruptcy estate) seeking, or otherwise consenting to, any relief, the granting or prosecution of which could reasonably be expected to result in the occurrence of a DIP Event of Default;

p. The Interim Order or the Final Order being amended or modified without the consent of the DIP Lender; or

q. Failure to repay the DIP Obligations on the Maturity Date.

11. **<u>Remedies Upon Event of Default.</u>** Notwithstanding the provisions of

section 362 of the Bankruptcy Code, but subject to the applicable provisions of the Interim Order

and the Final Order, if any Event of Default occurs and is continuing, the DIP Lender may take

any or all of the following actions no earlier than five (5) business days after notice to the DIP

Borrowers ("Notice Period"):

a. terminate the commitment of the DIP Lender to make any further advances under the DIP Loan;

b. declare that the unpaid amount of the DIP Obligations, all interest accrued and unpaid thereon, and all other amounts owing or payable under the DIP Documents, this DIP Term Sheet and the Interim Order or the Final Order to be immediately due and payable, without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the DIP Borrowers;

c. foreclose upon the DIP Collateral; or

d. take any other action or exercise any other right or remedy as permitted by the DIP Documents or applicable law.

12. **Emergency Hearing.**  Upon the delivery by the DIP Lender of a Notice of

Event of Default, each of the DIP Lender, the Debtors, any Committee, and any other party in

interest, including, but not limited to the Honaker Parties, as applicable, consent to a hearing on

an expedited basis (the "Emergency Default Hearing") regarding the Event(s) of Default, after

which the Court may grant any relief it deems appropriate.  In addition, after the DIP Lender

delivers an Event of Default Notice, but prior to the expiration of the Notice Period, except as

may be otherwise ordered by the Court, the DIP Borrowers shall not use any proceeds of the DIP

Loan to pay any expenses except those which are necessary to pay to avoid immediate and

irreparable harm to the estates up to the amount of the Post Carve-out Trigger Notice Cap.  Any

delay or failure of the DIP Lender to exercise rights under the DIP Documents or this Interim

Order shall not constitute a waiver of its rights hereunder or otherwise.  Notwithstanding anything

to the contrary in this Interim Order, the entry of this Interim Order shall be without prejudice to

the rights of the Debtors to, following the occurrence of the DIP Termination Event, seek

appropriate relief from the Court.

13. **Payments Free and Clear.**  Any and all payments or proceeds remitted to the DIP Lender pursuant to the provisions of this Interim Order or any subsequent order of this Court shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, unless otherwise ordered by the Court.

14. **Modification of Automatic Stay**.  The Debtors are authorized and directed to perform all acts and to make, execute and deliver any and all instruments as may be reasonably necessary to implement the terms and conditions of this Interim Order and the transactions contemplated hereby, including (a) the granting of the DIP Liens and the DIP Superpriority Claims (subject to the  Carve-Out, the Prepetition Senior Lenders Administrative Claims, if any, and the $2,500,000 cap) and to perform such acts as the DIP Lender may reasonably request to assure the perfection and priority of the DIP Liens and the DIP Superpriority Claims, and (b) the DIP Borrowers incurring all liability and obligations, including all the DIP Obligations, to the DIP Lender as contemplated under this Interim Order and the DIP Documents, and to enter into and perform under the DIP Documents and any and all other instruments, certificates, agreements, and documents that may be reasonably required, necessary, or prudent for the performance by the DIP Borrowers under the DIP Documents and any transactions contemplated therein or in this Interim Order, in each case in accordance herewith or therewith.  The stay of section 362 of the Bankruptcy Code is hereby modified to permit the parties to accomplish the transactions contemplated by this Interim Order.

15. **Survival of Interim Order**.  The provisions of this Interim Order shall be binding upon any trustee appointed during the Chapter 11 Cases or any Successor Cases, and any actions taken pursuant hereto shall survive entry of any order which may be entered converting

12128624v.7

the Chapter 11 Cases to chapter 7 cases or any other Successor Cases, dismissing the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise, or confirming or consummating any plan(s) of reorganization. The terms and provisions of this Interim Order, as well as the priorities in payments, liens, and security interests granted pursuant to this Interim Order shall continue notwithstanding any conversion of the Chapter 11 Cases to chapter 7 cases or any other Successor Cases under the Bankruptcy Code, dismissal of the Chapter 11 Cases or confirmation or consummation of any plan(s) of reorganization. The terms of this Interim Order shall be valid and binding upon the Debtors, all creditors of the Debtors and all other parties in interest from and after the entry of this Interim Order by this Court.

16.     **Insurance**. Subject to the entry of the Final Order, and to the fullest extent provided by applicable law, the DIP Lender, shall be, and shall be deemed to be, without any further action or notice, named as additional insured and loss payee on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

17.     **Payments Held in Trust**. Prior to the indefeasible payment in full in cash of all DIP Obligations and termination of the commitment in accordance with the DIP Documents, any party who holds a lien or security interest in DIP Collateral that is junior and/or subordinate to the DIP Liens or a claim that is subordinate to the DIP Superpriority Claims receives or is paid the proceeds of any DIP Collateral in which the DIP Lender has a senior security interest other than as expressly permitted in the DIP Documents and this Interim Order, shall be deemed to have received, and shall hold, such proceeds or payments in trust for the DIP Lender and shall immediately turn over such amounts to the DIP Lender to repay the DIP Obligations in accordance with the DIP Documents and this Interim Order until the DIP Obligations are indefeasibly paid in full in cash.

12128624v.7

18.    **Good Faith under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order.**  Subject to the entry of the Final Order, the DIP Lender has acted in good faith in connection with the DIP Loan, the DIP Documents, the Interim Financing, and this Interim Order, and its reliance on this Interim Order is in good faith.  Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e) of the Bankruptcy Code, the DIP Lender is entitled to the protections provided in section 364(e) of the Bankruptcy Code, this Interim Order, and the DIP Documents.  To the extent provided in section 364(e) of the Bankruptcy Code, if any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacatur, or stay shall not affect the validity, priority, or enforceability of the DIP Obligations, the DIP Liens, and the DIP Superpriority Claims.  Notwithstanding any such reversal, modification, vacatur, or stay of this Interim Order, any DIP Obligations, DIP Liens and DIP Superpriority Claims, prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, modification, vacatur stay shall be governed in all respects by the original provisions of this Interim Order.

19.    **Release**.  The Debtors hereby acknowledge that effective upon entry of this Interim Order the Debtors have no defense, counterclaim, offset, recoupment, claim or demand of any kind or nature whatsoever that can be asserted to reduce or eliminate all or any part of the Debtors' liability solely with respect to, and solely to repay, the DIP Lender or to seek affirmative relief or damages of any kind or nature from the DIP Lender as it relates to the entry into the DIP Loan or the providing of the DIP Loans, but not relating to any other litigation, arbitration or other legal proceeding pending as of the Petition Date.  Subject to the entry of the Interim Order, the Debtors hereby fully, finally and forever release and discharge the DIP Lender and its officers,

directors, servants, agents, attorneys, assigns, heirs, parents, subsidiaries, and each Person acting

for or on behalf of any of them, each solely in their capacity as such (collectively, the "Released

DIP Parties") of and from any and all actions, causes of action, demands, suits, claims, liabilities,

liens, lawsuits, adverse consequences, amounts paid in settlement, costs, damages, debts,

deficiencies, diminution in value, disbursements, expenses, losses and other obligations of any

kind or nature whatsoever, in each case, existing at the time of entry of the Final Order, whether

in law, equity or otherwise (including, without limitation, those arising under sections 541

through 550 of the Bankruptcy Code and interest or other carrying costs, penalties, legal,

accounting and other professional fees and expenses, and incidental, consequential and punitive

damages payable to third parties), directly or indirectly arising out of, connected with or solely

relating to the DIP Documents and the Financing Orders and not to any other litigation, arbitration

or other legal proceeding pending as of the Petition Date; *provided* that the foregoing shall not

release any claims against a Released DIP Party that a court of competent jurisdiction determines,

pursuant to a final, non-appealable order, results primarily from the gross negligence or willful

misconduct of such Released DIP Party.  For the avoidance of doubt, no release granted in this

Interim Order shall release the DIP Lender from any Derivative Actions.

20. **Enforceability; Waiver of Any Applicable Stay**.  This Interim Order shall

constitute findings of fact and conclusions of law and shall take effect and be fully enforceable

*nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy

Rules 6004(h), 6006(d), 7062 or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or

Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately

effective and enforceable upon its entry and there shall be no stay of execution or effectiveness

of this Interim Order.

21.     **Proofs of Claim**.  The DIP Lender is not required to file proofs of claim in the Chapter 11 Cases or any Successor Cases.  Notwithstanding the foregoing, the DIP Lender is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) a proof of claim for any claims of the DIP Lender, as applicable, arising from the DIP Documents.

22.     **Credit Bid**.  Subject to the entry of the Final Order, the DIP Lender shall have the right pursuant to section 363(k) to credit bid, in the order of priority of the DIP Liens up to and including the full amount of the then outstanding DIP Obligations (a "Credit Bid").  Any such Credit Bid may provide for the assignment of the right to purchase the acquired assets to a sub-agent or a newly formed acquisition vehicle.

23.     **No Marshaling**.  Subject to the entry of the Final Order, the DIP Lender shall not be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral, and all proceeds shall be received and applied in accordance with the DIP Documents and this Interim Order, as applicable.

24.     **Notice Procedures for Professional Fees**.  Professionals for the DIP Lender shall not be required to submit invoices to this Court.  Copies of the Lender Professionals' invoices reasonably detailed to permit review for reasonableness shall be submitted to (i) Debtors' counsel, (ii) the U.S. Trustee, and (iii) the Honaker Parties' counsel, who shall have ten (10) days from receipt of such invoices to object to the payment of the invoices.  Upon conclusion of the objection period with no objection filed, the DIP Borrowers shall timely pay in cash on no less

than a monthly basis, and shall be jointly and severally liable for the fees, costs, and expenses of the DIP Lender.

25. **Negative Covenants from DIP Term Sheet**. The Negative Covenants contained within the DIP Term Sheet are hereby amended by this Interim Order as set forth below. To the extent any such Negative Covenants are not explicitly amended, such Negative Covenants remain in full force and effect.

a. Negative Covenant (f) shall be revised to read: "acquire any material assets, merge, consolidate or dissolve;"

b. Negative Covenant (t) shall be revised to read "other than in a confirmed chapter 11 plan within the initial 90 day Maturity Date, create, or hold equity securities in, any subsidiary that is not wholly owned (either directly or through one (1) or more other subsidiaries) by any DIP Borrower, or permit any subsidiary to create, or authorize the creation of, or issue or obligate itself to issue, any equity securities, or sell, transfer or otherwise dispose of any equity securities of any direct or indirect subsidiary of any DIP Borrower, or permit any direct or indirect subsidiary to sell, lease, transfer, exclusively license or otherwise dispose (in a single transaction or series of related transactions) of all or substantially all of the assets of such subsidiary;"

c. Negative Covenant (u) shall be revised to read "other than in a confirmed chapter 11 plan within the initial 90 day Maturity Date, (i) merge with, consolidate with or into, dissolve or liquidate into or convey, transfer, lease or otherwise dispose of (whether in one transaction or in a series of transactions) all or substantially all of its assets, property or equity securities (in each case, whether now owned or hereafter acquired) to or in favor of any person, or (ii) split or divide into two or more persons;"

26. **Bridge Order**. This Interim Order shall supersede the Bridge Order.

27. **No Waiver by Failure to Seek Relief**. The failure of the DIP Lender to seek relief or otherwise exercise its rights and remedies under this Interim Order, the DIP Term Sheet, the DIP Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder or otherwise of the DIP Lender.

28. **Headings**. The headings in this Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Interim Order.

29. **Retention of Jurisdiction**. The Court has and shall retain jurisdiction to

enforce this Interim Order (including if the Chapter 11 Cases are closed and then reopened).

22

# **EXHIBIT 1**

## **DIP Term Sheet**

Execution Version

## DEBTOR-IN-POSSESSION LOAN TERM SHEET

## March 19, 2025

This term sheet (together with the exhibits and schedules hereto, the "DIP Term Sheet") sets forth a summary of the terms and conditions with respect to the DIP Loan (as defined below) from and after, and subject to, the entry of the Interim Order (as defined below).  This DIP Term Sheet, or such other documents memorializing the terms hereof, shall be a binding agreement from and after, and subject to, the entry of the Interim Order with respect to the DIP Loan. The obligation of the DIP Lender (as defined below) to provide financing pursuant to this DIP Term Sheet is conditioned upon the execution and delivery of signature pages to this DIP Term Sheet by each of the parties hereto and shall be subject to the conditions precedent and other terms and conditions set forth herein.  In the event of any conflict between this DIP Term Sheet and the terms of the Interim Order or the Final Order, the terms of the Interim Order or the Final Order, as applicable, shall govern. In the event that an additional credit agreement for the DIP Loan is not entered into by the parties, this DIP Term Sheet and the Interim Order and the Final Order, as applicable, shall govern the DIP Loan.

| DIP Borrowers: | Laguna Festival Center, LLC |
|---|---|
| | 891 Laguna Canyon Road, LLC |
| | 777 at Laguna, LLC |
| | Laguna Art District Complex, LLC |
| | Aryabhata Group, LLC |
| | Hotel Laguna, LLC |
| | Cliff Village, LLC |
| | The Masters Buildings, LLC |
| | Laguna HI, LLC |
| | 837 Park Ave, LLC |
| | Tesoro Redlands, LLC |
| | 4110 West 3rd Street DE, LLC |
| | 314 S. Harvard DE, LLC |
| | Laguna HW, LLC |
| | Retreat at Laguna Villas, LLC |
| | Sunset Cove Villas, LLC |
| | Duplex at Sleepy Hollow LLC |
| | Cliff Drive Properties DE, LLC |
| | 694 NCH Apartments, LLC |
| | Heisler Laguna, LLC |
| | MOM BS Investco LLC |
| | MOM CA Investco LLC |
| | MOM AS Investco LLC |
| **DIP Lender:** | Specialty DIP LLC, a Delaware limited liability company |
| **DIP Facility:** | Debtor in Possession secured term loan facility of up to the maximum, original principal amount of $5,000,000 (the "DIP Loan"), which includes an initial funding amount of $3,500,000 (the |

1

| | |
|---|---|
| | "Initial Funding Amount") and an additional funding amount of $1,500,000 (the "Final Funding Amount"). |
| **Interest Rate:** | Interest shall accrue on the DIP Loan at the rate of 10% per annum, and shall be payable monthly, on the first (1st) business day of each month, in arrears. |
| **Default Rate:** | At all times while an Event of Default under the DIP Loan exists, at the election of the DIP Lender, principal, interest and other amounts under the DIP Loan shall bear interest at a rate per annum equal to 13%. |
| **Expenses of DIP Lender:** | The reasonable and documented professional fees and out-of-pocket expenses incurred by the DIP Lender, including expenses incurred in connection with defending the validity and enforceability of the DIP Documents (as defined below), shall be promptly paid by the DIP Borrowers in cash on no less than a monthly basis (documentation in summary form to be sufficient), and any DIP Lender counsel fees not paid each month shall accrue in kind and be payable in the following month. |
| **Interim Order:** | The interim order approving the Initial Funding Amount, which shall be in form and substance acceptable to the DIP Lender (the "Interim Order"), shall, among other things, authorize and approve (a) the making of the DIP Loan up to the Initial Funding Amount; and (b) the granting of the liens against the DIP Borrowers and their assets in accordance with this DIP Term Sheet and the DIP Documents with respect to the DIP Collateral (as defined below). |
| **Maturity Date:** | Unless otherwise agreed to by the DIP Lender in writing, the maturity date of the DIP Loan (the "Maturity Date") shall be the earliest to occur of the following, upon which the DIP Lender's commitment to provide the DIP Loan shall terminate, and the DIP Loan shall be indefeasibly paid in full in cash:<br><br>a. 90 days after entry of the Interim Order, provided, however that such 90 day period shall be extended for an additional 90 day period provided that (i) no Event of Default has occurred and is continuing, and (ii) a motion has been filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") seeking the sale of assets of the DIP Borrowers pursuant to which the net sale proceeds of such sale shall result in the indefeasible payment in full in cash of the DIP Obligations;<br><br>b. the consummation of a sale of all or substantially all of the assets of the DIP Borrowers; |

|  | c. acceleration of or termination of the DIP Loan pursuant to the DIP Documents; and |
|---|---|
|  | d. the substantial consummation (as defined in Section 1101 of chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") and which for purposes hereof shall be no later than the "effective date" thereof) of a plan filed in the that certain matter before the Bankruptcy Court entitled *In re: MOM CA Investco LLC, et al.*, (Case No. 25-10321, et al. (BLS)) (the "Chapter 11 Cases") that is confirmed pursuant to an order entered by the Bankruptcy Court. |
| **DIP Budget:** | There will be no DIP budget for operating expenses from the date of the entry of the Interim Order through the date of the final hearing to approve the DIP Loan. However, the Debtors must use the DIP Loan proceeds consistent with the permitted uses (discussed below), and the DIP Lender shall, in the interim period, have the right to be consulted on the use of proceeds from the DIP Loan for operating expenses that exceed $50,000 on any one item or group of related items, although the Debtors shall have sole discretion, subject to the permitted uses, as to the use of the proceeds of the DIP Loan. Notwithstanding the foregoing, the DIP Borrowers shall provide to the DIP Lender, as soon as reasonably practicable prior to the hearing to approve the Final Order (as defined below), a budget for the proceeds to be used for operating expenses subject to a 25% variance of the DIP Loan. |
| **DIP Obligations:** | As used herein, the term "DIP Obligations" means (a) the due and punctual payment by the DIP Borrowers of (i) the unpaid principal amount of and interest on (including interest accruing after the maturity of the DIP Loan and interest accruing after the commencement of the Chapter 11 Cases) the DIP Loan approved by the Bankruptcy Court and funded by the DIP Lender, as and when due, whether at maturity, by acceleration or otherwise, and (ii) all other monetary obligations, including advances, debts, liabilities, obligations, fees, costs, expenses and indemnities, whether primary, secondary, direct, indirect, absolute or contingent, due or to become due, now existing or hereafter arising, fixed or otherwise, of the DIP Borrowers to the DIP Lender under the DIP Documents and the Interim Order and Final Order, and (b) the due and punctual payment and performance of all covenants, duties, agreements, obligations and liabilities of the DIP Borrowers to the DIP Lender under or pursuant to the DIP Documents and the Interim Order and Final Order. |

| | |
|---|---|
| **Use of DIP Loan Proceeds:** | Subject to entry of the Interim Order, the DIP Borrowers, in their sole discretion, shall use the proceeds of the DIP Loan for the following "Permitted Uses":<br><br>a.   to fund the operating expenses of the DIP Borrowers, so long as the DIP Borrowers comply with the DIP Lender's consultation rights described above,<br><br>b.   to fund the administration of the Chapter 11 Cases;<br><br>c.   to fund the reasonable, documented, and allowed fees and expenses of the DIP Borrowers' and the DIP Lender's professionals; and<br><br>d.   to pay other amounts with the prior written consent of the DIP Lender. |
| **Approval by the Bankruptcy Court:** | This DIP Term Sheet and all terms and conditions of the DIP Loan set forth herein (collectively, the "<u>Transactions</u>") shall be subject to the terms of a final order, in form and substance acceptable to the DIP Lender in its sole and absolute discretion, approving the Transactions (the "<u>Final Order</u>"). |
| **DIP Documents:** | For the purposes of the Initial Funding Amount, this DIP Term Sheet and the Interim Order are the only required "loan documents". Prior to the entry of the Final Order, the parties shall execute and deliver definitive financing documentation governing the DIP Loan, consistent with this DIP Term Sheet  (the "<u>DIP Documents</u>"), and shall be approved upon the entry in the Bankruptcy Court of the Final Order and include (i) this DIP Term Sheet and any ancillary exhibits and documents executed in connection therewith, including a DIP Credit Agreement; (ii) a DIP budget; (iii) the Final Order; and (iv) any and all amendments, exhibits, supplements or schedules to (i)-(iii), each of which shall be in form and substance acceptable to the DIP Lender in its sole discretion.<br><br>Any motions, pleadings, and declarations filed in the Chapter 11 Cases by the DIP Borrowers related to the DIP Loan shall also be in form and substance acceptable to the DIP Lender in its sole discretion. |
| **DIP Funding:** | Subject to the terms and conditions set forth herein and in the DIP Documents, including satisfaction of each of the Conditions Precedent (defined below) to each such draw, DIP Lender will fund the following draws: |

| | |
|---|---|
| | 1. Upon the entry in the Bankruptcy Court of the Interim Order, in form and substance acceptable to the DIP Lender in its sole and absolute discretion, approving the DIP Loan and the DIP Documents, the DIP Lender will make the Initial Funding Amount available to the DIP Borrowers.<br><br>2. Upon the earlier to occur of (i) the Bankruptcy Court's entry of the Final Order; or (ii) filing by the applicable DIP Borrowers of a motion with the Bankruptcy Court seeking authority for the sale of real estate pursuant to which the net sale proceeds of such sale shall result in the indefeasible payment in full in cash of the DIP Obligations, the DIP Lender will make available to the DIP Borrowers the Final Funding Amount. |
| **Financing Orders** | The DIP Borrowers shall seek entry of the Interim Order and the Final Order, and the Interim Order and the Final Order shall be entered on the docket of the Chapter 11 Cases in a form and substance acceptable to the DIP Lender in its sole and absolute discretion, approving (among other things) the DIP Loan, the DIP Collateral and the DIP Documents. |
| **Security:** | As security for the DIP Obligations, the DIP Borrowers shall grant to the DIP Lender the following in the DIP Documents:<br><br>1. a first priority security interest in and continuing lien on all of such DIP Borrowers' right, title and interest in, to and under all the DIP Borrowers' assets that are not already encumbered by a prior lien, and all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing.<br><br>2. a junior security interest in and continuing lien on all of such DIP Borrowers' assets that are encumbered by one or more prior liens, and all proceeds, products, accessions, rents and profits of or in respect of any of the foregoing.<br><br>(all of which being hereafter collectively referred to as the "<u>DIP Collateral</u>").  For the avoidance of doubt, the DIP Collateral shall not include any derivative actions or other claims and causes of action of the DIP Borrowers' bankruptcy estates. |
| **Carve Out:** | As used in the Interim Order and/or the Final Order, the "Carve Out" means the sum, without duplication, of the following (I) (a) all fees of the DIP Borrowers required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate; |

(b) all reasonable fees and expenses up to $25,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; and (c) unpaid allowed professional fees, costs and disbursements ("Professional Fees") incurred by the DIP Borrowers and any statutory committee of unsecured creditors (the "Committee") appointed in the Chapter 11 Cases, in each case not to exceed $2,500,000, in the aggregate, of Professional Fees of the DIP Borrowers' professionals, and a reasonable amount of aggregate Professional Fees of the Committee's professionals (the "Professional Fee Cap") as of the delivery of a Carve-Out Trigger Notice, and (II) after the delivery of a Carve Out Trigger Notice,[1] allowed Professional Fees in an aggregate amount not to exceed $125,000 (the "Post-Carve Out Trigger Notice Cap").

The DIP Borrower is authorized to open a new bank account at an depository approved by the DIP Lender (an "Approved Depository"), designate an existing bank account at an Approved Depository, or designate a third party's bank account at an Approved Depository that shall function as a segregated account held in trust for and exclusively available for the payment of Professional Fees (the "Professional Fees Escrow Account") in the amount equal to, but not to exceed, the lesser of (i) the allowed Professional Fees, or (ii) the Professional Fee Cap. The DIP Borrower is authorized and directed to fund the Professional Fees Escrow Account up to the full amount of the Professional Fee Cap. Such funds shall be held in the Professional Fees Escrow Account for the benefit of the Professionals to be applied to the allowed Professional Fees of the Professionals that are approved for payment pursuant to one or more orders of the Bankruptcy Court. Any allowed Professional Fees payable to the Professionals shall be paid first out of the Professional Fees Escrow Account. Funds transferred to the Professional Fees Escrow Account shall not be subject to any liens or claims granted to the DIP Lender or any liens or claims granted as adequate protection, shall not constitute DIP Collateral; provided, that, notwithstanding anything to the contrary herein or in the DIP Documents, the DIP Collateral shall include the DIP Borrowers' reversionary interest in funds held in the Professional Fee Escrow Account and such reversionary interest shall be treated as DIP

---

[1] "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Lender to the DIP Borrowers, its lead restructuring counsel, the U.S. Trustee, and counsel to the Committee (collectively, the "Carve Out Notice Parties") which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the DIP Obligations under the DIP Loan, stating that the Post Carve Out Trigger Notice Cap has been invoked.

| | |
|---|---|
| | Collateral and subject to the all liens securing the DIP Loan (the "<u>DIP Liens</u>"). |
| **Conditions Precedent:** | In addition to the other conditions set forth in the DIP Documents, the obligations of the DIP Lender to advance the Initial Funding Amount and the Final Funding Amount, respectively, of the DIP Loan shall be conditioned on the satisfaction or waiver of the following: |
| | a.  As to the Initial Funding Amount, the entry by the Bankruptcy Court of the Interim Order in form and substance acceptable to the DIP Lender in its sole and absolute discretion; plus the General Conditions (defined below). |
| | b.  As to the Final Funding Amount, the entry by the Bankruptcy Court of the Final Order in form and substance acceptable to the DIP Lender in its sole and absolute discretion; plus the General Conditions (defined below). |
| | c.  The "General Conditions" include: |
| |    i.  the representations and warranties of the DIP Borrowers under the DIP Documents shall be true and correct in all respects (or in the case of representations and warranties with a "materiality" qualifier, true and correct in all material respects); |
| |    ii.  no trustee or examiner shall have been appointed with respect to the DIP Borrowers or their respective properties; |
| |    iii.  there shall exist no currently unknown action, suit, investigation, litigation or proceeding pending or (to the knowledge of the DIP Borrowers) threatened in writing in any court or before any arbitrator or governmental instrumentality (other than the Chapter 11 Cases or the consequences that would normally result from the commencement and continuation of the Chapter 11 Cases) that could reasonably be expected to have a material adverse effect; and |
| |    iv.  all reasonable and documented out-of-pocket costs, fees and expenses required to be paid to the DIP Lender pursuant to this DIP Term Sheet, the DIP Documents or the Interim Order and/or Final Order shall have been paid. |

| **Prepayments:** | Voluntary prepayments of the DIP Loan shall be permitted at any time, in minimum principal amounts and upon reasonable notice to be mutually agreed upon between the DIP Borrowers and the DIP Lender, without premium or penalty.<br><br>Any prepayment shall be applied as follows, first, to fees, costs and expenses, second to the payment of accrued and unpaid interest, and third to the repayment of principal.<br><br>Notwithstanding anything contained herein to the contrary, upon the sale of any assets of the DIP Borrowers, including without limitation any real property, the net proceeds of such sale (after the payment of customary closing costs and satisfaction of any prior liens on such assets or real property) shall be used to pay down the outstanding balance of the DIP Obligations. |
|---|---|
| **Borrowing Mechanics:** | Borrowing mechanics with respect to the DIP Loan shall be as set forth in the DIP Documents and shall include the following:<br><br>a.  Once repaid, the DIP Loan may not be reborrowed.<br><br>b.  As to the Initial Funding Amount, the DIP Lender shall fund the full Initial Funding Amount no less than two (2) Business Days (or such earlier date agreed to by the DIP Lender in its sole discretion) following (i) the entry of the Interim Order and (ii) the DIP Borrowers' certification of its satisfaction of the applicable conditions precedent to the funding of the Initial Loan Amount.<br><br>c.  As to the Final Funding Amount, the DIP Lender shall fund the full Final Funding Amount no less than two (2) Business Days (or such earlier date agreed to by the DIP Lender in its sole discretion) following (i) the entry of the Final Order, and (ii) the DIP Borrowers' certification of its satisfaction of the applicable conditions precedent to the funding of the Final Loan Amount. |
| **Representations and Warranties:** | In addition to any representations and warranties, among other things, the DIP Borrowers, jointly and severally, shall represent and warrant in the DIP Documents that:<br><br>a.  Upon entry of the Interim Order, each DIP Borrower has full power and authority to operate and conduct its business, to execute, deliver and perform this DIP Term Sheet and the DIP Documents and to incur obligations under this DIP Term Sheet and the DIP Documents. |

8

| | b. The DIP Obligations shall not be subject to setoff or recoupment or any such rights under Bankruptcy Code section 553 or otherwise with respect to any claim the applicable DIP Borrowers may have against the DIP Lender. |
|---|---|
| **Affirmative Covenants:** | Among other things, the DIP Documents shall provide for the following affirmative covenants pursuant to which the DIP Borrowers shall, subject to the approval of the Bankruptcy Court and applicable law: <br><br> a. use the advances made under the DIP Loan in accordance with Permitted Uses and shall not use such funds to commence any action against the DIP Lender or its affiliates, employees, directors, officers or principals; <br><br> b. pay all postpetition property taxes as they become due and payable, to the extent payment and/or enforcement thereof is not stayed as a result of the Chapter 11 Cases; <br><br> c. maintain insurance that already exists with respect to the business and property of the DIP Borrowers against loss of the kind and in the amounts substantially maintained by the DIP Borrowers; <br><br> d. comply with the requirements of all applicable laws unless failure to comply could not reasonably be expected to result in a material adverse effect; <br><br> e. cause one or more responsible officers of DIP Borrowers and the financial advisor to DIP Borrowers to participate in one conference call per week with the DIP Lender at a date and time mutually agreed to by DIP Borrowers and the DIP Lender and DIP Borrowers hereby acknowledge and agree that the DIP Lender shall be entitled to communicate directly with the financial advisor to DIP Borrowers; <br><br> f. permit, upon two (2) business days' notice, representatives of the DIP Lender to visit and inspect any of their respective properties during normal business hours, in a manner so as not to interfere unreasonably with the normal operations of the DIP Borrowers, to examine and make abstracts or copies from any of their respective books and records (including providing information and documents promptly upon request) and to discuss, and provide advice with respect to, its respective affairs, finances, properties, business operations and accounts with its respective officers, employees and independent public accountants as often as |

| | |
|---|---|
| | may reasonably be desired (subject to frequency and cost reimbursement limitations to be mutually agreed and other than information subject to confidentiality obligations, attorney-client privilege or attorney work product); |
| | g.  promptly upon request execute and deliver such documents and do such other acts as the DIP Lender may reasonably request in connection with the DIP Loan, and in accordance with the DIP Documents (including but not limited to execution of any additional security documents that may be reasonably requested); and |
| | h.  provide the DIP Lender with written notice promptly after it is aware that any of the following events shall occur: |
| |     a.  any DIP Borrower becomes aware of any claim, action, suit, proceeding, arbitration, complaint, charge or investigation threatened or pending, or is enjoined or in any way prevented by court or governmental order from conducting any part of its business as currently conducted or contemplated to be conducted; |
| |     b.  the ceasing of operations of its business as such business is normally conducted or the termination of substantially all of the DIP Borrowers' employees. |
| | i.  comply in all respects with any other covenants and obligations set forth herein or in the Interim Order and the Final Order. |
| **Negative Covenants:** | Among other things, the DIP Documents shall provide for the following negative covenants pursuant to which the DIP Borrowers shall not, without further order of the Court: |
| | a.  incur any indebtedness (other than the borrowings under the DIP Loan and obligations permitted to be incurred by the DIP Documents); |
| | b.  incur any liens (other than liens securing indebtedness permitted by the DIP Documents); |
| | c.  make any investments in any other person or make any loan to any other person; |
| | d.  engage in any business other than the business engaged in by the DIP Borrowers on the date hereof and other business activities which are reasonably related or ancillary to the foregoing or otherwise permitted by the DIP Lender; |

e. sell any assets outside the ordinary course of business, unless such sale results in the indefeasible payment in full in cash of the DIP Obligations or such sale is otherwise approved by the DIP Lender;

f. acquire any material assets or other person, merge, consolidate or dissolve;

g. use proceeds of the DIP Loan, except solely in accordance with the terms hereof;

h. amend the Interim Order, the Final Order or any Bankruptcy Court order relating to cash management, any other motion or filing that involves cash disbursements, or any motion or filing that involves the sale of the applicable DIP Borrower's assets without the prior written consent of the DIP Lender in its sole and absolute discretion;

i. voluntarily terminate or make any modification to any organizational documents of the DIP Borrowers;

j. engage in any transactions with insiders (as that term is defined in the Bankruptcy Code);

k. agree to entry of any order precluding, limiting, or modifying the DIP Lender's rights to credit bid up to the full amount of the outstanding DIP Loan;

l. other than as contemplated by the Interim Order or the Final Order, consent to the granting of adequate protection payments or liens, superpriority administrative expense claims or liens having priority senior to or *pari passu* with those granted to the DIP Lender;

m. terminate the compensation of the independent managers and/or independent directors;

n. relocate any item of the Collateral (other than relocations of the Collateral as necessary to support or perform the DIP Borrower's projects in the ordinary course of business) unless such relocation is within the continental United States and twenty (20) days' prior written notice of such relocation is provided to the DIP Lender;

o. change its company name, legal form, jurisdiction of formation or location of chief executive office address;

p. amend, restate, replace or modify, supplement or waive any provision of its organizational documents (including by side letter);

q. create, or authorize the creation of, or issue or obligate itself to issue shares of, or reclassify, any equity securities or any rights, options, or warrants to purchase such equity

|  | securities, securities of any type whatsoever that are, or may become, convertible or exchangeable into or exercisable for such equity securities; |
|  | r. agree to or facilitate the election or exercise of any rights under any prepetition loan documents, including the conversion of debt to equity; |
|  | s. purchase or redeem or pay or declare any dividend or make any distribution on, any equity securities; |
|  | t. create, or hold equity securities in, any subsidiary that is not wholly owned (either directly or through one (1) or more other subsidiaries) by any DIP Borrower, or permit any subsidiary to create, or authorize the creation of, or issue or obligate itself to issue, any equity securities, or sell, transfer or otherwise dispose of any equity securities of any direct or indirect subsidiary of any DIP Borrower, or permit any direct or indirect subsidiary to sell, lease, transfer, exclusively license or otherwise dispose (in a single transaction or series of related transactions) of all or substantially all of the assets of such subsidiary; |
|  | u. (i) merge with, consolidate with or into, dissolve or liquidate into or convey, transfer, lease or otherwise dispose of (whether in one transaction or in a series of transactions) all or substantially all of its assets, property or equity securities (in each case, whether now owned or hereafter acquired) to or in favor of any person, or (ii) split or divide into two or more persons; |
|  | v. engage in any line of business different from those lines of business carried on by the DIP Borrowers on the date hereof; or |
|  | w. amend, restate, supplement or otherwise modify any of any of the DIP Borrower's organizational documents. |
| **Events of Default:** | The following shall be included as an Event of Default under the DIP Documents: |
|  | a. The failure by the DIP Borrowers to perform or comply with any material term, condition, covenant or obligation (including a payment obligation) contained in the DIP Documents or any of the Interim Order or the Final Order; |
|  | b. The cessation of the DIP Loan to be in full force and effect, the DIP Loan being declared by the Bankruptcy Court to be null and void, or the DIP Lender ceasing to have the benefit |

of the DIP Liens granted by the Interim Order and/or the Final Order;

c.  Except as for the existing liens, the entry of any order of the Bankruptcy Court granting to any third party a claim or lien pari passu with or senior to the DIP Liens granted to the DIP Lender hereunder;

d.  Until the DIP Obligations are indefeasibly repaid in full in cash (other than contingent obligations for which no claim has been made or threatened) and all commitments under the DIP Loan terminated: (i) the DIP Borrowers makes any payment of prepetition principal or interest or otherwise on account of any prepetition indebtedness for borrowed money or payables other than the DIP Obligations under the DIP Loan, the Interim Order or the Final Order; (ii) the validity or enforceability of any provision of the DIP Documents or the DIP Obligations are contested by the DIP Borrowers (or any party acting on its behalf or on behalf of the bankruptcy estate); and (iii) the DIP Borrowers (or any party acting on its behalf or on behalf of the bankruptcy estate) deny in writing that it has any further liability or obligation under any provision of the DIP Documents;

e.  The DIP Borrowers fail to make any payments, including interest payments, due under any of the DIP Documents, the Interim Order or the Final Order within three (3) business days of when due;

f.  The entry of an order converting the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, or the applicable DIP Borrowers filing a motion or not timely opposing a motion seeking such relief;

g.  The entry of an order dismissing the Chapter 11 Cases, or the applicable DIP Borrowers filing a motion or not timely opposing a motion seeking such relief without the consent of the DIP Lender;

h.  The entry of an order in the Chapter 11 Cases seeking the appointment of an examiner having expanded powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code or a trustee to operate all or any material part of the DIP Borrowers' business;

i.  The entry of an order in the Chapter 11 Cases granting relief from the automatic stay so as to: allow a third party or third

parties to proceed against any property with a value in excess of $50,000, including the applicable DIP Collateral, of the applicable DIP Borrowers or to commence or continue any prepetition litigation against the DIP Borrowers involving potential liability in excess of $50,000 in the aggregate;

j.  The commencement of any actions by the DIP Borrowers or any respective affiliate or subsidiaries thereof (or any party acting on its behalf or on behalf of the bankruptcy estate) that challenges the rights and remedies of any of the DIP Lender under the DIP Documents;

k.  Without the prior written consent of the DIP Lender and other than as provided for in the DIP Documents, the bringing of any motion or taking of any action, seeking entry of an order, or the entry of an order by the Bankruptcy Court, in the Chapter 11 Cases (i) granting superpriority administrative expense status to any claim pari passu with or senior to the claims of the DIP Lender, (ii) permitting the DIP Borrower to obtain financing under Section 364 of the Bankruptcy Code, (iii) permitting the DIP Borrower to grant security interests or liens under Section 364 of the Bankruptcy Code, (iv) permitting the DIP Borrower to use cash collateral under Section 364 of the Bankruptcy Code other than as contemplated herein, or (v) authorizing the DIP Borrower to take other actions adverse to any DIP Lender or their rights and remedies under the DIP Documents, or their interest in DIP Collateral under Section 364 of the Bankruptcy Code;

l.  The entry of any order terminating the DIP Borrower's exclusive right to file a plan or the expiration of the DIP Borrower's exclusive right to file a plan;

m.  The DIP Borrowers or any of their respective affiliates or subsidiaries (or any party acting on its behalf or on behalf of the bankruptcy estate), or any person claiming by or through any of the foregoing, shall obtain court authorization to commence, or shall commence, join in, assist, fail to object to after DIP Lender so requests, or otherwise participate as an adverse party in any suit or other proceeding against the DIP Lender regarding the DIP Documents or the DIP Obligations;

n.  A plan shall be filed by the DIP Borrower, or be confirmed in the Chapter 11 Cases, or any order shall be entered which dismisses the Chapter 11 Cases and which plan or order

(i) (x) does not provide for termination of the unused commitments under the DIP Loan and the indefeasible payment in full in cash on the effective date of such plan or order of the DIP Obligations (other than contingent indemnity obligations for which no claim has been made or threatened); or (y) is not satisfactory to the DIP Lender in its sole and absolute discretion, and (ii) does not provide, to the extent permitted by applicable law, for release and exculpatory provisions relating to the DIP Lender that are satisfactory to the DIP Lender in its sole and absolute discretion, or the DIP Borrowers or any of their respective subsidiaries shall file, propose, support, or fail to contest in good faith the filing or confirmation of such a plan or the entry of such an order;

o. The Bankruptcy Court shall enter an order authorizing the sale of all or substantially all of the assets of the DIP Borrower that does not provide for the indefeasible payment in full in cash the DIP Obligations;

p. The entry of an order in the Chapter 11 Cases avoiding or permitting avoidance of any portion of the payments made on account of the DIP Obligations, the DIP Documents, or in each case any related documents or any other indebtedness provided to the DIP Borrower by the DIP Lender, or the taking of any action by the DIP Borrowers (or any party acting on its behalf or on behalf of the bankruptcy estate) to challenge or support a challenge of any such payments;

q. The Interim Order or the Final Order and the terms thereof shall cease to create valid and perfected DIP Liens on the DIP Collateral and claims as required hereunder (other than an immaterial portion thereof);

r. The filing or support of any pleading by the DIP Borrowers (or any party acting on its behalf or on behalf of the bankruptcy estate) seeking, or otherwise consenting to, any relief, the granting or prosecution of which could reasonably be expected to result in the occurrence of a DIP Event of Default;

s. Any non-monetary final judgment or order with respect to a post-petition event shall be rendered against the DIP Borrower which does or could reasonably be expected to have a material adverse effect, and, in each case, there shall be a period of ten (10) consecutive days during which a stay

| | |
|---|---|
| | of enforcement of such judgment or order, by reason of a pending appeal or otherwise, shall not be in effect; |
| | t.  The Interim Order or the Final Order being amended or modified without the consent of the DIP Lender; or |
| | u.  Failure to repay the DIP Obligations on the Maturity Date. |
| **Remedies:** | Notwithstanding the provisions of Section 362 of the Bankruptcy Code, but subject to the applicable provisions of the Interim Order and the Final Order, if any Event of Default occurs and is continuing, the DIP Lender may take any or all of the following actions no earlier than 5 business days after notice to the DIP Borrowers: |
| | a.  terminate the commitment of the DIP Lender to make any further advances under the DIP Loan; |
| | b.  declare that the unpaid amount of the DIP Obligations, all interest accrued and unpaid thereon, and all other amounts owing or payable under the DIP Documents, this DIP Term Sheet and the Interim Order or the Final Order to be immediately due and payable, without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the DIP Borrowers; |
| | c.  foreclose upon the DIP Collateral; or |
| | d.  take any other action or exercise any other right or remedy as permitted by the DIP Documents or applicable law. |
| **Release of Claims:** | The Final Order shall provide for the following release, in which the DIP Borrowers will acknowledge the following: |
| | Effective upon entry of the Final Order and as of such date, the DIP Borrowers have no defense, counterclaim, offset, recoupment, claim or demand of any kind or nature whatsoever that can be asserted to reduce or eliminate all of any part of the DIP Borrowers' liability to repay the DIP Lender or to seek affirmative relief or damages of any kind or nature from the DIP Lender.  Upon entry of the Final Order, each DIP Borrower fully, finally and forever release and discharge the DIP Lender and its officers, directors, servants, agents, attorneys, assigns, heirs, parents, subsidiaries, and each Person acting for or on behalf of any of them, each solely in their capacity as such (collectively, the "<u>Released DIP Parties</u>") of and from any and all actions, causes of action, demands, suits, claims, liabilities, liens, lawsuits, adverse consequences, amounts paid in settlement, costs, damages, debts, deficiencies, diminution in value, disbursements, |

| | |
|---|---|
| | expenses, losses and other obligations of any kind or nature whatsoever, in each case, existing at the time of entry of the Final Order, whether in law, equity or otherwise (including, without limitation, those arising under sections 541 through 550 of the Bankruptcy Code and interest or other carrying costs, penalties, legal, accounting and other professional fees and expenses, and incidental, consequential and punitive damages payable to third parties), directly or indirectly arising out of, connected with or relating to the DIP Documents and the Final Order; provided that the foregoing shall not release any claims against a Released DIP Party that a court of competent jurisdiction determines, pursuant to a final, non-appealable order, results primarily from the gross negligence or willful misconduct of such Released DIP Party.<br><br>For the avoidance of doubt, the releases herein shall only apply to claims arising from or relating to the DIP Loan. |
| **Amendments and Waivers; Assignments:** | Except as otherwise provided herein or therein, the provisions of the DIP Documents, the Interim Order and the Final Order may not be amended or waived without the written consent of the DIP Lender. No other person or entity shall be a direct or indirect legal beneficiary of or have any direct or indirect cause of action or claim in connection with, this DIP Term Sheet or any related documentation. The rights and obligations of the DIP Borrowers hereunder may not be assigned by the DIP Borrowers without the prior written consent of the DIP Lender, which consent may be granted or withheld in the DIP Lender's sole discretion.<br><br>The rights and remedies of the DIP Lender expressly set forth herein and in the related documentation are cumulative and in addition to, and not exclusive of, all other rights and remedies available at law, in equity or otherwise. No failure or delay on the part of the DIP Lender in exercising any right, power or privilege shall operate as a waiver thereof, nor shall any single or partial exercise of any such right, power or privilege preclude any other or further exercise thereof or the exercise of any other right, power or privilege or be construed to be a waiver of any default or Event of Default. |
| **Expenses and Indemnification:** | The DIP Lender (and its affiliates and respective officers, directors, employees, advisors and agents) (each such person, an "Indemnitee") will have no liability for, and will be indemnified and held harmless against, any losses, claims, damages, liabilities or expenses incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds thereof, except to the extent they are found by a final, non-appealable judgment of a court of competent jurisdiction to arise from the gross negligence or willful misconduct of the relevant indemnified person. Such |

| | indemnity shall not be available to the extent arising from a material breach of any obligation of such Indemnitee under the DIP Documents. |
|---|---|
| **Severability:** | If any term or other provision of this DIP Term Sheet is invalid, illegal or incapable of being enforced by any rule of law, or public policy, all other conditions and provisions of this DIP Term Sheet will nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner adverse to any party. Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the parties hereto will negotiate in good faith to modify this DIP Term Sheet so as to effect the original intent of the parties as closely as possible in an acceptable manner to the end that the transactions contemplated hereby are fulfilled to the extent possible. |
| **Survival:** | All representations, warranties, covenants, agreements, and conditions contained in or made pursuant to the DIP Documents shall survive (a) the making of the DIP Loan and the payment of the DIP Obligations and (b) the performance, observance and compliance with the covenants, terms and conditions, express or implied, of all DIP Documents, until the due and punctual (i) indefeasible payment of the DIP Obligations and (ii) performance, observance and compliance with the covenants, terms and conditions, express or implied, of this DIP Term Sheet and all of the other DIP Documents; provided, however, that the Expenses and Indemnification provision shall survive (x) indefeasible payment of the DIP Obligations and (y) performance, observance and compliance with the covenants, terms and conditions, express or implied, of this DIP Term Sheet and all of the other DIP Documents. |
| **Governing Law:** | The laws of the State of Delaware and the Bankruptcy Code. |
| **Financing Order Governs:** | In the event of any conflict between this DIP Term Sheet, the Interim Order or the Final Order, the terms of the Interim Order or the Final Order, as applicable, shall govern. |
| **Jurisdiction:** | Each party hereto hereby consents and agrees that the state and federal courts located in the State of Delaware shall have jurisdiction to hear and determine any claims or disputes between the parties hereto pertaining to this DIP Term Sheet or any related documentation or to any matter arising out of or relating to this DIP Term Sheet or any related documentation provided that during the Chapter 11 Cases (including if the Chapter 11 Cases are closed and then reopened) the Bankruptcy Court shall have exclusive jurisdiction to hear and determine any claims or disputes between |

18

|  | the parties hereto pertaining to this DIP Term Sheet or any related documentation or to any matter arising out of or relating to this DIP Term Sheet or any related documentation; provided, further that nothing in this DIP Term Sheet shall be deemed to operate to preclude the DIP Lender from bringing suit or taking other legal action in any other jurisdiction to realize on any security for the DIP Obligations, or to enforce a judgment or other court order in favor of the DIP Lender.

Each party hereto hereby waives, to the fullest extent permitted by applicable law, any right to jury trial with respect to any claim, demand, action or cause of action arising under this DIP Term Sheet and the related documentation or in any way connected with or related to the dealings in respect hereof or thereof, in each case whether now existing or hereafter arising, and whether in contract, tort, equity or otherwise. |

**IN WITNESS WHEREOF**, the parties hereto have caused this DIP Term Sheet to be executed as of the date first set forth above.

**DIP BORROWERS:**

Laguna Festival Center, LLC

By: *Mark Shinderman*
Mark Shinderman
Chief Restructuring Officer

891 Laguna Canyon Road, LLC

By: *Mark Shinderman*
Mark Shinderman
Chief Restructuring Officer

777 at Laguna, LLC

By: *Mark Shinderman*
Mark Shinderman
Chief Restructuring Officer

Laguna Art District Complex, LLC

By: *Mark Shinderman*
Mark Shinderman
Chief Restructuring Officer

Aryabhata Group, LLC

By: *Mark Shinderman*
Mark Shinderman
Chief Restructuring Officer

Hotel Laguna, LLC

By: *Mark Shinderman*
Mark Shinderman
Chief Restructuring Officer

Cliff Village, LLC

By: *Mark Shinderman*
Mark Shinderman
Chief Restructuring Officer

20

The Masters Buildings, LLC

By: *Mark Shinderman*
Mark Shinderman
Chief Restructuring Officer

Laguna HI, LLC

By: *Mark Shinderman*
Mark Shinderman
Chief Restructuring Officer

837 Park Ave, LLC

By: *Mark Shinderman*
Mark Shinderman
Chief Restructuring Officer

Tesoro Redlands, LLC

By: *Mark Shinderman*
Mark Shinderman
Chief Restructuring Officer

4110 West 3rd Street DE, LLC

By: *Mark Shinderman*
Mark Shinderman
Chief Restructuring Officer

314 S. Harvard DE, LLC

By: *Mark Shinderman*
Mark Shinderman
Chief Restructuring Officer

Laguna HW, LLC

By: *Mark Shinderman*
Mark Shinderman
Chief Restructuring Officer

Retreat at Laguna Villas, LLC

By: *Mark Shinderman*
Mark Shinderman
Chief Restructuring Officer

21

Sunset Cove Villas, LLC

By: *Mark Shinderman*

Mark Shinderman

Chief Restructuring Officer

Duplex at Sleepy Hollow LLC

By: *Mark Shinderman*

Mark Shinderman

Chief Restructuring Officer

Cliff Drive Properties DE, LLC

By: *Mark Shinderman*

Mark Shinderman

Chief Restructuring Officer

694 NCH Apartments, LLC

By: *Mark Shinderman*

Mark Shinderman

Chief Restructuring Officer

Heisler Laguna, LLC

By: *Mark Shinderman*

Mark Shinderman

Chief Restructuring Officer

MOM BS Investco LLC

By: *Mark Shinderman*

Mark Shinderman

Chief Restructuring Officer

MOM CA Investco LLC

By: *Mark Shinderman*

Mark Shinderman

Chief Restructuring Officer

MOM AS Investco LLC

By: *Mark Shinderman*

Mark Shinderman

Chief Restructuring Officer

**DIP LENDER**:

Specialty DIP LLC

By: _____
DocuSigned by:
*BHAJNEET SINGH MALIK*
514BB58E7E124A5...

Name:  Bhajneet Singh Malik
Title:   Manager

24