**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MOM CA Investco LLC, *et al.*,[1] | Case No. 25-10321 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Hearing Date: April 22, 2025 at 10:30 a.m. (ET)**<br>**Objection Deadline: April 15, 2025 at 4:00 p.m. (ET)** |

**MOTION OF MOHAMMAD HONARKAR AND 4G WIRELESS, INC. FOR ENTRY**
**OF AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY**
**PURSUANT TO 11 U.S.C. § 362(d)**

Mohammad Honarkar and 4G Wireless, Inc. ("**4G**" and together with Mr. Honarkar, the "**Honarkar Parties**"), by and through their undersigned counsel, hereby move (this "**Motion**") for entry of an order granting the Honarkar Parties relief from the automatic stay pursuant to 11 U.S.C. § 362(d), if the stay applies, to permit the Honarkar Parties to proceed with the Arbitration[2] to a confirmed final award, elect (but not exercise) their remedies, and defend against any related appeals. In support of this Motion, the Honarkar Parties rely, in part, on the *Motion of Mohammad Honarkar and 4G Wireless, Inc. for Entry of an Order Directing the Appointment of a Chapter 11 Trustee Pursuant to 11 U.S.C. § 1104(a)* [Docket No. 29] ("**Trustee Motion**") and the *Declaration*

---

[1] The Debtors in these chapter 11 proceedings, together with the last four digits of each Debtor's federal tax identification number, are: MOM CA Investco LLC [6263], MOM AS Investco LLC [6049], MOM BS Investco LLC [6180], Retreat at Laguna Villas, LLC [2046], Sunset Cove Villas, LLC [9178], Duplex at Sleepy Hollow, LLC [9237], Cliff Drive Properties DE, LLC [0893], 694 NCH Apartments, LLC [0318], Heisler Laguna, LLC [4709], Laguna Festival Center, LLC [4073], 891 Laguna Canyon Road, LLC [0647], 777 AT Laguna, LLC [8715], Laguna Art District Complex, LLC [8316], Tesoro Redlands DE, LLC [2764], Aryabhata Group LLC [7332], Hotel Laguna, LLC [9580], 4110 West 3rd Street DE, LLC [8641], 314 S. Harvard DE, LLC [2057], Laguna HI, LLC [6408], Laguna HW, LLC [9470], The Masters Building, LLC [6134], and 837 Park Avenue, LLC [3229]. The Debtors' headquarters are located at 520 Newport Center Drive, Suite 480, Newport Beach, CA 92660.

[2] Capitalized terms used but not defined herein shall have the same meanings ascribed to them in the Trustee Motion.

*of Mohammad Honarkar in Support of the Motion of Mohammad Honarkar and 4G Wireless, Inc.*

*for Entry of an Order Directing the Appointment of a Chapter 11 Trustee Pursuant to 11 U.S.C. §*

*1104(a)* [Docket No. 30] (the "**Trustee Motion Declaration**") and respectfully state as follows:

## INTRODUCTION

1.      Since succeeding in the Arbitration, the Honarkar Parties have remained steadfastly committed to obtaining and confirming a final arbitration award against Mahender Makhijani, Continuum, the MOM Members, the MOM Managers, and Nano (collectively, the "**Respondents**"). While the MOM Debtors are also parties to the Arbitration, they are merely nominal respondents and derivative claimants. There are no claims brought against the MOM Debtors in the Arbitration, and the Arbitrator has made no findings against the MOM Debtors. The SPE Debtors are not parties to the Arbitration at all. Thus, the Arbitration is not an action against the Debtors in any meaningful way, and, if anything, the Arbitration only augments the Debtors' estates as they are the beneficiary of monetary damages awarded on the derivative claims asserted therein. Furthermore, obtaining, confirming, and defending a final award against the Respondents also does not constitute an action against property of any of the Debtors' estates. As such, the automatic stay imposed by the filing of these Chapter 11 Cases does not apply to prohibit the Honarkar Parties from finalizing the Arbitration proceedings, obtaining a confirmed final award, and defending any related appeals.

2.      Moreover, even assuming, *arguendo*, that the automatic stay does apply, ample cause exists to lift the stay. The Honarkar Parties have already prevailed on the merits in the Arbitration after nearly two years of litigation, a three-week long evidentiary hearing, and pre- and

post-hearing briefing all before a highly qualified and experienced Arbitrator,[3] and the prejudice to the Honarkar Parties of the delay and disruption caused by the stay, if it applies, greatly outweighs any harm to the Debtors of lifting the stay. Indeed, the Debtors will, in fact, <u>benefit</u> from the Arbitration proceeding through to confirmation of a final award. Accordingly, stay relief is warranted and should be granted.

## <u>JURISDICTION AND VENUE</u>

3.      The United States Bankruptcy Court for the District of Delaware (this "**Court**") has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

4.      In accordance with Rule 9013-1(f) of the Local Rules of Bankruptcy Procedure for the District of Delaware, the Honarkar Parties hereby consent to entry of a final order if it is determined that the Court lacks Article III jurisdiction to enter such final order or judgment absent consent of the parties.

5.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

6.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      The statutory bases for this Motion are 11 U.S.C. §§ 105(a), 362(d), and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

---

[3] As discussed in the Trustee Motion, before his retirement, the Arbitrator was the Assistant Presiding Judge of the Orange County Superior Court, an Associate Justice with the California Court of Appeals for 9 years, and twice served as a Justice Pro-tem on the California Supreme Court.

## BACKGROUND

A.     **The Chapter 11 Cases**

8.      On February 28, 2025, each of the MOM Debtors filed a voluntary petition for relief under chapter 11 of the United States Code (the "**Bankruptcy Code**") in this Court, and, on March 10, 2025, each of the SPE Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court, as well, commencing these jointly administered Chapter 11 Cases.

9.      On March 13, 2025, the Honarkar Parties filed the Trustee Motion, seeking the appointment of a chapter 11 trustee for the Debtors based on, among other grounds, the fraud, dishonesty, gross mismanagement, and other misconduct committed by the Continuum Parties, as well as the Trustee Motion Declaration in support of the Trustee Motion.

10.     The Honarkar Parties hereby incorporate by reference the factual and procedural background set forth in the Trustee Motion as if set forth fully herein and rely, in part, upon the Trustee Motion Declaration and its attached exhibits.

11.     The Honarkar Parties issued discovery on the Debtors related to the Trustee Motion, and the hearing on the Trustee Motion was scheduled for April 11, 2025. The Honarkar Parties and the Debtors have now agreed to stay discovery and prosecution of the Trustee Motion until April 25, 2025, provided that all rights are reserved and that the Honarkar Parties may appear before the Court at the May 1, 2025 hearing to re-commence discovery and set the Trustee Motion for hearing on or about May 15, 2025 or such other date that is convenient to the Court.

12.     On March 17, 2025, in another blatant attempt by the Continuum Parties to obstruct the Arbitration proceedings and thwart confirmation of a final award, each of the MOM Members filed a filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court, commencing bankruptcy cases (the "**Investor Group Cases**") that are separate from and not being

jointly administered with these Chapter 11 Cases but are instead jointly administered in Case No. 25-10510 (BLS). The Honarkar Parties have moved to dismiss the Investor Group Cases as filed in bad faith. *See, e.g.*, *Motion of Mohammad Honarkar and 4G Wireless, Inc. for Entry of An Order Dismissing Debtors' Chapter 11 Cases Pursuant to 11 U.S.C. § 1112(b) or, in the Alternative, Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362(d)*, Case No. 25-10510, Docket No. 4 (the "**MOM Investor Group Dismissal Motions**").

13.     On March 19, 2025, the Debtors filed the *Motion of the Debtors for Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing; and (II) Granting Related Relief* [Docket No. 89] (the "**DIP Motion**") seeking entry of interim and final orders authorizing the Debtors to obtain certain insider postpetition financing (the "**Specialty DIP Loan**") from Specialty DIP LLC ("**Specialty DIP**"), an entity that was recently formed by and is deeply connected to Mahender Makhijani and his affiliates.

14.     On March 21, 2025, the Honarkar Parties filed the *Objection of Mohammad Honarkar and 4G Wireless, Inc. to Motion of the Debtors for Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing; and (II) Granting Related Relief* [Docket No. 96] (the "**DIP Objection**"), objecting to the DIP Motion on various grounds, including that certain of the terms of the proposed insider financing demonstrate that the Continuum Parties are attempting to use the financing to exercise improper control in these Chapter 11 Cases.

15.     The hearing on interim approval of the DIP Motion initially went forward on March 24, 2025 and, as a direct result of DIP Objection, was adjourned to March 31, 2025. During the March 31 hearing, the Honarkar Parties and the Debtors announced a partial resolution pursuant to which the Honarkar Parties did not oppose the approval of the DIP Motion on an interim basis,

subject to certain conditions, including the Debtors' announcement on the record that they would work with the Honarkar Parties in good faith on a term sheet for a chapter 11 plan of reorganization, and with all of the Honarkar Parties' rights reserved with respect to final approval of the DIP Motion.

16.     Despite extensive negotiations between the Honarkar Parties, the Debtors, and Specialty DIP (through Mr. Makhijani), the parties could not reach agreement on one last event of default under the Specialty DIP Loan: namely, that an event of default will occur and Specialty DIP will be able to exercise its default remedies if an order is entered in these Chapter 11 Cases granting relief from the automatic stay to allow any party to proceed against any property of the Debtors with a value in excess of $100,000, including the DIP Collateral of the applicable DIP Borrowers, or to commence or continue any prepetition litigation against the DIP Borrowers involving potential liability in excess of $100,000 in the aggregate.[4]

### B.     Further Developments in the Arbitration

17.     As this Court is aware, while the Arbitration Award contains all of the Arbitrator's findings and conclusions as to the Respondents' liability, the Arbitration Award is nevertheless a partial interim award because the attorneys' fees and costs to which the Honarkar Parties are entitled, the amount of damages to be awarded to the Honarkar Parties, and the Honarkar Parties' election of remedies remain to be determined in further proceedings in the Arbitration.

18.     One potential remedy that the Honarkar Parties may elect is to rescind the Joint Venture and thereby take possession of the SPE Debtors, which the Honarkar Parties were

---

[4] What became clear during these negotiations is that Mr. Makhijani and the other Continuum Parties are using Specialty DIP as a sword in an attempt to prevent the Honarkar Parties from obtaining relief from the automatic stay to bring the Arbitration Award to finality. The Honarkar Parties understand the consequences of entry of an order granting relief from the stay and urge this Court grant that relief.

fraudulently induced into contributing to the MOM Debtors. (*See* Arb. Award at 44.) In addition, among other amounts and remedies, the Arbitrator determined that the Honarkar Parties are entitled to recover their attorneys' fees and costs. (Arb. Award at 48.)

19.    Once the amount of the Honarkar Parties' attorneys' fees and costs award is determined, it will be incorporated with the Arbitration Award into a partial final award (the "**Partial Final Award**"). The Honarkar Parties will then seek confirmation of the Partial Final Award by the California Superior Court and move for the appointment of a receiver to perform the awarded accounting of the MOM Debtors.[5] (Arb. Award at 48.) Then, after the accounting of the MOM Debtors is complete, the Honarkar Parties will seek a determination from the Arbitrator as to the amounts of compensatory damages, restitution, interest, punitive damages, and any other amounts that should be awarded to the Honarkar Parties. After making these determinations, the Arbitrator will issue a final award (the "**Final Award**") (which will include a supplemental award for fees and costs incurred in the Arbitration through entry of the final award) that the Honarkar Parties can thereafter also seek to have confirmed by the California Superior Court, subject to the Honarkar Parties' election of their remedies. (Arb. Award at 49.).

20.    On March 5, 2025, in accordance with the Arbitration Award, the Honarkar Parties filed the *Claimants' Motion for Attorneys' Fees and Costs* (the "**Fee Motion**") in the Arbitration, seeking an award for their attorneys' fees and costs in the total aggregate amount of approximately $9.2 million.

---

[5] As noted at the March 31, 2025 hearing, the Debtors and the Honarkar Parties are discussing the retention of a forensic accountant that would satisfy the requirements of the Arbitration Award and provide the Debtors with the accurate books and records they require to complete their bankruptcy reporting requirements and correct the fraud committed by the Continuum Parties.

21.     On March 17, 2025, the same day and shortly after the MOM Members filed for bankruptcy, Mr. Makhijani, Continuum, the MOM Members, and the MOM Managers filed their joint *Opposition to Motion for Attorney's Fees and Costs* (the "**Fee Motion Opposition**"), opposing the Honarkar Parties' requested fee award and asserting, among other things, that the Fee Motion violates the automatic stay imposed by these Chapter 11 Cases.

22.     On March 29, 2025, the Arbitrator issued an order scheduling the hearing on the Fee Motion for April 14, 2025, on which date the Arbitrator will also conduct an interim status conference in the Arbitration. The Arbitrator's scheduling order also noted that JAMS has placed the Arbitration on a partial administrative stay as to the MOM Debtors and the MOM Members pending further order of this Court in their respective bankruptcy proceedings. All parties need finality as to the Arbitration and, by way of this Motion (and the MOM Investor Group Dismissal Motions), this Court can assist progress and stop the Continuum Parties' continued delay tactics.

## RELIEF REQUESTED

23.     By this Motion, the Honarkar Parties seek entry of an order pursuant to section 362(d) of the Bankruptcy Code lifting the automatic stay, if and to the extent it applies, to permit the Honarkar Parties to proceed with the Arbitration to a confirmed Partial Final Award and then a confirmed Final Award, elect their remedies, and to defend any related appeals. For the avoidance of doubt, although the Honarkar Parties intend to <u>elect</u> their remedies in accordance with the Arbitration Award as part of the award confirmation process, the Honarkar Parties are not, by this Motion, seeking relief to <u>exercise</u> such remedies against the Debtors. The Honarkar Parties will promptly come back to this Court for its approval of the exercise of their remedies after the award confirmation process is complete.

8

## ARGUMENT

24.     Because proceeding with the Arbitration through to a confirmed Final Award and any related appeals would not constitute an action against any of the Debtors or property of their estates, the automatic stay does not apply. However, if the Court were to find that the stay does apply, cause exists to grant the Honarkar Parties immediate relief from stay because they have already prevailed on the merits in the Arbitration and the prejudice to the Honarkar Parties caused by maintaining the stay greatly outweighs the prejudice, if any, to the Debtors of lifting the stay.

### A.     The Automatic Stay Does Not Apply To The Claims In The Arbitration.

25.     The automatic stay imposed by section 362(a) of the Bankruptcy Code prohibits, relevant here, the continuation of an "action or proceeding against the debtor that was or could have been commenced before the commencement of the case," and "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(1), (3). Here, neither of these prohibitions apply.

26.     First, the Arbitration is not a proceeding against the Debtors within the meaning of section 362(a). While the MOM Debtors are parties in the Arbitration, they are only nominal respondents and derivative claimants, and none of the SPE Debtors are parties in the Arbitration at all. (*See* Arb. Award at 2 n.1 (defining the "Respondents" to include only Mr. Makhijani, Continuum, the MOM Members, the MOM Managers, and Nano, not the MOM Debtors).) No claims are asserted against the MOM Debtors (or the SPE Debtors), and none of the Arbitrator's findings are against any of the MOM Debtors (or the SPE Debtors). (Arb. Award at 47-48). To the contrary, certain of the Arbitrator's findings inure to the MOM Debtors' benefit, as the Arbitrator found in favor of the Honarkar Parties on all their derivative claims asserted on behalf of the MOM

Debtors. Section 362(a) of the Bankruptcy Code only stays actions against the Debtors, not actions on behalf of the Debtors.

27.    Courts have found that, where a debtor is a nominal defendant in a derivative action, as the MOM Debtors are here, the action is not against the debtor, and the automatic stay, therefore, does not apply. *See, e.g.*, *Walters v. First Tennessee Bank, N.A. Memphis*, 855 F.2d 267, 271 (6th Cir. 1988) (finding that the stay did not apply where debtor was nominal defendant in derivative action), *cert. denied*, 489 U.S. 1067 (1989); *Fang Liu v. Gold*, No. C14-1087-JCC, 2014 WL 6609467, at *1 (W.D. Wash. Nov. 21, 2014) (finding that debtor, as a nominal defendant in shareholder derivative action, "may not avail itself of the automatic stay provision in 11 U.S.C. § 362 as the [action] is not a case against it"); *see also Connell v. Walker*, 291 U.S. 1, 5, (1934) ("Bankruptcy proceedings do not, merely by virtue of their maintenance, terminate an action already pending in a nonbankruptcy court, to which the bankrupt is a party."); *Price & Pierce Int'l Inc. v. Spicers Int'l Paper Sales, Inc.*, 50 B.R. 25, 26 (S.D.N.Y. 1985) (holding that the automatic stay did not apply to interpleader action in which debtor was a nominal defendant). Thus, because the Arbitration is not an action against any of the Debtors, section 362(a)(1) does not apply.

28.    Second, proceeding with the Arbitration so that the Honarkar Parties can obtain a confirmed Partial Final Award and then a confirmed Final Award also does not constitute an action against property of the Debtors' assets. The Honarkar Parties acknowledge that, if they elect the remedy of recission, exercising that remedy would likely affect property of the MOM Debtors' estates – *i.e.*, the membership interests in the SPE Debtors and other non-debtor SPEs that were contributed to the MOM Debtors by the Honarkar Parties as a result of the Continuum Parties' fraud. However, the Honarkar Parties are not seeking by this Motion relief to rescind the Joint Venture or exercise any other equitable remedies. Instead, the Honarkar Parties only intend at this

time to proceed with what can be considered the "damages" phase of the Arbitration against the non-debtor parties, obtain confirmation of the Partial Final Award and then the Final Award in the California state court, and defend against any appeals thereof. Once the award confirmation process is complete, the Honarkar Parties will promptly return to this Court for further relief to exercise their elected remedies. Thus, section 362(a)(3) also does not apply.

29.     Accordingly, the automatic stay imposed by these Chapter 11 Cases does not apply to prohibit the Honarkar Parties from proceeding with the Arbitration through to confirmation of a Final Award and defending against any related appeals.

### B.      **Alternatively, If The Stay Applies, The Court Should Lift The Stay For Cause.**

30.     Section 362(d)(1) of the Bankruptcy Code provides that, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under [section 362(a)] … for *cause*[.]" 11 U.S.C. § 362(d)(1) (emphasis added). Thus, where a court finds that "cause" exists to grant a movant relief from stay, the court must lift or modify the stay. *See Nantucket Invs. II v. Cal. Fed. Bank (In re Indian Palms Assocs., Ltd.)*, 61 F.3d 197, 208 (3d Cir. 1995) (noting that the "court shall grant relief" language in section 362(d) "is mandatory").

31.     Section 362(d)(1) does not define "cause," "leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case." *Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997).

32.     Generally, this Court applies a "hardship balancing test" to determine whether "cause" exists to grant stay relief. *In re Aleris Int'l, Inc.,* 456 B.R. 35, 47 (Bankr. D. Del. 2011). To establish "cause" under this test, the movant must show that "the balance of hardships from not obtaining relief tips significantly in [the movant's] favor." *See, e.g., id.*; *Alt. Marine, Inc. v. Am. Classic Voyages, Co. (In re Am. Classic Voyages, Co.)*, 298 B.R. 222, 225 (D. Del. 2003).

11

33.     The hardship balancing test is comprised of three prongs: "(1) whether any great prejudice to either the bankrupt estate or the debtor will result from lifting the stay; (2) whether the hardship to the non-bankrupt party by the maintenance of the stay considerably outweighs the hardship to the debtor if the stay is lifted; and (3) whether it is probable that the creditor will prevail on the merits of its case against the debtor."[6] *Aleris International*, 456 B.R. at 47; *see also Am. Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*, 152 B.R. 420, 424 (D. Del. 1993); *In re Downey Fin. Corp.*, 428 B.R. 595, 609 (Bankr. D. Del. 2010); *Trib. Media Servs., Inc. v. Beatty (In re Trib. Co.)*, 418 B.R. 116, 126 (Bankr. D. Del. 2009); *Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992).

34.     Applying this three-prong balancing test to the facts of this case, cause exists for this Court to lift the stay to allow the Honarkar Parties to proceed to finalize the proceedings in the Arbitration, obtain confirmation of the Partial Final Award and then the Final Award, and defend any related appeals.

### 1. The Honarkar Parties Have Already Prevailed on the Merits in the Arbitration (Prong Three).

35.     Taking the third prong of the hardship balancing test first, even a "slight probability of success on the merits" of the subject litigation "may be sufficient to support lifting an automatic stay." *SCO Group*, 395 B.R. at 859; *see also Levitz Furniture Inc. v. T. Rowe Price Recovery Fund, L.P. (In re Levitz Furniture Inc.)*, 267 B.R. 516, 523 (Bankr. D. Del. 2000) (stating that satisfaction of the third prong "merely requires a showing that their claim is not frivolous"). The Honarkar

---

[6] In applying this three-pronged balancing test, bankruptcy courts also consider the general policies underlying the automatic stay in deciding whether to grant stay relief, as such policies are reflected by the so-called "*Sonnax* factors" enumerated by the United States Court of Appeals for the Second Circuit. *See, e.g., In re SCO Grp., Inc.*, 395 B.R. 852, 857 (Bankr. D. Del. 2007) (quoting *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1287 (2d Cir. 1990)); *In re Abeinsa Holding, Inc.*, No. 16-10790 (KJC), 2016 WL 5867039, at *3 (Bankr. D. Del. Oct. 6, 2016). Applying these factors would yield the same outcome: the Honarkar Parties should be granted relief from the stay.

Parties have clearly surpassed this bar, as they have already prevailed on the merits of the Arbitration, as set forth in the Arbitration Award. This leaves only the issue of attorneys' fees, costs, and damages to be decided before the Arbitration Award will be incorporated into the Partial Final Award and then the Final Award and confirmed by the California state court.

36.     Although the non-debtor Respondents are opposing the Honarkar Parties' Fee Motion and will likely contest any damages awarded to the Honarkar Parties, and they may also try to oppose confirmation of the Partial Find Award or the Final Award, "[o]nly *strong* defenses to [non-bankruptcy] proceedings can prevent a bankruptcy court from granting relief from the stay in cases where . . . [it] believe[s] that the decision-making process should be relegated to bodies other than [the bankruptcy] court." *Rexene*, 141 B.R. at 578 (emphasis added). There are no strong defenses here. The thorough Arbitration Award came after years of litigation, a three week long evidentiary hearing, and pre- and post-hearing briefing before a highly qualified and experienced retired judge. The Arbitrator's reasonings and findings are sound. The Honarkar Parties' requests for attorneys' fees and costs are well-supported, and their damages will also be determined based in large part on the Debtors' books and records and the books and records of the Respondents. Once those determinations are made, confirmation of first the Partial Find Award and then the Final Award by the California state court is essentially a formality. *See* Cal. Code Civ. Proc. § 1286; *see also Teamsters Local 177 v. UPS*, 966 F.3d 245, 248 (3d Cir. 2020) ("[T]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.") (internal quotations omitted).[7]

---

[7] Additionally, any appeal is unlikely to be successful. As California courts have explained, "[i]t is axiomatic that judicial review of judgments confirming arbitration awards is limited." *State Farm Mut. Auto. Ins. Co. v. Robinson*, 76 Cal. App. 5th 276, 282 (2022). An arbitrator's "decisions cannot be judicially reviewed for errors of fact or law even if the error is apparent and causes substantial injustice," and, as a result, "arbitration awards are generally immune from judicial review." *Id.*; *see also EHM Prods., Inc. v. Starline Tours of Hollywood, Inc.*, 21 Cal. App. 5th 1058,

37.     More importantly, any defenses in the Arbitration or any appeals of the confirmed awards would be brought not by any of the Debtors but by the Respondents, who are the true parties in interest in the Arbitration and are not debtors in these Chapter 11 Cases. Stated otherwise, because the Debtors are not respondents in the Arbitration, they do not need to assert (and do not have) any defenses, and any disputes on the merits (which have been summarily resolved by the Arbitration Award) are not disputes between the Honarkar Parties and the Debtors.

38.     Therefore, because the Honarkar Parties have already prevailed on the merits in the Arbitration, the third prong of the hardship balancing test strongly supports granting the Honarkar Parties relief from stay to finalize the Arbitration proceedings, obtain confirmation of the Partial Final Award and then the Final Award, and defend any appeals thereof.

### 2. Lifting the Stay Will Not Cause Great Prejudice to the Debtors or Their Estates (Prong One).

39.     Turning next to the first prong of the hardship balancing test, to determine whether lifting the stay will prejudice a debtor, bankruptcy courts consider the additional expense and logistical burden associated with continuance of the non-bankruptcy action and the degree to which allowing the action to move forward will impair the debtor's reorganization efforts in the bankruptcy case. *See Rexene*, 141 B.R. at 577; *SCO Group*, 395 B.R. at 858. Here, given the Debtors' significantly limited role in the Arbitration, allowing the Arbitration to go forward to a confirmed final award will not burden the Debtors or interfere with their restructuring, which is not changed by the entry of the Interim DIP Order.

---

1063-64 (2018) (stating that courts may vacate an arbitration award "only under very limited circumstances"); *Landis v. Pinkertons, Inc.*, 122 Cal. App. 4th 985, 992 (2004) ("The arbitrator may not reconsider the merits of the original award and make a new award under the guise of correction of the award.").

### a. Allowing the Arbitration to Proceed Will Not Burden the Debtors or Impair Their Reorganization Efforts.

40.     As set forth above, the Debtors are merely <u>nominal</u> respondents (and derivative claimants) in the Arbitration. As nominal respondents, the Debtors will not have to participate in or devote any resources to the remaining litigation in the Arbitration or related to the award confirmation process in the California state court system. Rather, such litigation would be done by Mr. Makhijani, Continuum, the MOM Managers, and (pending the outcome of their separate bankruptcy cases) the MOM Members, who, according to the Debtors, no longer exercise any control over the Debtors and, aside from their connections to the current DIP lender, are not steering these Chapter 11 Cases. Thus, based on the Debtors' own assertions, the Arbitration can move forward without interfering with the Chapter 11 Cases.

41.     While the Debtors and/or their current professionals may have to cooperate in the required accounting process, it is undisputed that a full accounting of the Debtors' books and records by a disinterested third party is absolutely necessary in these Chapter 11 Cases and a condition precedent to any potential restructuring plan. As such, the accounting (and the costs associated therewith) is unavoidable, and allowing the accounting process to proceed and be completed sooner rather than later will benefit, not prejudice, the Debtors and their estates.

42.     Further, even if the Debtors were to attend any proceedings in or related to the Arbitration, this Court has previously recognized that such attendance does not constitute sufficient prejudice to preclude stay relief. *See SCO Group*, 395 B.R. at 858 ("While the trial will likely require the attendance of [the debtors'] primary officers and directors, [the debtors'] attention to the Lawsuit will certainly not harm the estate.").

43.     Moreover, the Arbitration must be finalized before these Chapter 11 Cases can reach any final resolution. As set forth in the Arbitration Award, the Honarkar Parties have the

right to choose to rescind the Joint Venture due to the Respondents' fraud. If the Honarkar Parties elect to exercise recission, the MOM Debtors' membership interests in the SPE Debtors will revert back to the Honarkar Parties, and it will be as if the MOM Debtors never existed. Although the Honarkar Parties are not seeking relief to exercise recission at this time, a final outcome in the Arbitration and a decision as to the Honarkar Parties' choice of remedies is required to lift the cloud of uncertainty that is currently hanging over these Chapter 11 Cases and any potential restructuring. *See Rexene*, 141 B.R. at 577 (granting relief from stay where claims asserted in civil action against the debtors "would certainly have to be resolved prior to confirmation"); *SCO Group*, 395 B.R. at 859 (lifting the stay where "resolution of the issues remaining in the District Court litigation will assist the Debtors, not burden them").

44.     Finally, a determination as to the amount of damages owed by the Respondents to the Honarkar Parties on account of the Honarkar Parties' direct claims will also likely assist the Debtors in the calculation of the damages owed to them by the Respondents on account of the derivative claims (once those go forward) given the significant overlap between the direct and derivative claims.[8] Therefore, lifting the stay to allow the accounting and confirmation process to continue benefits the Debtors, rather than prejudice them.

### b. Neither the Debtors nor Specialty DIP Can Manufacture Prejudice through the DIP Motion.

45.     In a blatant attempt to undermine the Honarkar Parties' rights to obtain stay relief, Specialty DIP – an entity formed by Mahender Makhijani and his cronies – made it a condition of its proposed postpetition financing, and the Debtors agreed, that an event of default would occur

---

[8] Indeed, as the Debtors stated during the first day hearing held on March 14, 2025, they are not looking to upset or disturb the Arbitration Award, as they believe that the Arbitration Award has conferred valuable claims on the Debtors' estates. As such, the Debtors stated on the record before this Court that they were prepared to allow the Arbitration to go forward to a final resolution, and that they would cooperate with the Honarkar Parties to that end.

if a stay relief order is entered allowing any third party to proceed against any property of the Debtors valued in excess of $100,000 or to proceed with any litigation against the Debtors involving potential liability in excess of $100,000.

46.     While the Honarkar Parties requested language to clarify the meaning and scope of this default provision, they were not successful. Given the steadfast commitment by the Continuum Parties to halt any attempt to by the Honarkar Parties to obtain relief from the automatic stay, Specialty DIP repeatedly rejected the Honarkar Parties' requested language, and the default provision is expected to be included in the interim order approving the DIP Motion, once entered.[9]

47.     To be clear, this Motion does not implicate this default provision. As stated above, allowing the Honarkar Parties to finalize the Arbitration proceedings, obtain a confirmed Partial Final Award and then a confirmed Final Award, and elect (but not exercise) their remedies does not constitute an action against any of the Debtors or their property. Thus, the entry of an order granting the stay relief requested by this Motion would not constitute an event of default under the Specialty DIP Loan.

48.     However, Specialty DIP's refusal to include any language in the Interim DIP Order making it clear that stay relief with respect to the Arbitration would not trigger a default demonstrates that Specialty DIP's (and Mahender Makhijani's) goal all along was to prevent the Honarkar Parties from obtaining such stay relief. This fits perfectly within Mr. Makhijani's proven pattern and history of bad faith conduct.

---

[9] The Honarkar Parties expressly reserve and preserve all rights to object to or otherwise contest the approval of the DIP Motion on a final basis and/or the final approval of any proposed financing with entities or individuals associated with or connected to any of the Continuum Parties.

49.     The Count should not countenance Specialty DIP's improper attempts to manufacture prejudice in these Chapter 11 Cases and to interfere with and frustrate the Honarkar Parties' rights under section 362(d) of the Bankruptcy Code.

50.     Furthermore, the Honarkar Parties are continuing to solicit and search for independent financing options for the Debtors and these Chapter 11 Cases and have introduced the Debtors to at least one alternative potential DIP lender and potential exit lender, such that the Honarkar Parties are hopeful that alternative postpetition financing may be available in the near term. Thus, it is possible, even probable, that the Specialty DIP Loan will become a nullity.

51.     For all of the foregoing reasons, the Court should disregard Specialty DIP's efforts to manipulate and use these Chapter 11 Cases for the benefit of its principals, including Mahender Makhijani, particularly given that granting the Honarkar Parties relief from stay will benefit the Debtors and their estates, as shown above.

### 3. The Hardship Imposed on the Honarkar Parties by Maintenance of the Stay Vastly Outweighs the Hardship Imposed on the Debtors by Lifting the Stay (Prong Two).

52.     Lastly, with respect to the second prong of the hardship balancing test, courts balance the hardship, if any, to the debtor or its estate that will result from lifting the stay with the hardship that the movant will suffer if the stay remains in place. *SCO Grp.*, 395 B.R. at 858. Here, the balance of the harms weighs clearly in favor of lifting the stay.

53.     The Honarkar Parties are victims of fraud. They have had to expend millions of dollars and nearly two years litigating and proving their claims against the Continuum Parties. Then, shortly after the Honarkar Parties prevailed on the merits in the Arbitration, and before they had any reasonable opportunity to move forward with finalizing and confirming the Arbitration Award, these Chapter 11 Cases were filed. Consequently, the Honarkar Parties have had to incur

18

significant additional attorneys' fees and costs in connection with these Chapter 11 Cases.[10] These circumstances alone have imposed unnecessary hardship on the Honarkar Parties.

54.    In addition, the Arbitration has continued with respect to the Respondents who are not in bankruptcy, resulting in bifurcated proceedings pending on opposite ends of the country, and placing additional burden on the Honarkar Parties. As this Court is aware, the Honarkar Parties have had to file several pleadings (including this Motion) to preserve and protect their rights, remedies, and interests with respect to the Arbitration Award, which the Debtors have given very little weight or significance in their filings to date. At the same time, the Honarkar Parties have continued to litigate against the Respondents in the Arbitration, who have claimed that proceeding in the Arbitration is somehow violative of the automatic stay imposed by these Chapter 11 Cases (which it is not). Thus, the Honarkar Parties have had to simultaneously argue Arbitration-related issues in these Chapter 11 Cases and bankruptcy-related issues in the Arbitration, all at great cost.

55.    Accordingly, denying stay relief would cause the Honarkar Parties to continue to incur additional expense and, given the lack of prejudice to the Debtors of lifting the stay, the second factor of the hardship balancing test also weighs heavily in favor of granting the Honarkar Parties relief from stay to proceed with the Arbitration.

**C.    If Relief from the Automatic Stay Is Granted, the Court Should Waive the Stay Imposed by Bankruptcy Rule 4001.**

56.    Bankruptcy Rule 4001(a)(3) states that "an order granting a motion for relief from an automatic stay made in accordance with Rule 4001(a)(1) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001(a)(3).

---

[10] The Honarkar Parties reserve all of their rights to seek to have their professional fees and related costs paid by the Debtors' bankruptcy estate as a substantial contribution that benefited the Debtors' estates pursuant to section 503(b)(3)(D) of the Bankruptcy Code.

The Honarkar Parties respectfully request that the 14-day stay imposed by Bankruptcy Rule 4001(a)(3) be waived so that, should the stay relief requested herein be granted, the Honarkar Parties may immediately proceed with the Arbitration. As set forth above, lifting the stay will benefit the Debtors and their estates, and maintaining the stay will unduly prejudice the Honarkar Parties. Accordingly, and given the upcoming hearing and status conference in the Arbitration set for April 14, 2025, if the Court grants the Honarkar Parties relief from stay, the Honarkar Parties should be allowed to promptly resume their efforts to pursue and enforce their rights in the Arbitration to avoid any further prejudice to the Honarkar Parties.

## CONCLUSION

57.    In sum, the Court should lift the automatic stay, if and to the extent it applies, to allow the Honarkar Parties to proceed with finalizing the Arbitration proceedings, obtain confirmation of the Partial Final Award and then the Final Award, elect their remedies, and defend against any related appeals. None of the foregoing constitutes an action against any of the Debtors or their property, so the stay does not apply, and, even assuming, *arguendo*, that it does, the Honarkar Parties have already prevailed on the merits in the Arbitration and the prejudice that the Honarkar Parties would suffer if stay relief is denied far outweighs any prejudice to the Debtors if the stay is lifted. Thus, under the totality of the circumstances of these Chapter 11 Cases, and given the balancing of the equities, stay relief is clearly warranted and appropriate.

## RESERVATION OF RIGHTS

58.    The Honarkar Parties expressly reserve and preserve all rights with respect to these Chapter 11 Cases, the MOM Investor Group Cases, the Trustee Motion, the MOM Investor Group Dismissal Motions, and to seek or pursue any additional or other forms of relief in these Chapter 11 Cases and/or the Mom Investor Group Cases. The Honarkar Parties further expressly reserve

and preserve all rights and remedies with respect to the Arbitration and the direct and derivative claims asserted therein, including, without limitation, the right to seek relief to exercise the Honarkar Parties' remedies and/or to pursue the derivative claims.

## NOTICE

59.     Notice of this Motion has been given to (i) counsel to the Debtors; (ii) the Office of the United States Trustee for the District of Delaware; and (iii) all parties entitled to receive notice under Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Honarkar Parties submit that no other or further notice is necessary.

**WHEREFORE**, the Honarkar Parties respectfully request entry of an order, substantially in the form attached hereto as Exhibit A, (i) granting the Honarkar Parties relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code, if and to the extent the stay applies, to permit the Honarkar Parties to proceed with the Arbitration to a confirmed final award, elect their remedies, and defend against any related appeals; (ii) waiving the 14-day stay on the Honarkar Parties' relief from the automatic stay pursuant to Bankruptcy Rule 4001(a)(3); and (iii) granting the Honarkar Parties such other and further relief that the Court deems necessary or appropriate.

Dated: April 2, 2025
      Wilmington, Delaware

**POLSINELLI PC**

_____

Christopher A. Ward (Del. Bar No. 3877)
Shanti M. Katona (Del. Bar No. 5352)
Stephen A. Smith (Del. Bar No. 7456)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
cward@polsinelli.com
skatona@polsinelli.com
sasmith@polsinelli.com

-and-

Elisa Hyder (admitted _pro hac vice_)
Three Logan Square
1717 Arch Street, Suite 2800
Philadelphia, PA 19103
Telephone: (215) 267-3001
Facsimile: (215) 267-3002
ehyder@polsinelli.com

_Counsel to Mohammad Honarkar and_
_4G Wireless, Inc._