**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MOM CA Investco LLC, *et al.*,[1] | Case No. 25-10321 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 280, 460, 468** |
| | **Hearing Date: June 10, 2025 at 10:00 a.m. (ET)**<br>**Objection Deadline: June 4, 2025 at 4:00 p.m. (ET)** |

**OBJECTION OF MOHAMMAD HONARKAR AND
4G WIRELESS, INC. TO TESORO SALE**

Mohammad Honarkar and 4G Wireless, Inc. (collectively, the "**Honarkar Parties**"), by and through their undersigned counsel, hereby file this objection (this "**Objection**") to the *Motion of Debtors for Entry of Orders (A)(I) Approving Bidding Procedures for Tesoro Property, (II) Scheduling the Bid Deadlines, (III) Scheduling Hearings and Objection Deadlines with Respect to the Sale of Tesoro Property, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief; and (B)(I) Approving the Sale of Tesoro Property Free and Clear of All Interests, (II) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases, (III) Request to*

[1] The Debtors in these chapter 11 proceedings, together with the last four digits of each Debtor's federal tax identification number, are: MOM CA Investco LLC [6263], MOM AS Investco LLC [6049], MOM BS Investco LLC [6180], Retreat at Laguna Villas, LLC [2046], Sunset Cove Villas, LLC [9178], Duplex at Sleepy Hollow, LLC [9237], Cliff Drive Properties DE, LLC [0893], 694 NCH Apartments, LLC [0318], Heisler Laguna, LLC [4709], Laguna Festival Center, LLC [4073], 891 Laguna Canyon Road, LLC [0647], 777 AT Laguna, LLC [8715], Laguna Art District Complex, LLC [8316], Tesoro Redlands DE, LLC [2764], Aryabhata Group LLC [7332], Hotel Laguna, LLC [9580], 4110 West 3rd Street DE, LLC [8641], 314 S. Harvard DE, LLC [2057], Laguna HI, LLC [6408], Laguna HW, LLC [9470], The Masters Building, LLC [6134], 837 Park Avenue, LLC [3229], and Terra Laguna Beach, Inc. [2344] (interim). The Debtors' headquarters are located at 520 Newport Center Drive, Suite 480, Newport Beach, CA 92660.

*Adjourn Hearing, and (IV) Granting Related Relief* [Docket No. 280] (the "**Tesoro Sale Motion**").[2] In support of this Objection, the Honarkar Parties respectfully state as follows:

## PRELIMINARY STATEMENT

1. The Tesoro Property and all of the other real properties at the center these Chapter 11 Cases were stolen from the Honarkar Parties on June 8, 2021 when the Continuum Parties fraudulently induced the Honarkar Parties into contributing the properties to the joint venture. Now, just over three months after the entry of the Partial Interim Award in the Arbitration and the subsequent filing of these Chapter 11 Cases, the Debtors are helping the Continuum Parties steal the Tesoro Property all over again. The individual that the Debtors have chosen as the Successful Bidder—Patrick Theodora—is just a stand-in for Mahender Makhijani and Continuum. Mr. Theodora is a longtime investor of Continuum and its related entities and has close ties to, and even best friendships with, many of the individuals, entities, and law firms that have repeatedly come up in the Arbitration and in these Chapter 11 Cases. Mr. Theodora also has multiple personal loans with Nano, the Continuum Parties' co-conspirator with whom they perpetrated the fraud to steal Tesoro from the Honarkar Parties in the first place. Thus, the Debtors' proposed sale transaction is a thinly-veiled insider transaction that is intended to benefit Mahender Makhijani and Continuum, each of whom the Arbitrator found has committed fraud, conversion, and unjust enrichment against the Honarkar Parties and the Debtors, among other unlawful and criminal acts.

2. Prior to the selection of the successful bid, the Honarkar Parties informed the Debtors of Patrick Theodora's close ties and connections to the Continuum Parties. Despite this, and also despite the fact that the Honarkar Parties are a Consultation Party under the Tesoro Bid

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Tesoro Sale Motion or in the Honarkar 363 Objection (as defined herein), as applicable.

Order who were not consulted prior to the selection of this insider bid, the Debtors still chose him as the proposed buyer of the Tesoro Property. Thus, while the Debtors and their professionals have repeatedly represented to this Court that they hold the Arbitrator's findings in the Arbitration as "sacrosanct," the Debtors apparently have no qualm with handing over the Tesoro Property to the Continuum Parties, which is precisely what the Continuum Parties have been after since they authorized the filing of these Chapter 11 Cases.

3. The Honarkar Parties are not surprised that the Continuum Parties are continuing to use these Chapter 11 Cases as both a shield against the Arbitration and a sword against the Honarkar Parties and their proven right to rescission, particularly with respect to the Tesoro Property. Now, the Debtors are using various litigation tactics, motion practice, discovery, and Rule 2004 requests as retaliation against the Honarkar Parties for standing up for their rights to maintain their ownership interests in not only the Tesoro Property, but all of the real properties.

4. The Tesoro Property has long been a pawn in the Continuum Parties' fraudulent scheme. As set forth in the Partial Interim Award, and now the Partial Final Award, the unauthorized $1 million Nano loan that the Continuum Parties caused Tesoro to incur is, in part, what resulted in the Honarkar Parties uncovering the Continuum Parties' fraud. Mahender Makhijani also refused to consent to a sale of the Tesoro Property that the Honarkar Parties proposed in February 2022 for a purchase price far in excess of the current proposed purchase price. Instead, Mr. Makhijani caused Tesoro to enter into a refinancing with Preferred Bank, without Mr. Honarkar's consent, with only a portion of the proceeds from this refinancing actually being used to pay off the existing debt. Upon information and belief, the Continuum Parties pocketed the bulk of the proceeds of the refinancing. This proposed sale is just the Continuum

Parties' latest effort to hold on to the Tesoro Property so that they can continue to use it for their own personal benefit.

5. Following an unreasonably expedited sale process that lasted just three weeks after approval of the bidding procedures, the outcome that the Honarkar Parties have feared is now dangerously close. Given the tight time frames regarding the sale and the Debtors' desire to depose Mr. Honarkar, an objector to the sale, in advance of the Sale Hearing, the parties have not been able to adequately address the insider issues. But, as things stand, the Debtors do not appear willing to stand up to the Continuum Parties, which is evidenced by the fact that the Debtors are now seeking to enlarge the insider DIP facility that is currently being provided by the Continuum Parties.[3] Thus, the Honarkar Parties respectfully ask that this Court exercise its authority and deny approval of the proposed sale.

6. If the Court instead decides to authorize the sale, which the Honarkar Parties submit the Court should not do, then the Court should decline to include in any sale order a "good faith" finding or section 363(m) protection in favor of Patrick Theodora and not grant any waiver of Bankruptcy Rules 6004(h) and 6006(d). Finally, as noted in the Tesoro Bid Objection, the Tesoro Sale Motion and any other sale motion should be adjourned until this Court has ruled on the Adversary Complaint for constructive trust filed by the Honarkar Parties.

7. The Honarkar Parties are well aware that denial of this sale, and any other sale, could result in the dismissal or conversion of these Chapter 11 Cases. That is an unfortunate risk the Honarkar Parties are willing to take. As evidenced by the outcome of this first proposed sale,

[3] The day before the Sale Objection Deadline, on June 3, 2025, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Amend the DIP Credit Agreement and (II) Granting Related Relief* [Docket No. 475] ("**DIP Amendment Motion**"), seeking authority to amend the DIP Credit Agreement with Specialty DIP LLC. Because the DIP Amendment Motion was just filed yesterday, the Honarkar Parties have not had a reasonable opportunity to complete their review, and the Honarkar Parties reserve and preserve all rights to object to the DIP Amendment Motion, whether in writing or orally at any hearing on the DIP Amendment Motion.

the Debtors will not take issue with giving all of the properties back to the Continuum Parties, which is far worse outcome in these Chapter 11 Cases.

## BACKGROUND

### A. The Chapter 11 Cases

8. On February 28, 2025, MOM CA Investco LLC, MOM AS Investco LLC, and MOM BS Investco LLC (collectively, the "**MOM Investcos**") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

9. On March 10, 2025, nineteen of the MOM Investcos' subsidiaries (collectively, the "**SPEs**") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Court. The Chapter 11 Cases of each of the MOM Investcos and the SPEs are being jointly administered under Case No. 25-10321-BLS. *See* Docket No. 56.

10. On March 31, 2025, Terra Laguna Beach, Inc. ("**Terra**") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Court. Terra's Chapter 11 Case is being jointly administered with the Chapter 11 Cases of the other Debtors under Case No. 25-10321-BLS on an interim basis.[4] *See* Docket No. 220.

11. The Debtors are currently operating their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee, examiner, or official committee has been appointed in these Chapter 11 Cases.

[4] On May 12, 2025, the Arbitrator issued an order in the Arbitration making it clear that the Arbitration Award determined that Terra and various other entities are not now and never have been owned by the MOM Investcos. Accordingly, Terra is not and never was an affiliate of the MOM Investcos.

**B.     The Tesoro Sale Motion and Honarkar 363 Objection**

12.     On April 22, 2025, the Debtors filed the Tesoro Sale Motion seeking, *inter alia*, approval of certain Bidding Procedures for the potential sale of the Tesoro Property, a 188-unit apartment complex owned by Debtor Tesoro Redlands DE, LLC ("**Tesoro**"), and certain related assets, and after the conclusion of the bidding process, approval of any proposed sale of the Tesoro Property to a Successful Bidder, if any, free and clear.

13.     The Debtors did not identify any stalking horse bidder or other potential bidder or purchaser of the Tesoro Property.

14.     On May 7, 2025, the Honarkar Parties filed their *Objection of Mohammad Honarkar and 4G Wireless, Inc, to Motion of Debtors for Entry of Orders (A)(I) Approving Bidding Procedures for Tesoro Property, (II) Scheduling the Bid Deadlines, (III) Scheduling Hearings and Objection Deadlines With Respect to the Sale of Tesoro Property, (IV) Approving the Form and Manner of Notice Thereof, (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief; and (B)(I) Approving The Sale of Tesoro Property Free And Clear of All Interests, (II) Approving Assumption and Assignment Of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* (the "**Tesoro Bid Objection**") [Docket No. 368], objecting to approval of the Debtors' proposed Bidding Procedures for the Tesoro Property.

15.     Despite the Tesoro Bid Objection, on May 15, 2025, the Court entered the *Order (I) Approving Bidding Procedures; (II) Scheduling the Bid Deadlines; (III) Scheduling Hearings and Objection Deadlines with Respect to the Sale of Tesoro Property; (IV) Approving the Form and Manner of Notice Thereof; (V) Approving Contract Assumption and Assignment Procedures;*

*and (VI) Granting Related Relief* [Docket No. 402] (the "**Tesoro Bid Order**"), approving, *inter alia*, the Bidding Procedures.

16. Pursuant to the Tesoro Bid Order, any objections to the sale of the Tesoro Property free and clear under section 363 of the Bankruptcy Code (*i.e.*, a "363 Objection") were due no later than 4:00 p.m. (ET) on May 30, 2025, and all other objections to any proposed sale of the Tesoro Property are due no later than 4:00 p.m. (ET) on June 4, 2025.

17. The Sale Hearing is currently scheduled for June 10, 2025 at 10:00 a.m. (ET). The Honarkar Parties again renew their request that this hearing be adjourned.

18. On May 30, 2025, the Honarkar Parties filed the *363 Objection of Mohammad Honarkar and 4G Wireless, Inc. to Tesoro Sale Motion and Request to Adjourn Sale Hearing* [Docket No. 460] (the "**Honarkar 363 Objection**"), objecting to the Debtors' right to sell the Tesoro Property, whether pursuant to section 363 of the Bankruptcy Code, including section 363(f), or otherwise, and requesting that the Court adjourn the Sale Hearing until a date after the Court has rendered a decision in the Adversary Proceeding.

19. The Honarkar Parties hereby incorporate by reference the Honarkar 363 Objection in its entirety as if set forth fully herein.

20. On May 24, 2025, the Saturday before Memorial Day and six days before the Honarkar Parties filed the Honarkar 363 Objection, the Debtors served discovery on the Honarkar Parties in connection with the Tesoro Sale Motion and the Global Sale Procedures Motion. *See* Docket No. 453. The Honarkar Parties served their written responses to the Debtors' discovery on June 2, 2025. *See* Docket No. 474.

21. Thereafter, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Authorizing the Debtors to Reject the Alleged Honarkar Agreements, Effective As of Rejection*

*Date, (II) Requiring Turnover of Books and Records, and (III) Granting Certain Related Relief* [Docket No. 462] and the *Notice of Deposition of Mohammad Honarkar Pursuant to Federal Rule of Civil Procedure 30(b)(1) Regarding Debtors' (I) Tesoro Sale Motion and (II) Global Sale Procedures Motion* [Docket No. 467], noticing Mr. Honarkar's deposition over this past weekend on less than four business days' notice, and requested a meet and confer on a forthcoming Bankruptcy Rule 2004 requests targeted at the Honarkar Parties.[5] The timing of such litigation tactics after the Honarkar Parties filed the Adversary Complaint and the Honarkar 363 Objection should not go unnoticed by this Court. What should also be noticed by this Court is that the record is devoid of any litigation being brought against the Continuum Parties by the Debtors.

**C. <u>The Successful Bidder Notice and PSA</u>**

22. On June 2, 2025, shortly after 6:00 p.m. (ET), the Debtors filed the *Notice of Successful Bidder With Respect to the Tesoro Property* [Docket No. 468] (the "**Successful Bidder Notice**"), giving notice that the Debtors designated an individual named Patrick Theodora as the Successful Bidder for the Tesoro Property. The Successful Bidder Notice does not identify any Backup Bidder for the Tesoro Property. The Debtors also filed the Successful Bidder Notice without consulting with the Honarkar Parties, who are Consultation Parties under the Tesoro Bid Order.[6]

---

[5] On June 3, 2025, the Honarkar Parties sent informal discovery and requests for information related to the Successful Bidder Notice to the Debtors, to which the Debtors have responded. The Honarkar Parties expressly reserve and preserve all rights with respect to this informal discovery and all rights to serve formal discovery on the Debtors and/or Patrick Theodora, as well as to amend or supplement this Objection based on any discovery or information received by the Honarkar Parties. The Honarkar Parties further expressly reserve and preserve all rights to call Patrick Theodora as a witness or to otherwise conduct a direct and/or cross-examination of Mr. Theodora at the Sale Hearing.

[6] In addition to not consulting with the Honarkar Parties, another delinquency in the Debtors' sale process is that, in the general data room for the sale process, there is no folder for the Tesoro financials and other information to support the sale. Tesoro is mentioned as an owned property, but no underlying information can be found.

23. According to the purchase and sale agreement between the Debtors and Mr. Theodora (the "**PSA**") attached as Exhibit A to the Successful Bidder Notice, Mr. Theodora has agreed to purchase the Tesoro Property for $55 million and has agreed, among other things, to waive due diligence with respect to the property. *See* PSA §§ 3(a), 5.

24. On May 30, 2025, during a telephonic meet and confer regarding the Debtors' discovery requests, the Honarkar Parties' counsel informed the Debtors' counsel that Mr. Theodora has a close relationship with Continuum and Mahender Makhijani. The Honarkar Parties followed up on this conversation by sending a written letter (the "**June 2 Letter**") to Mark Shinderman and the Debtors' counsel via email at approximately 12:00 p.m. (ET) on June 2, 2025. In the June 2 Letter, the Honarkar Parties explained in detail and provided documentary support for Mr. Theodora's many ties to the Continuum Parties and Nano, all as discussed further herein. A true and correct copy of the June 2 Letter, without its accompanying exhibits, is attached hereto as Exhibit A. A true and correct copy of the June 2 Letter with all exhibits has been, or will be, filed contemporaneously herewith under seal.

25. Despite the Honarkar Parties' warning, the Debtors nevertheless decided in their "business judgment" to go forward with seeking approval of the sale of the Tesoro Property to Mr. Theodora. However, given the insider nature of this transaction, business judgment is not the appropriate standard. As set forth herein, under Delaware law, heightened scrutiny applies to an interested party transaction.

26. This proposed sale is undoubtedly what the Continuum Parties wanted all along. Indeed, as set forth in the Partial Interim Award and now the Partial Final Award,[7] the Continuum Parties have a proven history of leveraging and using the Tesoro Property for their own personal

[7] A true and correct copy of the Partial Final Award is attached as Exhibit A to the Honarkar 363 Objection.

gain. As the Arbitrator found, less than one month after the formation of the joint venture, the Continuum Parties improperly and without authorization caused Tesoro to incur a $1 million loan from Nano that was secured by a deed of trust encumbering the Tesoro Property. Partial Final Award at 11. The Honarkar Parties were not involved in this loan, and the Continuum Parties in fact lied and attempted to hide the loan from the Honarkar Parties. It was in part the Honarkar Parties' eventual discovery of this improper Tesoro loan that led them to uncover the Continuum Parties' larger fraudulent scheme. *See* Partial Final Award at 13.

27. As also set forth in the Partial Interim Award and now the Partial Final Award, Mr. Honarkar previously proposed a sale of the Tesoro Property in early 2022. Partial Final Award at 12. But, Mahender Makhijani refused to consent to this sale and instead caused Tesoro to enter into a refinancing with Preferred Bank[8] without Mr. Honarkar's consent. *Id.* As the Arbitrator found, the evidence presented in the Arbitration shows that, when this refinancing with Preferred Bank closed, only a portion of the proceeds of the refinancing was used to pay off the existing debt. *Id.* Some of the proceeds were listed as a cash-out to Tesoro, which exact amount was then transferred from Tesoro to Continuum shortly after the closing. *Id.* Additional proceeds from the refinancing were also held by escrow and eventually transferred to Continuum for no clear purpose. *Id.* Thus, the Continuum Parties are already accustomed to leveraging Tesoro and its assets for their own personal gain.

---

[8] The Honarkar Parties expressly reserve and preserve all rights with respect to *Preferred Bank's Limited Objection to Debtors' Motion for Entry of Orders (A)(I) Approving Bidding Procedures for Tesoro Property, (II) Scheduling the Bid Deadlines, (III) Scheduling Hearings and Objection Deadlines with Respect to the Sale of the Tesoro Property, (IV) Approving the Form and Manner of Notice Thereof; (V) Approving Contract Assumption and Assignment Procedures, and (VI) Granting Related Relief; and (B)(I) Approving the Sale of Tesoro Property Free and Clear of All Interests, (II) Approving Assumption and Assignment of Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. 451] and all rights to object to, oppose, contest, and/or seek to equitably subordinate any and all of the claims that are or may be asserted by Preferred Bank against any or all of the Debtors, including contesting whether any sale proceeds may be paid to Preferred Bank.

## OBJECTION

28. The Honarkar Parties do not waive, and incorporate herein in full, all of the Honarkar Parties' objections and arguments raised in the Honarkar 363 Objection. The Honarkar Parties file this Objection to object to the Debtors' proposal to sell the Tesoro Property to Patrick Theodora on the additional grounds that (i) it is a thinly-veiled insider transaction intended to benefit the Continuum Parties that is subject to, and cannot withstand, heightened scrutiny, and (ii) if the Court decides to approve the sale (which it should not), Patrick Theodora is not entitled to and should not receive any of the protections of section 363(m) of the Bankruptcy Code.

### A. The Proposed Sale Is An Insider Transaction Subject To Heightened Scrutiny.

29. Where a proposed sale transaction involves an insider, the debtor bears the burden of proving that the sale withstands heightened scrutiny. *See In re AIG Fin. Prods. Corp*, 651 B.R. 463, 476 (Bankr. D. Del. 2023) ("[Insider] transactions are subject to a heightened scrutiny standard."); *In re Latam Airlines Grp. S.A.*, 620 B.R. 722, 769 (Bankr. S.D.N.Y. 2020) ("[C]ourts apply a heightened scrutiny test in assessing the bona fides of a transaction among a debtor and an insider of the debtor."); *In re Enron Corp.*, 335 B.R. 22, 28 (S.D.N.Y. 2005) ("Courts have held that transactions that benefit insiders must withstand heightened scrutiny before they can be approved under § 363(b)."); *In re Papercraft Corp.*, 211 B.R. 813, 823 (W.D. Pa. 1997), *aff'd and remanded sub nom. Citicorp Venture Cap., Ltd. v. Comm. of Creditors Holding Unsecured Claims*, 160 F.3d 982 (3d Cir. 1998) (citing *Pepper v. Litton*, 308 U.S. 295, 306 (1939)) ("[I]nsider transactions are subjected to rigorous scrutiny and when challenged, the burden is on the insider not only to prove the good faith of a transaction but also to show the inherent fairness from the viewpoint of the corporation and those with interests therein."). This heightened scrutiny standard applies here.

30. As the Honarkar Parties informed the Debtors in the June 2 Letter, Mr. Theodora is known to be a close friend of Gerald "Jerry" Marcil. In fact, in an article attached as Exhibit 2 to the June 2 Letter, Mr. Theodora is described as Mr. Marcil's "best friend." They have been photographed together on multiple occasions, as shown in the picture attached as Exhibit 3 to the June 2 Letter.

31. Mr. Marcil, in turn, has a longstanding relationship with Continuum. Indeed, as the Arbitrator found, Mr. Marcil is one of Continuum's largest investors and, together with Continuum Parties Andrew Stupin and Bhajneet Singh Malik, provided millions in seed capital to Continuum. *See* Partial Final Award at 7.

32. Like Mr. Marcil, Mr. Theodora has also invested in Continuum and/or Continuum's affiliated entities, and, as set forth in the bank statement attached as Exhibit 4 to the June 2 Letter, Mr. Theodora and/or his related family trusts have received distributions from Continuum.

33. One of the Continuum-related entities that Mr. Theodora has invested in is Galois Group LLC ("**Galois**"). As set forth in the Schedule K-1 attached as Exhibit 5 to the June 2 Letter, Galois shares the same address as Continuum and lists one of Mr. Theodora's related family trusts as a partner. As set forth in the Statements of Information filed with the California Secretary of State and attached as Exhibits 6 and 7 to the June 2, 2025, Galois' member or manager as of October 2, 2023 was Cantor Group Manager LLC ("**Cantor Manager**"), and Galois' member or manager as of March 25, 2025 is Jason Miller. And as set forth in the Statement of Information and in the Application to Register a Foreign Limited Liability Company each filed with the California Secretary of State and attached as Exhibits 8 and 9 to

the June 2 Letter, Cantor Manager was originally formed by Deba Shyam, and Mr. Shyam was the manager or member of Cantor Manager as of December 6, 2023.

34. Thus, Mr. Theodora has invested in at least one Continuum affiliate that has ties to Jason Miller and Deba Shyam, with whom this Court is intimately familiar. Mr. Miller and Mr. Shyam have longstanding and interconnected relationships with Continuum, Mahender Makhijani, and the Debtors. Mr. Miller is the manager of MOM AS Manager LLC and MOM BS Manager LLC and is or was an officer of VGruppe Management, the Debtors' property management company, which is currently destroying any remaining value in the Hotel Laguna. Mr. Shyam is Continuum's owner and principal, the sole member of MOM CA Investor Group LLC, and the manager of MOM CA Manager LLC. The extensive involvement of Jason Miller and Deba Shyam in the Continuum Parties' fraudulent scheme and unlawful acts committed against the Honarkar Parties is addressed throughout the Partial Final Award.

35. In addition to Jason Miller and Deba Shyam, Galois and, by extension, Mr. Theodora also have connections with attorney Marc Cohen and with Buchalter, A Professional Corporation ("**Buchalter**"). For example, according to the Substitution of Attorney attached as Exhibit 10 to the June 2 Letter, Mr. Cohen is or was counsel to Galois in civil action brought by Galois in the Superior Court of California, County of Los Angeles, against Gonzalez Family Pizzeria, Inc. Buchalter also is or was counsel to Galois in a civil action brought against it in the Superior Court of California, County of Los Angeles, by Fitness International, LLC, as evidenced by Galois' answer to the complaint in that action, the first page of which is attached as Exhibit 11 to the June 2 Letter.

36. Mr. Cohen is counsel for both Mahender Makhijani and Continuum in the Arbitration, and, as partially disclosed in Buchalter's retention application and as further disclosed

in the various pleadings related to its retention application, Buchalter has also represented Mr. Makhijani, Continuum, and their affiliates in various matters. Thus, through Galois, Mr. Theodora, Mr. Makhijani, and Continuum have also all shared the same legal counsel.

37. To be sure, Mr. Theodora's connection to Continuum and Mr. Makhijani does not end at Galois. As reflected by the document attached as Exhibit 12 to the June 2 Letter, Mr. Theodora together with Gerald Marcil and an entity named Brawley El Centro Group LLC ("**Brawley**") all contributed to the same political campaign in 2022. As set forth in the Articles of Organization filed with the California Secretary of State and attached as Exhibit 13 to the June 2 Letter, Brawley was formed by none other than Mahender Makhijani himself.

38. As set forth in the Statement of Information attached as Exhibit 14 to the June 2 Letter, Brawley also shares the same address as Continuum and, as of February 10, 2021, had Ioannis Xilikakis as its member or manager. Mr. Xilikakis also has close ties to Continuum and Mr. Makhijani. For example, Mr. Xilikakis signed a verified complaint filed by Coastline Loans LLC against many of the Debtors for breach of a promissory note. *See Coastline Loans LLC v. Tesoro Redlands DE, LLC, et al.*, Orange County Superior Court, Case No. 21STCV23683, D.I. 1 (filed June 25, 2021). Coastline Loans LLC is owned and controlled by Andrew Stupin, another Continuum investor and associate of Mr. Makhijani.

39. Furthermore, Mr. Theodora also has ties to Nano, which is one of Continuum and Mr. Makhijani's co-conspirators in their fraud committed against the Honarkar Parties. Gerald Marcil, who, as noted above, is reportedly best friends with Mr. Theodora, is or was a shareholder in Nano and has borrowed millions of dollars from the bank. *See* Partial Final Award at 7 (stating that each of Gerald Marcil, Andrew Stupin, and Bhajneet Singh Malik "remain shareholders in Nano, and have borrowed over $100 million from the bank"). Likewise, Mr.

Theodora has taken out one or more loans from Nano. For example, Mr. Theodora is listed in the document attached as Exhibit 15 to the June 2 Letter as having personal loans with Nano in the amounts of $1.5 million and over $2.4 million.

40. In sum, Mr. Theodora is a longtime investor of Continuum, a close friend and affiliate of Mahender Makhijani and his associates, and a substantial Nano client. Accordingly, the proposed sale of the Tesoro Property to Mr. Theodora is nothing more than a thinly disguised insider transaction that is intended to benefit Mr. Makhijani and Continuum. It is therefore no surprise to the Honarkar Parties that Mr. Theodora has agreed to waive diligence with respect to the Tesoro Property, as he should already have all of the information that he needs through his connection to Mr. Makhijani and Continuum.

41. Given this connection and insider relationship, the Court cannot and should not approve the sale of the Tesoro Property to Patrick Theodora. The Debtors have fallen far short of their burden to prove that the proposed sale can withstand heightened scrutiny. Instead, what the evidence shows is that Mahender Makhijani and Continuum would be the primary, if not the sole, beneficiaries of the proposed sale. This outcome should not be countenanced by the Court, particularly given the Arbitrator's findings against Mr. Makhijani and Continuum and their proven history of misusing and abusing Tesoro and its assets for their personal gain.

**B. Patrick Theodora Is Not Entitled To Section 363(m) Protection.**

42. Pursuant to section 363(m) of the Bankruptcy Code, "[t]he reversal or modification on appeal of an authorization under [section 363(b) or (c)] of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal." Here, Patrick Theodora

does not qualify as a "good faith" purchaser. As set forth above, he is a close affiliate of and effectively a stand-in for Mahender Makhijani and Continuum. His role as the purported buyer is undoubtedly the result of collusion with and among the Continuum Parties as they continue to try to use the bankruptcy process for their own direct and covert gain. Accordingly, if the Court approves the sale of the Tesoro Property to Mr. Theodora, which the Honarkar Parties respectfully submit that the Cout should not do, then any order approving the sale should not include any findings or conclusions that Mr. Theodora is a "good faith" purchaser or entitled to any of the benefits or protections of section 363(m) of the Bankruptcy Code.

**NO WAIVER OF BANKRUPTCY RULES 6004(h) AND 6006(d)**

43. The Debtors have requested that the order approving the sale of the Tesoro Property include waivers of the fourteen-day stay requirements of Bankruptcy Rules 6004(h) and 6006(d) in order to facilitate an expeditious closing of the sale. The Honarkar Parties oppose any waiver of the fourteen-day stay requirements of Bankruptcy Rules 6004(h) and 6006(d). The stay of execution as provided by the Bankruptcy Code and Bankruptcy Rules is critical to protect creditors from injustice and afford them the opportunity to protect their rights on appeal. As set forth in the Honarkar 363 Objection, to the extent that any sales are approved in these Chapter 11 Cases, including with respect to the Tesoro Property, there should absolutely not be a waiver of the requirements of Bankruptcy Rules 6004(h) and 6006(d). The need for these requirements is made even greater here by the Debtors' proposal to sell the Tesoro Property to a close affiliate of the Continuum Parties.

**RESERVATION OF RIGHTS**

44. The Honarkar Parties fully reserve and preserve all of their rights with respect to the Tesoro Sale Motion, the Successful Bidder Notice, the PSA, and any and all documents related

thereto, including, without limitation, the Honarkar Parties' rights to assert further and/or additional objections to any proposed sale and/or to appeal any and all sale orders.

45. Finally, to the extent any assets are sold out of the Debtors' estates, whether in connection with the Tesoro Sale Motion or otherwise, the Honarkar Parties fully reserve all rights to include the amounts of such sales in their calculation of damages that will come out of the Arbitration. Nothing in these Chapter 11 Cases can or should be deemed to mean or imply that the Honarkar Parties have consented to the sale of any assets and/or waived any of their rights in the Arbitration, including, without limitation, with respect to the amount or calculation of damages. The accounting and ultimate damages award to be issued by the Arbitrator will dictate the amount of damages due to the Honarkar Parties and no actions taken in these Chapter 11 Cases constitute a waiver of such rights and remedies in the Arbitration.

**WHEREFORE**, the Honarkar Parties respectfully request that the Court (i) deny approval of the proposed sale of the Tesoro Property to Patrick Theodora; and (ii) grant such other and further relief that the Court deems necessary or appropriate.

Dated: June 4, 2025
Wilmington, Delaware

**POLSINELLI PC**

Christopher A. Ward (Del. Bar No. 3877)
Shanti M. Katona (Del. Bar No. 5352)
Stephen A. Smith (Del. Bar No. 7456)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
cward@polsinelli.com
skatona@polsinelli.com
sasmith@polsinelli.com

-and-

Elisa Hyder (admitted *pro hac vice*)
Three Logan Square
1717 Arch Street, Suite 2800
Philadelphia, PA 19103
Telephone: (215) 267-3001
Facsimile: (215) 267-3002
ehyder@polsinelli.com

*Counsel to Mohammad Honarkar and 4G Wireless, Inc.*