**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>MOM CA Investco LLC, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-10321 (BLS)<br><br>(Jointly Administered)<br><br>**Related Docket Nos. 611-613** |

**OPPOSITION OF MOM MEMBERS TO EMERGENCY MOTION OF MOHAMMAD HONARKAR AND 4G WIRELESS, INC. FOR ENTRY OF AN ORDER DISMISSING OR CONVERTING THE CHAPTER 11 CASES**

MOM CA Investor Group LLC, MOM BS Investor Group LLC and MOM AS Investor Group LLC (collectively, the "MOM Members"), by and through their undersigned counsel, hereby file this opposition to the *Emergency Motion of Mohammad Honarkar and 4G Wireless, Inc. for Entry of an Order Dismissing or Converting the Chapter 11 Cases* (the "Opposition") [Docket No. 611] (the "Motion to Dismiss") and, in support hereof, respectfully state as follows:

**ARGUMENT**

1. The Motion overreaches, mischaracterizes the nature and purpose of these Chapter 11 Cases and the motivations of the professionals retained by the Debtors, and reflects a transparent attempt to circumvent the bankruptcy process and due process in favor of the personal interests of

---

[1] The Debtors in these chapter 11 proceedings (the "Chapter 11 Cases"), together with the last four digits of each Debtor's federal tax identification number, are: MOM CA Investco LLC [6263], MOM AS Investco LLC [6049], MOM BS Investco LLC [6180], Retreat at Laguna Villas, LLC [2046], Sunset Cove Villas, LLC [9178], Duplex at Sleepy Hollow, LLC [9237], Cliff Drive Properties DE, LLC [0893], 694 NCH Apartments, LLC [0318], Heisler Laguna, LLC [4709], Laguna Festival Center, LLC [4073], 891 Laguna Canyon Road, LLC [0647], 777 AT Laguna, LLC [8715], Laguna Art District Complex, LLC [8316], Tesoro Redlands DE, LLC [2764], Aryabhata Group LLC [7332], Hotel Laguna, LLC [9580], 4110 West 3rd Street DE, LLC [8641], 314 S. Harvard DE, LLC [2057], Laguna HI, LLC [6408], Laguna HW, LLC [9470], The Masters Building, LLC [6134], and 837 Park Avenue, LLC [3229]. The Debtors' headquarters are located at 520 Newport Center Drive, Suite 480, Newport Beach, CA 92660.

Mr. Honarkar and 4GWireless, Inc. (the "Honarkar Parties") to the detriment of other parties in interest.

2.    The Debtors' constitutional rights to seek bankruptcy relief have not been challenged. Rather, dismissal is being sought because the Honarkar Parties argue that the Debtors' efforts to resolve the solvency issue through financing or a sale process that the Honarkar Parties disagree with (but for which the Honarkar Parties have provided no viable alternative) and the Debtors efforts to investigate transactions, including those involving Mr. Honarkar, means that the Chapter 11 Cases are not being pursued in good faith and lack a viable reorganization strategy. That is not the case.

3.    The bankruptcy was filed for a valid purpose and the Debtors have acted in good faith and are proposing workable solutions that are consistent with their fiduciary duties to maximize value for all constituents. These Chapter 11 Cases involve numerous real estate holdings, some of which have liquidity constraints. To date, normal actions that would be taken in any chapter 11 case to maximize value have been forestalled and delayed to provide the Honarkar Parties with every opportunity to maintain the status quo as the parties work towards a final resolution in the Arbitration. The Honarkar Parties have had since the February 28, 2025 filing date to find alternative financing and they have been unsuccessful. Indeed, if it were not for the joint venture, the Honarkar Parties would have already lost the properties to foreclosure in 2021. Prior to the joint venture, the properties have been in multiple receiverships due to Mr. Honarkar's divorce and nonpayment of lenders. When the "MOM" joint venture was formed in 2021, Honarkar's venture partners facilitated the refinance of the defaulted debt, temporarily rescuing the assets from immediate foreclosure.

4.    Now, the Honarkar Parties seek conversion to a chapter 7 or dismissal of the

Chapter 11 Cases because the costs of administration are too high. However, the Honarkar Parties' litigation tactics is what unnecessarily increased the costs of the restructuring efforts. Moreover, the relief that the Honarkar Parties seek is nonsensical because it is detrimental to the Debtors' estates and it does not accomplish what the Honarkar Parties purportedly seek – keeping the existing real estate intact pending a final outcome of the accounting and Arbitration. Conversion to chapter 7 will not result in the maintenance of the current operations with ownership of the current properties staying unchanged. A chapter 7 trustee will need funds just as the Debtors' estates in chapter 11 need funds. Financing has already been extensively marketed in these Chapter 11 Cases and other than Specialty DIP, there are no viable lenders. The only other source of funds is liquidation of assets. Dismissal likewise does not help and would harm parties in interest. The Debtors' properties are suffering from liquidity shortfalls that can be solved for in bankruptcy, but will result in foreclosure outside of bankruptcy with less value realized for the stakeholders and chaos for tenants.

**A. The Accelerated Schedule Violates Due Process**

5.   On Friday, June 27, 2025 at 4:22 p.m. (ET), the Honarkar Parties filed the Motion to Dismiss. The Motion to Dismiss was accompanied by a motion to shorten notice seeking to have the Motion to Dismiss heard on Monday, June 30, 2025 at 9:30 a.m. (ET). The Court granted the motion to shorten notice and scheduled hearing on the Motion to Dismiss for Monday morning, which provides parties that receive CM/ECF notice with no more than a few business hours' notice of a case dispositive hearing. This is insufficient notice. Rule 2002(a)(4) of the Federal Rules of Bankruptcy Procedure requires no less than twenty-one days' notice to all creditors of a hearing on a motion to dismiss. *See* Fed. R. Bankr. P. 2002(a)(4). No certificate of service has been filed; however, even if the Honarkar Parties served the Motion to Dismiss on all creditors via overnight mail on Friday night, the timing of the filing of the Motion to Dismiss and the timing of the hearing

means that creditors that are not on CM/ECF did not get any notice of the hearing.

6. The shortened timeframe violates basic principles of due process. Reasonable notice and an opportunity to be heard are fundamental to the fairness of any judicial proceeding. The hearing schedule did not provide parties in interest with sufficient time to receive notice, review the Motion to Dismiss, and respond appropriately. In fact, under the circumstances and as noted above, it is highly likely that many creditors did not even receive effective service before the hearing is scheduled to occur. This rushed process undermines the ability of stakeholders to analyze the serious implications of the Motion to Dismiss and frustrates meaningful participation in the hearing. Indeed, the MOM Members would normally prepare a more fulsome response to the Motion to Dismiss but the timing makes anything more than a cursory filing impossible.

**B. The Motion to Dismiss Seeks Premature Adjudication of Disputed Issues**

7. The Motion to Dismiss is styled similarly to a summary judgment brief in an adversary proceeding. Rather than asking the Court to call balls and strikes, it urges the Court to declare the game over in the fourth inning. The Honarkar Parties seek to deprive the Debtors and the Court of the opportunity to utilize traditional Chapter 11 tools, including asset sales and refinancings. The relief sought in the Motion would cut off core bankruptcy rights, bypassing the ordinary process of notice, evidence, and adjudication. The appropriate forum for resolving the many factual and legal disputes raised in the Motion to Dismiss is through the adversary proceeding that has already been commenced, not a summary request for dismissal or conversion.

**C. Chapter 11 Permits the Property Sales**

8. The Honarkar Parties complain that the proposed purchaser of the Tesoro Property knows the Continuum Parties. However, the proposed purchaser is not an insider. Section 101(31) of the Bankruptcy Code requires more than merely knowing an insider or being introduced to an investment opportunity by an insider to be an insider subject to enhanced scrutiny in a sale process.

The proposed sale was an open bidding and marketing process. Further, even though the proposed purchaser is not an insider, selling to insiders or related parties is neither prohibited nor even frowned upon. The Honarkar Parties' fixation on "associations" with Continuum parties misstates the legal standard. So long as sales are subject to market testing and proper disclosure, they are routinely approved, even where insiders are the buyers. The Bankruptcy Code provides checks and balances to ensure fair value is obtained. Rejecting transactions solely because of an alleged "association" lacks legal merit and economic logic and only depresses value.

### D. Honarkar's Real Objection is Strategic, Not Legal

9. The core problem for Mr. Honarkar is not that the Debtors lack a strategy; it is that he does not like the strategy being pursued. That is not grounds for dismissal or conversion. The strategy of marketing, selling, or refinancing real estate assets in Chapter 11 is legitimate and frequently pursued. If Honarkar believes he can offer better value or terms, he can participate in the sale process. Bankruptcy does not guarantee protection from competition, nor does it privilege one stakeholder's agenda over others in a properly administered case.

### E. Honarkar's Litigation Has Driven Up Costs

10. The Honarkar Parties complain about the amount of professional fees in the Chapter 11 Cases. However, the Honarkar Parties fail to acknowledge that much of the administrative burden has resulted from the Honarkar Parties' own litigation conduct, including motion practice, discovery, and objections. This is a classic example of a litigant creating cost and then decrying its existence. The estates' professionals have been forced to respond to extensive litigation tactics that have multiplied the proceedings. The Honarkar Parties cannot simultaneously be a cause of administrative burden and use it as justification for conversion or dismissal.

### F. Allegations of Mismanagement and Bias Lack Substance

11. Vague references to tenant complaints and management deficiencies in the Motion

to Dismiss are unsupported.  Some issues appear to stem from the very uncertainty created by the Honarkar Parties' litigation and involvement.  The record lacks credible evidence that mismanagement justifies dismissal.  Indeed, Mr. Honarkar's ongoing interference has likely contributed to any instability at the properties.  The proper venue for resolving control and management issues is not by dismissing the cases but by allowing the estates to administer them transparently through court supervision.

12. Further, the Debtors' decision to reject the so-called Honarkar agreements is entitled to deference.  Under the business judgment standard, courts approve such decisions unless they are shown to be irrational or in bad faith.  The deferential standard reflects a recognition that courts should not second-guess a debtor's managerial discretion when exercised in good faith and for the benefit of the estate.  The Honarkar Parties provide no evidence of bad faith.

13. Much of the Motion to Dismiss is a collateral attack on the Debtors' positions in the Chapter 11 Cases.  For example, Footnote 4 of the Motion to Dismiss challenges the assertion of potential offsets against the Honarkar Parties—which is part of any full accounting process.

14. Contrary to the Motion to Dismiss' suggestion, post-petition operating losses are not uncommon where debtors are liquidating.  Retail cases such as Party City, Big Lots, and Rite Aid proceeded on similar paths.  Operating losses in such cases are often strategic and necessary to preserve asset values pending sale.  The mere existence of interim losses does not equate to failure or bad faith; rather, it reflects the cost of preserving going concern value.

**G. Early Asset Sales Are Permitted and Often Beneficial and it is the Honarkar Parties' Actions that Have Been Detrimental to the Reorganization Process**

15. Selling the Tesoro Property to generate liquidity is not cause for concern; it is sound strategy.  It is not uncommon for debtors in possession to pursue targeted asset sales to ensure solvency.  Indeed, if Tesoro sells, it would render the estates administratively solvent and lead to

a viable reorganization path.

16. Instead of supporting the Debtors' targeted strategy that balances the need to create liquidity while minimizing the impact of sales on the overall enterprise portfolio, the Honarkar Parties have chilled the sale process through the incessant litigation that does not appear to acknowledge the business realities facing the Debtors. Buyers are understandably hesitant to become embroiled in litigation when it appears that one of the litigants is ambivalent to the economics of the case. Regardless, opposition to the sale of a property or properties is not a reason to dismantle the entire Chapter 11 process.

17. The Honarkar Parties' actions have also chilled opportunities for alternative financing. Golden East's withdrawal of potential DIP financing followed an intensification of the Honarkar Parties' litigation activities. Lenders, like buyers, are cautious about entering contested proceedings where one party engages in disruptive litigation behavior. The Honarkar Parties' tactics have made it harder for the estates to obtain favorable financing and yet the Honarkar Parties now complain about the repercussions from their own actions.

**H.  Chapter 7 is Not a Viable Alternative**

18. A Chapter 7 trustee cannot operate businesses for more than a limited period under 11 U.S.C. §721. The complexities and timeframes involved here, including accounting and ongoing operations, are incompatible with chapter 7. Moreover, conversion does not result in maintenance of the properties until completion of the Arbitration. Alternative financing has been extensively marketed in these Chapter 11 Cases. The properties require funding to maintain. The secured lenders require payments. Conversion would likely lead to a fire-sale of assets and diminished creditor recoveries. Unlike a chapter 11 environment, chapter 7 lacks the operational tools and flexibility to administer a portfolio of this scope. As a result, rather than targeted sales, a chapter 7 will result in wholesale liquidation of the Debtors' enterprise at lower than market

values.

## I. Dismissal is Not a Viable Alternative

19. Dismissal is also not a value maximizing alternative to these Chapter 11 Cases. Dismissal does not resolve the underlying lack of liquidity that is not driven solely by restructuring costs. Dismissal will lead to foreclosure of more properties – which will negatively impact remedies in the Arbitration even more than a selective sale process.

20. Further, foreclosures negatively impact other parties in interest. Appointment of a receiver and foreclosure results in termination of leases with tenants. It will lead to depressed sale values because equity receivers can't sell free and clear unlike debtors in chapter 11. Moreover, dismissal will not reduce litigation in these cases. The Honarkar Parties claim that they will seek the appointment of a receiver in state court. However, the appointment of a receiver may be vigorously opposed by the lenders if such receiverships seek an injunction against foreclosures (an ask that would likely be demanded by the Honarkar Parties). These are multiple properties with multiple lenders and all of these foreclosure/receivership actions will be commenced separately leading to expensive, piecemeal litigation.

21. Dismissal does not permit the estates to be reorganized in an orderly, managed, and statutorily governed fashion. In fact, the very property at issue with a proposed imminent sale, Tesoro, could be lost if the case is dismissed because the loan, upon information and belief, is in default. The Tesoro property is not alone. Prepetition, over 15 different properties were at risk for nonjudicial foreclosures that could be commenced by 4 different lenders. The 3-month waiting period under California Civil Code ("CC") section 2924(a)(2) for each of these sales has expired. Accordingly, each lender would be entitled to immediately record a Notice of Sale setting a foreclosure sale date at least 20 days thereafter (CC section 2924f(b)). Accordingly, for some properties, foreclosure could occur almost immediately.

22. The impact of a non-judicial foreclosure will not only affect the economic value obtained from the properties, but a nonjudicial foreclosure will also extinguish all junior liens and encumbrances, including all junior leases on such properties if no Subordination, Non-disturbance, and Attornment Agreement ("SNDA") has been signed. Upon information and belief, most, if not all of the Debtors' leases do not have a signed SNDA protecting the tenants. The lack of SNDA's means that the threat of foreclosure impacts all such tenants, who have not had the opportunity to be heard in these Chapter 11 Cases and who have not received notice of the Motion to Dismiss.

## CONCLUSION

The Motion to Dismiss is a thinly veiled attempt to hijack these Chapter 11 Cases. There are multiple parties in interest, including tenants, who stand to benefit from an orderly, open, and fair process. The Debtors' strategy is both supported by the Bankruptcy Code and appropriate. The Honarkar Parties' dissatisfaction with the current course does not justify cutting short a legitimate Chapter 11 reorganization effort that remains in progress. Accordingly, the Motion to Dismiss should be denied.

Dated: June 29, 2025
Wilmington, Delaware

**BAYARD, P.A.**

*/s/ Ericka F. Johnson*
Ericka F. Johnson, Esq. (DE Bar No. 5024)
Kevin G. Collins, Esq. (DE Bar No. 5149)
Steven D. Adler, Esq. (DE Bar No. 6257)
Ashly L. Riches, Esq. (DE Bar No. 7256)
600 North King Street, Suite 400
Wilmington, Delaware 19801
Telephone: (302) 655-5000
E-mail: ejohnson@bayardlaw.com
kcollins@bayardlaw.com
sadler@bayardlaw.com
ariches@bayardlaw.com

*Counsel to the MOM Members*

9